ACCEPTED
03-15-00368-CV
6950612
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/16/2015 12:14:01 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00368-CV

_____

IN THE COURT OF APPEALS

FOR THE THIRD SUPREME JUDICIAL DISTRICT

AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/16/2015 12:14:01 PM
JEFFREY D. KYLE
Clerk

_____

**LAURA PRESSLEY,**
**APPELLANT**
**VS.**
**GREGORIO "GREG" CASAR,**
**APPELLEE**

_____

APPEAL FROM THE 201ST DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NO. D-1-GN-15-000374

_____

**APPELLANT'S BRIEF**

_____

Mark Cohen
Attorney at Law
805 W. 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424   Telephone
(512) 472-5444   Facsimile
mark@cohenlegalservices.com
State Bar No.: 04508400

**ATTORNEY FOR APPELLEE**

_____

**ORAL ARGUMENT REQUESTED**

_____

## IDENTITY OF PARTIES AND COUNSEL

The parties subject to this brief and the names and addresses of all trial counsel are as follows:

Appellant in the trial court:     Laura Pressley

Appellee in the trial court:      Gregorio "Greg" Casar

Trial Counsel:                    David A. Rogers
                                  State Bar No. 24014089
                                  1201 Spyglass Drive, Suite #100
                                  Austin, Texas 78746
                                  (512) 923-1836   Telephone
                                  (512) 201-4082   Facsimile
                                  Firm@DARogersLaw.com

                                  Mark Cohen
                                  State Bar No. 04508400
                                  805 W. 10th Street, Suite 100
                                  Austin, Texas 78701
                                  (512) 474-4424   Telephone
                                  (512) 472-5444   Facsimile
                                  Mark@cohenlegalservices.com

                                  ***ATTORNEYS FOR CONTESTANT DR. LAURA PRESSLEY***

                                  Charles 'Chuck' Herring Jr.
                                  State Bar No. 09534100
                                  cherring@herring-irwin.com
                                  Jess Irwin
                                  State Bar No. 10425700
                                  jess@herring-irwin.com
                                  Lauren Ross
                                  State Bar No. 24092001
                                  laurenbross@herring-irwin.com
                                  Herring & Irwin, L.L.P.
                                  1411 West Avenue, Ste 100

Austin, TX  78701
(512) 320-0665   Telephone
(512) 519-7580   Facsimile

Kurt Kuhn
State Bar No. 24002433
Kurt@KuhnHobbs.com
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000   Telephone
(512) 476-6002   Facsimile

**ATTORNEYS FOR CONTESTEE,
GREGORIO "GREG" CASAR**

Andrew M. Williams
Assistant County Attorney
Travis County Attorney's Office
P.O. Box 1748
Austin, Texas 78767
(512) 854-9472   Telephone
(512) 854-4808   Facsimile
andrew.williams@traviscountytx.g
ov

Appellate Counsel:

Mark Cohen
State Bar No. 04508400
805 W. 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424   Telephone
(512) 472-5444   Facsimile
Mark@cohenlegalservices.com

**ATTORNEY FOR APPELLANT
DR. LAURA PRESSLEY**

David A. Rogers
State Bar No. 24014089
1201 Spyglass Drive, Suite #100
Austin, Texas 78746
(512) 923-1836   Telephone
(512) 201-4082   Facsimile
Firm@DARogersLaw.com

*PRO SE*

Kurt Kuhn
State Bar No. 24002433
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000   Telephone
(512) 476-6002   Facsimile
Kurt@KuhnHobbs.com

Charles 'Chuck' Herring Jr.
State Bar No. 09534100
Herring & Irwin, L.L.P.
1411 West Avenue, Ste 100
Austin, TX  78701
(512) 320-0665   Telephone
(512) 519-7580   Facsimile
cherring@herring-irwin.com

**ATTORNEYS FOR APPELLEE
GREGORIO "GREG" CASAR**

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL..................................................ii-iv

TABLE OF CONTENTS .......................................................................v-vii

INDEX OF AUTHORITIES...................................................................viii-xi

STATEMENT OF ISSUES PRESENTED...............................................2

**Issue 1.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT?** ...............................................................................2

**Sub Issue 1.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PREVENTING APPELLANT FROM OBTAINING DISCOVERABLE DOCUMENTS? . . . . . . . . . . .2**

**Sub Issue 2.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING A NO EVIDENCE MOTION FOR SUMMARY JUDGMENT WITHOUT READING THE SUMMARY JUDGMENT EVIDENCE? . . . . . . . . . . . . . .2**

**Sub Issue 3. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT BECAUSE APPELLANT PRODUCED MORE THAN A SCINTILLA OF EVIDENCE? . . 2**

**Issue 2.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY AWARDING SANCTIONS AGAINST APPELLANT PRESSLEY? . . . . . .2**

**Sub Issue 1.    WAS THE RIGHT TO SEEK SANCTIONS FORECLOSED AND BARRED BY THE LANGUAGE OF THE ONLY FINAL JUDGMENT DURING THE COURT'S PLENARY POWER OR THE RULE 11 AGREEMENT THAT ALL ISSUES BETWEEN THE PARTIES WERE RESOLVED? . . . . . . . . . .2**

**Sub Issue 2.    WAS CHAPTER 10 OF THE CIVIL PRACTICES AND REMEDIES CODE VIOLATED? . . . . . . . .2**

**Sub Issue 3.    IF APPELLANT PRESSLEY WAS SUBJECT TO SANCTIONS, WERE THE SANCTIONS IMPOSED JUSTIFIED AND APPROPRIATE? . . . . . . . . . . . . . . . . . . . .2**

**Sub Issue 4.    DID THE TRIAL COURT ABUSE ITS DISCRETION BY IMPOSING SANCTIONS BASED ON ATTORNEY'S FEES IN THE EVENT OF AN UNSUCCESSFUL APPEAL WITHOUT ANY EVIDENCE? . . .2**

STATEMENT OF CASE.................................................................3

STATEMENT REGARDING ORAL ARGUMENT........................................5

STATEMENT OF FACTS............................................................6

SUMMARY OF THE ARGUMENT............................................ 10

ARGUMENT...................................................................14

**Issue 1.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT?** .................................14

**Sub Issue 1.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PREVENTING APPELLANT FROM OBTAINING DISCOVERABLE DOCUMENTS?** .....................14

**Sub Issue 2.    DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLE'S MOTION FOR NO EVIDENCE SUMMARY JUDGEMENT WITHOUT REVIEWING THE EVIDENCE ATTACHED TO THE OPPOSITION TO THE MOTION?** .........................................17

**Sub Issue 3. DID APPELLANT PRODUCE MORE THAN A SCINTILLA OF EVIDENCE TO DEFEAT APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT?** ...................................................................18

**Issue 2.** DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY AWARDING SANCTIONS AGAINST APPELLANT PRESSLEY? ....................................................36

      **Sub Issue 1.** WAS THE RIGHT TO SEEK SANCTIONS FORECLOSED AND BARRED BY THE LANGUAGE OF THE ONLY FINAL JUDGMENT DURING THE COURT'S PLENARY POWER OR THE RULE 11 AGREEMENT THAT ALL ISSUES BETWEEN THE PARTIES WERE RESOLVED? ............................................36

      **Sub Issue 2.** WAS CHAPTER 10 OF THE CIVIL PRACTICES AND REMEDIES CODE VIOLATED?...............39

      **Sub Issue 3.** IF APPELLANT PRESSLEY WAS SUBJECT TO SANCTIONS, WERE THE SANCTIONS IMPOSED JUSTIFIED AND APPROPRIATE? ......................53

      **Sub Issue 4.** DID THE TRIAL COURT ABUSE ITS DISCRETION BY IMPOSING SANCTIONS BASED ON ATTORNEY'S FEES IN THE EVENT OF AN UNSUCCESSFUL APPEAL WITHOUT ANY EVIDENCE? ...65

CONCLUSION.................................................................67

PRAYER...........................................................................67

CERTIFICATE OF COMPLIANCE.......................................... 68

CERTIFICATE OF SERVICE.................................................69

# INDEX OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Alvarez v. Espinoza,*
    844 S.W.2d 238, 249 (Tex. App.--San Antonio 1992,
    writ dism'd w.o.j. ................................................................. 35

*Andrade v. NAACP of Austin,*
    345 S.W.3d 1 (Tex. 2011) ....................................................... 28, 29

*Bader, Inc. v. Sandstone Prods. Inc.,*
    248 S.W.3d 802, 812 (Tex.App.—Houston [1st. Dist.]
    2008, no pet.) ....................................................................... 40, 45

*Baize v. Scott and White Clinic,*
    2007 Tex.Lexis 366 (Tex.App.—Austin, 2007 pet. den'd) .......... 18, 20

*Brozynski v. Kerney,*
    2006 Tex. App. LEXIS 6817, 2006 WL 2160841, at *4
    (Tex. App.—Waco Aug. 2, 2006, pet. denied) (citing Mattly v.
    Spiegel, Inc., 19 S.W.3d 890, 896 (Tex. App.—Houston
    [14th Dist.] 2002, no pet.)) ..................................................... 49

*Dallas Indep. Sch. Dist. v. Finlan,*
    27 S.W.3d 220, 228-229, 2000 Tex. App. LEXIS 5773,
    13-14 (Tex. App.—Dallas 2000, writ cert. den.) ....................... 23, 41

*Duncan-Hubert v. Mitchell,*
    310 S.W.3d 92, 98 (Tex. App. Dallas 2010, pet. denied) ............ 31

*Foust v. Hefner,*
    2014 Tex. App. LEXIS 8880, page 3 2014 WL 3928781
    (Tex. App. Amarillo Aug. 12, 2014 no pet.) ............ 40, 41, 44, App.29

*Garcia v. Avila,*
    597 S.W.2d 400, 403 (Tex. Civ. App. -San Antonio
    1980, no writ) ....................................................................... 32

*Garcia v. Peeples,*
    734 S.W.2d 343 (Tex 1987) .................................................... 16

*Gonzalez v. Villarreal,*
    251 S.W.3d 763, 773, 777-78 (Tex.App—Corpus Christi
    2008, pet. denied) ................................................................. 32, 35

*Goode v. Shoukfeh,*

943 S.W.2d 441, 448, 40 Tex. Sup. Ct. J. 487 (Tex. 1997) ............15

*Great American Reserve Ins. Co. v. Britton,*
406 S.W.2d 901, 907; (Tex. 1966) ................................................66

*Griffin Indus. v. Grimes,*
2003 Tex. App. LEXIS 3439, 2003 WL 1911993 (Tex. App. San
Antonio, 2003, no pet.) .................................................................41

*Guerra v. Avila,*
597 S.W.2d 400, 403 (Tex.Civ.App.—San Antonio 1980, no writ) ...25

*Herring v. Welborn,*
27 S.W.3d 132, 2000 Tex. App. LEXIS 4567 (Tex. App.
San Antonio 2000 no Pet.) ............................................................41

*In re: Bass,*
113 S.W.3d 735, 743 (Tex 2003) ..................................................16

*In re: Continental General Tire, Inc.,*
979 S.W.2d 609, 613, 615 (Tex 1998) ................................ 14, 15, 16

*In re: Dupont de Nemours & Co.,*
136 S.W.3rd 218, 223 (Tex 2004) ..................................................15

*In re: Reynolds*
2014 Tex. App. Lexis 7105 (no pet.) ...............................................38

*Jampole v. Touchy,*
673 S.W.2d 869 (Tex 1984) ..........................................................16

*Jobe v. Lapidus,*
874 S.W.2d 764, 767 (Tex. App. Dallas 1994, no pet.) ...................38

*Johnson v. Fourth Court of Appeals,*
700 S.W.2d 916, 917, 29 Tex. Sup. Ct. J. 101 (Tex. 1985)
(quoted in In re: Dupont, supra at 223) .........................................15

*Lane Bank Equip. Co. v. Smith S. Equip., Inc.,*
10 S.W.3d 308,  (Tex. 2000) ........................................................37

*Lesikar v. Rappeport,* 33 S.W.3d 282, 308 (Tex. App.—Texarkana
2000, no pet.) .............................................................................66

*Low v. Henry,*
221 S.W.3d 609 - 622 (Tex. 2007) ...........................40-42, 53-65, 67

*R.M. Dudley Constr. Co. v. Dawson,*
258 S.W.3d 694, 708(Tex. App.- Waco 2008, pet denied) ...............49

*Rogers v. Walker,*
    2013 Tex. App. LEXIS 6452, Court of Appeals (Corpus
    Christi, 2013 (pet. den.) ...............................................................40
*Schroeder v. Haggard,*
    2007 Tex. App. LEXIS 3725 ,7| 2007 WL 1423968 ( Ct. App.- San
    Antonio 2007 no pet.) ...................................................................37
*Texas Democratic Party v. Williams,*
    No. A-07-CA-115-SS (W.D. Tex. August 16, 2007) .........................30
*Thottumkal v. McDougal,*
    251 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.]
    2008, pet. denied) (citing Cire v. Cummings, 134 S.W.3d
    835, 838 (Tex. 2004) .............................................. 42, 49, 53
*Valence Operating Co. v. Donell,*
    164 S.W.3d 656, 661 (Tex. 2004) .............................................. 19, 20

**STATUTES**                                                    **PAGE(S)**

Texas Civil Practice and Remedies Code § 10 .........................................40
Texas Civil Practice and Remedies Code § 10.001(3) .......................13, 45
Texas Civil Practice and Remedies Code § 10.001, et seq. ......................13
Texas Civil Practice and Remedies Code § 10.004 ................................63
Texas Civil Practice and Remedies Code § 10.004(b) ...........................49
Texas Civil Practice and Remedies Code § 10.004(d) ...........................41
Texas Constitution, Article VI, Section 4 ...................................... 26, 27, 51
Texas Election Code § 2.001 ..................................................................25
Texas Election Code § 33.056 ................................................................34
Texas Election Code § 33.061 ......................................................... 34, 56
Texas Election Code § 52, Subchapter C ................................................26
Texas Election Code § 52.001 ................................................................25
Texas Election Code § 52.003 ......................................................... 23, 26
Texas Election Code § 52.031 ......................................................... 23, 26
Texas Election Code § 52.062 ................................................................26
Texas Election Code § 52.063 ................................................................26
Texas Election Code § 52.064 ................................................................26
Texas Election Code § 52.070 ..................................................... 23, 26, 27
Texas Election Code § 52.075 ................................................................30

Texas Election Code § 66.051-.054 .................................................. 45, 47
Texas Election Code § 128.001 ........................................................ 21, 25
Texas Election Code § 213.013 ........................................................ 25, 34
Texas Election Code § 213.016 ........................................................ 22, 25
Texas Election Code § 214.049(e) ........................................................ 26
Texas Election Code § 221.003 ............................................................... 3
Texas Election Code § 221.003(1) ......................................................... 25
Texas Election Code § 221.003(3) ......................................................... 25
Texas Election Code § 221.012 ............................................................. 19
Texas Election Code § 221.013 ............................................................. 43
Texas Election Code § 231.009 ............................................................... 3

**RULES**            **PAGE(S)**

Texas Rules of Appellate Procedure, Rule 45 ......................................... 66
Texas Rules of Civil Procedure, Rule 11 ............................................. 10, 38
Texas Rules of Civil Procedure, Rule 192.3(a) ....................................... 15
Texas Rules of Civil Procedure, Rule 192.3(d) ....................................... 15
Texas Rules of Civil Procedure, Rule 193.4 ........................................... 15

NO. 03-15-00368-CV

IN THE COURT OF APPEALS
FOR THE THIRD SUPREME JUDICIAL DISTRICT
AT AUSTIN

_____

**LAURA PRESSLEY,**

**APPELLANT**

**VS.**

**GREGORIO "GREG" CASAR,**

**APPELLEE**

_____

**APPELLANT'S BRIEF**

## STATEMENT OF ISSUES PRESENTED TO APPELLANT

**Issue 1.     DID THE TRIAL COURT COMMIT REVERSABLE ERROR BY GRANTING APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT?**

**Sub Issue 1.     DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PREVENTING APPELLANT FROM OBTAINING DISCOVERABLE DOCUMENTS?**

**Sub Issue 2.     DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING A NO EVIDENCE MOTION FOR SUMMARY JUDGMENT WITHOUT READING THE SUMMARY JUDGMENT EVIDENCE?**

**Sub Issue 3. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT BECAUSE APPELLANT PRODUCED MORE THAN A SCINTILLA OF EVIDENCE?**

**Issue 2.     DID THE TRIAL COURT COMMIT REVERSABLE ERROR BY AWARDING SANCTIONS AGAINST APPELLANT PRESSLEY?**

**Sub Issue 1.     WAS THE RIGHT TO SEEK SANCTIONS FORECLOSED AND BARRED BY THE LANGUAGE OF THE ONLY FINAL JUDGMENT DURING THE COURT'S PLENARY POWER OR THE RULE 11 AGREEMENT THAT ALL ISSUES BETWEEN THE PARTIES WERE RESOLVED?**

**Sub Issue 2.     WAS CHAPTER 10 OF THE CIVIL PRACTICES AND REMEDIES CODE VIOLATED?**

**Sub Issue 3.     IF APPELLANT PRESSLEY WAS SUBJECT TO SANCTIONS, WERE THE SANCTIONS IMPOSED JUSTIFIED AND APPROPRIATE?**

**Sub Issue 4.     DID THE TRIAL COURT ABUSE ITS DISCRETION BY IMPOSING SANCTIONS BASED ON ATTORNEY'S FEES IN THE EVENT OF AN UNSUCCESSFUL APPEAL WITHOUT ANY EVIDENCE?**

## STATEMENT OF CASE

The original Clerk's Record is not sequentially numbered by volume. There is one filed on July 2, 2015 that has volume 1 and 2 with pages numbered from 1 to 5228 and there is another filed on July 29, 2015 which is not designated as a supplemental record and has volumes 1, 2 and 3 with pages numbered from 1 to 7635. In order for the court to able to locate the place in the record cited in this brief, Appellant will refer to the Clerk's Record filed on July 2, 2015 as 1 CR and the one filed on July 29, 2015 as 2 CR.

This is an election contest case. It is therefore to be expedited by this Court. Tex. Elec. Code § 231.009. App.30. Appellant asserted below that the Travis County Clerk failed to comply with state law to maintain image of a ballot and there were so many mistakes and irregularities and illegal votes counted and legal votes not counted that, although the exact vote change is not capable of proof, nevertheless the Court should invalidate the election because the true outcome of the election cannot be ascertained, Tex. Elec. Code § 221.003. (1 CR 862). App.22.

The trial court granted Appellee's No Evidence Motion for Summary Judgment and entered a final judgment. (1 CR 4605; App.1) Appellant filed a Notice of Accelerated Appeal.(1 CR 5224; App.4) Subsequently, on June

24, 2015, the trial court entered an order that stated it was an amended order, but omitted a Mother Hubbard clause or a declaration that it was final, and stated it was going to award sanctions against Pressley and her attorney David Rogers. 2 CR 2060; App.2. Out of an abundance of caution, Pressley filed an amended Notice of Appeal including the June, 24, 2015 order. 2 CR 2062. App.5. After the hearings on the Third amendment to the original Sanctions Motion, Suppl. IV CR 16, that had been filed before the first final judgment on May 26, 2015, the Court entered another judgment on July 23, 2015 Suppl. IV CR 52, App.3 that granted Casar's No Evidence Motion for Summary Judgment, assessed sanctions based on Casar's attorney fees in the amount of $90,000 ($50,000 against Appellant's attorney and $40,000 against Appellant) and an additional sanction award in the event of an unsuccessful appeal, First Suppl. IV CR 52; App.3. The trial court entered a separate order awarding sanctions supported by findings of fact and conclusions of law. Suppl. IV CR 19. App.3. Appellant filed a request for additional and amended findings of fact and conclusions of law. Suppl. III CR 45; App.6. Appellant filed a Second Amended Notice of Appeal. Suppl. III CR 38. App.8. The trial court made amended findings of fact and conclusions of law, Second Suppl. IV CR 3 filed on August 14, 2015; App.7.

## STATEMENT REGARDING ORAL ARGUMENT

This case warrants and indeed demands that the Court order oral argument which is hereby requested.

This case is one of first impression as to whether an election can be determined by counting cast vote records only without maintaining an image of what the electronic voting system formats as a ballot despite state law requiring it to do so. If a cast vote record alone is held not to constitute a ballot that can be counted, other election officials in the state using electronic voting systems may be required to modify their equipment and procedures to comply with the Election Code. Therefore, the issues and facts in this case need to be presented orally and the attorney's permitted to address the Court's concerns regarding this complicated and important case.

## STATEMENT OF FACTS

Appellant Pressley sued to set aside the results of the run-off election for Place 4 on the Austin City Council. CR 860.

The County Clerk determined the outcome of the election at the Recount by counting cast vote records ("CVRs"). 1 CR 1983, lines 8-25, and 1 CR 1984, lines 1-11. CVRs do not have the elements of a ballot required by the Texas Constitution and Texas Election Code. (Compare the appearance of a paper ballot 1 CR 1805, 2 CR 2058, and 1 CR 1927, lines 14-18 with the CVR 1 CR 1803 and Ballot by Mail 2 CR 2058). The Hart electronic voting system, used in the election, formats the electronic ballot a Travis County voter sees when he votes that satisfies most of the statutory requirements of a ballot. 1 CR 1925, line 22 to 1928, line 24; 1 CR 1805; 2 CR 2058; (2 CR 7334, lines 16 and 17. These ballot images were not maintained by the Clerk for the run-off election (1 CR 1925, line 22 to 1928, line 24; 2 CR 7333, 2 CR 2058) except for the run-off mail in ballots which were retained. The result of the mail in ballots was a tie. (2 CR 3074 column "BBM [Ballot by Mail]"; 1 CR 1938, line 23 to 1939, line 4) There were numerous "Invalid/Corrupt MBB [Mobile Ballot Box] errors. 1 CR 2118, 2135, 2136, 2139, 2140, 2142, 2155 and 2 CR 1880, 1897, 1898, 1901, 1902, 1904, 1917. The MBB are the Hart voting system

flash memory cards that stores votes as CVRs. 1 CR 2196, 1 CR 2203 and there were more Invalid/Corrupt MBBs than the County Clerk had seen in all her years of conducting elections 1 CR 1978, lines 9-20; the "reader" tallying the votes was broken 1 CR 1979, lines 4-5; also security seals of the voting machines were broken and had to be resealed 1 CR 917, 922, 923, 924, 925, 926, 927, 929, 930.

The Hart voting system computer, which tallies the electronic votes, the CVRs, was left open on several occasions and for extended periods of time during the election and recount CR 1876, 2 CR 1883, 2 CR 1932, 2 CR 1932.

The County Clerk did not believe the Tally Audit Logs which recorded and tabulated the MBB results and all of the other events in the election in order to verify the results were reliable 1 CR 1995, lines 7-13. In addition, the County Clerk ordered her employees not to print Result/Tally tapes on the day of the run–off election (1 CR 1865) as required by the Secretary of State (2 CR 707, 711, 726, 734). Appellant was told that election backup tapes, Zero tapes and Results/Tally tapes would not be printed on the day of the election by Mr. Winn, the Clerk's Director of Elections; 1 CR 872, ¶ 42; 874, ¶ 48. Images of the ballots cast were missing; 1 CR 1982, lines 19-21; A statistical analysis of the reported results of the run-off election

indicated that the electronic tabulated results may not be believable (1 CR 861, ¶ 3, 1 CR 863, ¶ 10, 1 CR 865 ¶ 17 through 868 ¶ 26, 1 CR 933-936). During the Recount, the County Clerk's employees refused to allow the poll watchers to witness the whole process of the printing of the CVRs from the tally computer. 2 CR 7602. Specifically, Appellant and her official Recount Watchers were not allowed to monitor the integrity of where the CVRs were retrieved, the source where the retrieval occurred, or the copying of the CVR files to an aggregated .pdf file. 1 CR 886 ¶ 93-96; 1 CR 1807

There were other irregularities and mistakes made in the conduct of this election. Although Appellant's phone bank received reports from voters who were angry that the voting locations were moved from the general election locations and did not vote, and a statistical analysis was done that showed voters from District 4 who were "die-hard voters" who consistently voted did not vote in this run-off (2 Suppl. RR 99, line 10 through 100 line 22.) When no one wanted to get involved as a witness showing a disenfranchising affect the change in voting locations had on them and the Clerk in discovery at least had some evidence the new locations were posted at the old locations, Appellant amended her pleading (1 CR 860) and dropped the change in voting locations as a mistake that

may have affected the outcome of the election. 2 Suppl. RR 88, lines 6 through 100.

The only property that Pressley had that could be subject to execution to recover a sanctions award was $1,000.00. All other property owned by Pressley was either membership interests in an LLC, which cannot be seized or its assets used because they belong to an independent legal entity, or in her husband's bank account and retirement account. 2 Suppl. R.R. 65, line 12 through 66, line 19.

All facts Pressley alleged in her pleading were true.

## SUMMARY OF THE ARGUMENT

This case challenges the failure to follow Election Code provision in the conduct of an Austin City Council election. Because the Clerk did not maintain images of ballots and counted only CVRs all votes except mail-in ballots which were tied were counted illegally. In addition there were numerous other irregularities, mistakes and violations of the Election Code that could lawfully allow a court to decide it was impossible to ascertain the true outcome of the election. For either reason supported by summary judgment evidence, the trial court committed reversible error by granting the no evidence summary judgment and imposing sanctions for raising such issues.

In addition, at the request of counsel for Appellant the trial court hand wrote in the first judgment it entered that the judgment disposed of all the issues between all of the parties. Counsel for Appellee consented to and agreed to this language being inserted into the first judgment. The trial court then approved of this agreement and signed the first final judgment. Therefore, the parties read into the record in open court that the issue of whether sanctions should be imposed had been resolved by agreement satisfying the requirements of the Tex. R. Civ. P., Rule 11, and the later

actions taken related to sanctions violated Rule 11 and it was reversible error to impose sanctions. There was another "order" entered within the court's plenary power but it did not satisfy requirements for extending its plenary jurisdiction. The last judgment entered by the court which imposed sanctions was entered after expiration of its plenary power. This means that the only final Judgment in this case is the first one and the only issue is whether the trial court erred in granting Appellee's No Evidence Motion for Summary Judgment. By arguing the sanctions issues Appellant is not waiving the argument that the only valid final judgment did not impose sanctions and sanction were barred by the Rule 11.

In addition, the trial court erroneously deprived Appellant of discovery to which she was entitled and without examining the documents claimed to be exempt as "Proprietary" thereby preventing Pressley from obtaining evidence crucial and relevant to her claims and then ruled there was no evidence without even reading the evidence attached to the Opposition to the Motion The trial court's failure to follow accepted process for producing proprietary evidence and its failure to read the evidence attached to the opposition to the motion before granting a No Evidence Motion was an arbitrary abuse of discretion and caused reversible error.

Appellant provided enough evidence in opposition to Appellee's No Evidence Motion for Summary Judgment to require that it be denied. A canvass of an election can be overturned if the court cannot ascertain the true outcome of the election because of illegal conduct, inaccuracies or mistakes. It can also be overturned if illegal votes were counted. In this case there was evidence of many irregularities that if taken as true could lead a court to validly exercise its discretion to determine it cannot ascertain the true outcome of the election.

The Election Code requires that images of the ballots be preserved and counted in a manual recount. It is undisputed that images of the ballots voters see when deciding who to vote for were not maintained or available for the recount. Despite evidence presented in opposition to the No Evidence Motion for Summary Judgment showing that a CVR did not have any of the items on it that the Election Code required a ballot to have, the court erroneously granted a no evidence summary judgment. The mail-in ballots were tied and therefore a new election was required to be called. The county clerk elected to conduct this election either using an electronic voting system that did not comply with the Election Code or the system did comply with the Election Code and she neglected to preserve images of the ballots as required by law. The fact that there no images of the ballots kept

requires the calling of a new election keeping images of ballots either by getting the system that can do so or by programing the current system to keep the images of the ballots it formats for voters to decide who to vote for when they make that decision.

Finally, the trial court ordered sanctions under of the Texas Civil Practices & Remedies Code § 10.001, et. seq.  There was no evidence that any fact pled both had "…no evidentiary support or, for a specifically identified allegation or factual contention, was not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery" Texas Civil Practices & Remedies Code § 10.001(3).  App.10.

Because Pressley supplied the trial court with more than a scintilla of evidence that would in itself justify voiding the election and because the evidence in support of thereof was true and the cause of actions asserted were recognized in law or in a good faith extension thereof, this Court should reverse the trial court judgment rendering judgment that the sanctions were not warranted and remand this case for trial.

# ARGUMENT

## Issue 1. DID THE TRIAL COURT COMMIT REVERSABLE ERROR BY GRANTING APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT?

### Sub Issue 1. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY PREVENTING APPELLANT FROM OBTAINING DISCOVERABLE DOCUMENTS?

On April 13, 2015, the Court held that the County Clerk was not required to produce to Appellant access to what the Clerk's contract with the computerized voting system manufacturer called its proprietary information or inspection of direct computerized voting system used in the election, eSlate voting program, Judge's booth controllers, software or hardware used in conjunction with eSlate. 1 CR 333, 475 and 4501.

The documents and items the Court allowed the County Clerk to withhold from direct unprotected production and inspection were not privileged except to the extent they may have constituted trade secrets. There is no privilege for evidence termed "proprietary." Indeed, everything is "proprietary" to somebody. *In re: Continental General Tire, Inc.*, 979 S.W.2d 609, 613 (Tex 1998).

To the extent such information and items for inspection may have constituted trade secrets; they still may have contained information relevant and material to the issues in this case. The proper procedure was for such

items to be tendered to the Court *in camera* by the County Clerk for the Court's determination whether they were indeed trade secrets and with respect to any trade secrets for the court to determine if they contain information that could lead to the discovery of admissible evidence. Texas Rules Civil Procedure, Rules 192.3 (a) and (d) App.27 and 193.4 App.28. If they contain such discoverable information, they should still have been ordered to be disclosed subject to a protective order designed to protect their secrecy consistent with their need for use in this proceeding. *In re: Continental General Tire, Inc.*, 979 S.W.2d 609, 613 (Tex 1998)( it is an abuse of discretion to fail to conduct an *in camera* inspection under claim that documents are proprietary and decide if they can be produced under protective order). See also *In re: Dupont de Nemours & Co.,* 136 S.W.3rd 218, 223 (Tex 2004) (The trial court abuses its discretion in refusing to conduct an *in camera* inspection when such review is critical to the evaluation of a privilege claim). "[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion" *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917, 29 Tex. Sup. Ct. J. 101 (Tex. 1985)(quoted in In re: Dupont, supra at 223) See *Goode v. Shoukfeh*, 943 S.W.2d 441, 448, 40 Tex. Sup. Ct. J. 487 (Tex. 1997)(court is required to conduct *in camera* inspection before restricting production)

See also *In re: Bass,* 113 S.W.3d 735, 743 (Tex 2003).  See Civil Practices and Remedies Code § 134A.006.  *Jampole v. Touchy,* 673 S.W.2d 869 (Tex 1984), *Garcia v. Peeples*, 734 S.W.2d 343 (Tex 1987).  "Trade Secrets and confidential information are not necessarily "privileged" matters within the meaning of Rule 186a.  If the information is material and necessary to the litigation and unavailable from any other source, a witness may be required to make disclosure."  *In re: Continental General Tire, Inc., supra.* at 615.

The court's refusal to let Plaintiff's expert examine the manuals, the eSlate machines, the Judge's boxes and the MBB's to determine if they were functioning properly on the date of the election and during early voting and other material identified in the expert's affidavit, severely prejudiced Pressley's ability to present reliable evidence and expert testimony. See CR 2087-2088 and CR 4506 ¶¶ 17-18. Especially in light of all the corrupt MBBs identified in the Tally Audit log, 1 CR 2118, 2135, 2136, 2139, 2140, 2142, 2155 and 2CR 1880, 1897, 1898, 1901, 1902, 1904, 1917. 1 CR 2088 and other irregularities identified in Appellant's Opposition to the Motions for Summary Judgment (1 CR 2043) and the absence of ballot images that the voters used to make their decisions on who to vote for, the items the Court refused to allow Appellant to have were vital not only for

the expert but also for use in presenting all of the evidence Appellant had to defeat the No Evidence Summary Judgment that is on appeal here.

Therefore, the Court should have ordered the withheld documents produced to it *in camera* and ordered all non-trade secret items produced and the trade secret items to be produced subject to a protective order. Failure to follow the settled procedure for handling these discovery requests was an abuse of discretion. It was harmful error because it deprived Appellant of evidence that could have been added to the Opposition to the Motion for Summary Judgment. Essentially, the trial court prevented Appellant from obtaining relevant evidence to support her claims and then held she did not have sufficient evidence to support her claims. This was a clear abuse of discretion that contributed to the erroneous judgment appealed from herein.

**Sub Issue 2. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLE'S MOTION FOR NO EVIDENCE SUMMARY JUDGEMENT WITHOUT REVIEWING THE EVIDENCE ATTACHED TO THE OPPOSITION TO THE MOTION?**

The trial court admitted at the hearing on the Summary Judgment that it had not read the evidence 3 RR 20-21. Granting a Motion for No Evidence Summary Judgment without even reading the evidence attached

to the Opposition to a No Evidence Motion is clearly arbitrary and capricious.

Because the trial court acted arbitrarily and capriciously in entering the judgment on appeal, this Court should reverse the judgment and remand the case for trial so that the trial court can follow the law and review the documents claimed to privileged *in camera* and order the production of all material which may lead to the discovery of admissible evidence and order production of material that is subject to trade protection subject to an adequate protective order. The trial court should also be instructed to review all evidence before granting or denying a summary judgment.

**Sub Issue 3. DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY GRANTING APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT BECAUSE APPELLANT PRODUCED MORE THAN A SCINTILLA OF EVIDENCE?**

**A.**

**STANDARD OF REVIEW ON NO-EVDIENCE MOTION**

This Court has clearly stated that it applies the *de novo* standard of review on appeals from no-evidence summary judgments*. Baize v. Scott and White Clinic,* 2007 Tex. Lexis 366, p. 3 (Tex.App.—Austin, 2007 pet. den'd). In the same case, the Court held that once a movant for no-evidence summary judgment asserts the non-movant has no evidence on a specific required element of her case, the burden shifts to the non-movant

to raise a genuine issue of material fact on the challenged elements. In making such review, the appellate court considers as true all evidence favorable to the non-movant and indulges any reasonable inferences and resolve doubts in favor of the non-movant. *Valence Operating Co. v. Donell*, 164 S.W.3d 656, 661 (Tex. 2004).

Since this an appeal of a judgment granting a No-Evidence Summary Judgment, 1 CR 4605, this standard applies to the disposition of this case. The Argument under the issue will presume that this Court is conducting a *de novo* review accepting the evidence attached to Appellant's Opposition to the Summary Judgment in the trial court, 1 CR 2043, as true and indulging every reasonable inference in Appellant's favor and resolving all doubts in favor of Appellant.

The cause of action in this election contest is provided by statute:

"The tribunal shall declare the election void if it cannot ascertain the true outcome of the election." Texas Election Code § 221.012 App.4.

The election code also states what evidence the Court can look to in exercising its discretion that it cannot ascertain the true outcome of the election:

"Sec. 221.003. SCOPE OF INQUIRY. (a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because:(1) illegal votes were

counted; or ( 2) an election officer or other person officially involved in the administration of the election:(A) prevented eligible voters from voting;(B) failed to count legal votes; or(C) engaged in other fraud or illegal conduct or made a mistake." App.27.

Therefore, if Appellant has produced in opposition to the No Evidence Summary Judgment more than a scintilla of evidence including all inferences in her favor and regardless of any evidence to the contrary urged by Appellee that the County Clerk failed to follow the requirements of the election code counting CVRs only while not maintaining images of ballots cast or that illegal conduct, irregularities, or mistakes in the conduct of the election process occurred, Appellee was not entitled to a no evidence summary judgment and the trial court committed reversible error in granting it. In reviewing the evidence submitted to determine whether it is more than a scintilla the Court must accept Appellant's evidence as true regardless of evidence to the contrary submitted by Appellee and give all reasonable inferences raised by the evidence to Appellant, ignoring contrary evidence offered by Appellee. *Valence Operating Co. v. Donell*, 164 S.W.3d 656, 661 (Tex. 2004); *Baize v. Scott and White Clinic,* 2007 Tex.Lexis 438 (Tex.App.—Austin, 2007 pet. den'd).

**1. Appellant offered evidence that the County Clerk did not comply with the Election Code's requirement to maintain ballot images**

Texas Election Code § 128.001, App.19, proscribes the requirements for use of computerized voting system. The statutes of Texas provided the Hart system could not have been used to conduct this election unless it had:

> **"(2)** a main computer to coordinate ballot presentation, vote selection, ballot image storage, and result tabulation. and **(b)** Notwithstanding Chapter 66, a system under this section may allow for the storage of processed ballot materials in an electronic form on the main computer..

The evidence presented by Appellant's Opposition to the No Evidence Motion for Summary Judgment (1 CR 2043) was more than a scintilla of evidence (raised a genuine issue of material fact) that the Travis County Clerk either did not use a system that complied with the foregoing statute or, if she did, she failed store images of ballots and did not store those images in compliance with law. While relying on all of the evidence attached to the Opposition to the Motion for Summary Judgment, 1 CR 2043 the following appears to be sufficient in itself:

1.     The affidavit of Contestant's computer science expert that a CVR is not a ballot image and that some federal reports and other studies require the image of the ballot in addition to a CVR be maintained as a check on the computer.  1 CR 2087, 2088.

2.    The clerk's testimony that her office did not maintain images of the ballot presented to voters by the computerized voting system when they decide who to vote for 1 CR 1925, line 22 to 1928, line 24; 2 CR 2058 and the exhibits showing the appearance of that ballot and the CVR 1 CR 1982, Lines 19 -21; 2 CR 2058 which was the only item stored and relied on to count votes 1 CR 1984, lines 9 -11.  It is clear from this evidence and that of the Appellant's expert 1 CR 2087 and 2088 that a CVR is not an official ballot and does not contain the legal components required of a Texas ballot (1 CR 899 ¶ 146).  Because "ballot image storage" was not used by Travis County, as the statute requires, the required ballot images from the run-off election are missing election records and there are no official ballots that can be counted other than the Absentee/Mail in Ballots which resulted in a tie (2 CR 3074 column BBM). Failing to print and produce the legally required "images of ballots cast" for the election recount is a violation of Texas Election Code § 213.016, App.20, by itself. Therefore, the only true outcome that can be ascertained is a tie which requires a new election. (2 CR 3074, column "BBM"  1 CR 1938, line 23 to 1939, line 4).

"'Election records' also include ballot boxes (containing voted ballots), tally sheets, absentee ballots, Results/Tally tapes, and items like them, also constitute "precinct election records," as defined and used in chapter 66 of

the code. In addition, Section 273.003 lists election returns, voted ballots, and the signature roster as specific types of election records. TEX. ELEC. CODE ANN.§ 273.003 (Vernon 1986). Based on the uses of the term 'election records' and the examples listed within the code, we conclude 'election records' are those which memorialize the actual election and the actual conduct of the election". *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 228-229, 2000 Tex. App. LEXIS 5773, 13-14(Tex. App. Dallas 2000). Therefore Ballot images are election records which memorialize the actual election and the actual conduct of the election. *Id.* When the Texas Constitution and statutes that define what a ballot must contain (1 CR 899, ¶ 146) is compared with what appears on the CVR (1 CR 1803, 1 CR 2944, 2 CR 613), it is clear that a CVR is not an image of a ballot as defined by the Election Code. See Texas Election Code §§ 52.003 App.14, 52.070 App.31, and 52.031. App.17.

3. The affidavit of Appellant's expert stating that a CVR is a data file, not an image file. 1 CR 2087 and 2088.

4. Evidence that was presented that supports the Hart Voting System is capable of formatting ballot images and Travis County did not retain them:

a) The Clerk's testimony that the Hart computerized voting system formats an image of a ballot meeting statutory requirements that the voter is shown when deciding who to vote for on the eSlate program 1 CR 1925, line 22 to1828, line 24;

b) The Ballot by Mail (1 CR P. 1805 and 2 CR P. 2058) is formatted and saved using the Hart Ballot Now system's Ballot Now Image Processor (1 CR 2055, ¶ 34, 1 CR 2633, 2656, 2659, 2664, 2666, 2774, 2781, 2782, 2791, 2792, 2794, 2829, 2830);

c) The Secretary of State's letter to Travis County that the Hart Voting System used by Travis County Clerk preserves "ballot images" (2 CR 7619). 1 CR 643; 3 RR 52, line 6 through 53, line 8;

d) The eSlate displays ballot styles that are presented to voters when they are making their decision who to vote for show the various components of a legal ballot (name of the Election, date of the election, voting squares, instructions, all candidate names, etc. 1 CR 2942, 1 CR 1927, lines 14-19). The ballot styles are formatted and saved on a MBB using a ballot image program in the Ballot Origination Software System (BOSS) as

defined by the Ballot Now Manual. 1 CR 2664. Therefore, Hart does have a program that is apparently capable of combining a flash card with a ballot image onto an MBB which can plugged into the Tally system (1 CR 2656).

Texas Election Code § 52.001 App.13 is clear that "the vote in an election is by official ballot" and Texas Election Code § 2.001 App.11 states, "…to be elected to a public office, a candidate must receive more votes than any other candidate for office." Since the legally required "images of ballots cast" (Texas Election Code § 128.001 App.19 and § 213.016 App.20) are missing, the election should have been recanvassed with the only legal and official ballots, the mail in ballots, (1 CR 4667, ¶¶ 186 – 187) and the recount should have been recanvassed as an exact tie. CVRs are not mentioned in any part of the Texas Constitution or the Texas Election Code and are not official ballots. If there are missing election records that are material in determining the true outcome of the election, the Court is authorized to void the election. *Guerra v. Avila*, 597 S.W.2d 400, 403 (Tex.Civ.App.—San Antonio 1980, no writ). If the Clerk counts illegal votes, those votes are cancelled under Texas Election Code § 221.003 (1) and (3) App.22. This leaves the election tied because the only images of ballots the computerized voting system kept were the eScan program's

mail-in ballots and those resulted in a tie, authorizing the ordering of a new election as requested by Appellant. 2 CR 3074, Column "BBM"; 1 CR 1938, line 23 to 1939, line 4.

Ballots are defined in Texas Election Code, Chapter 52, Subchapter C. For the purposes of this suit, the most salient portions of that subchapter are Sec. 52.003 App.14 and Sec. 52.070 App.31. It is clear from these provisions that the Legislature did not permit this election to be decided by counting or recounting CVRs which do not resemble or contain the components of an official ballot in any respect. See also Texas Election Code § 214.049 (e).

Note that the Travis County CVR 1 CR 2994; 2 CR 613. does not contain:

      a. a unique serial/ticket number (Texas Constitution, Article 6, Section 4, App.9 and Texas Election Code § 52.062, App.15.)

      b. the election name and candidate (Texas Election Code § 52.063), of Joint Special Runoff Election, Travis County, App.16; 52.031. App. 17.

      c. the election date (Texas Election Code § 52.063), of December 16, 2014

      d. the designation of Official Ballot (Texas Election Code § 52.064), App.33.

      e. a voting square to the left of each candidate's name (Texas Election Code § 52.070), App.32, and

f.  voting instructions (Texas Election Code § 52.070). App.32.

The CVR does not meet the Constitution's minimum requirement that an election be conducted by a numbered ballot since the CVR is not numbered.  Texas Constitution, Article VI, Section 4  App.9.  Therefore, any decision by a state official like the Secretary of State or the Travis County Clerk that allowed the true outcome of an election to be decided by something other than a numbered official ballot would be unconstitutional.  Indeed, the Clerk confessed that a ballot image and a CVR are not the same thing 2 Suppl. RR 189, lines 2 - 9.

Thus, Appellant's evidence attached to her Opposition to Contestee's No Evidence Motion for Summary Judgment showing that a CVR is not a ballot and the outcome of this election was not determined by counting ballots or images of ballots which were not preserved and therefore missing creates more than a scintilla of evidence that the true outcome of this election cannot be determined. The trial court could not grant this motion by relying on any contrary evidence that Appellee attached to a Motion for Traditional Summary Judgment which was not granted and is not involved in this appeal.  1 CR 4605; 2 C.R. 2060.

The CVR has been around a long time.  If the Legislature wanted to make it permissible to determine the true outcome of an election by

counting CVRs instead of ballots as it has defined them it could have done so (subject to the Constitution's mandatory requirement that elections be by numbered ballots).

The question in this case is whether absent specific statutory authority this court will allow our elected officials to be determined by a computer data tally only of what the voter's ballot says without the backup of an actual ballot or an image of one. In this day and age with computer crashes, errors and hacks, the wisdom of our Legislature in requiring the system to maintain images of the actual ballots is clearly good public policy and should be presumed to be its intention.

Appellees have asserted that the issues raised in this case have been decided in *Andrade v. NAACP of Austin,* 345 S.W.3d 1 (Tex. 2011). That case has nothing to do with issues raised in this case. *Andrade, supra,* dealt solely with standing and equal protection. The issue in that case was whether the voters who alleged that they were denied equal protection of laws under the constitution because they were required to use the Hart electronic voting system and other voters in statewide elections were not required to do so. The Court first held these voters had standing to raise the equal protection claims and then held there was no violation of equal protection by use of different voting systems in different counties in a

statewide election. The Court then held that the voters did not have standing to attack the lack of ballot verification and therefore never reached the merits of anything like the issues involved in this case. Here there is no challenge to Appellant's standing. *Andrade, supra,* is very instructive in its description of how the Hart system worked when an election is held: "Voters arriving at the polls in counties using the eSlate are given a unique access code. The voter enters the code into the eSlate, which then displays the ballot. Voters turn a dial to highlight their ballot choice and then press "enter" to make a selection. After a voter completes his selections, the eSlate displays a ballot summary page. If the voter's choices are correctly displayed, the voter presses the "cast ballot" button, and the vote is recorded. *See Voter Instructions,* TRAVIS COUNTY, purchased the eSlate system in 2001 and has used it since 2003." *Id.* at 5. (emphasis added) The critical aspects of this description for this appeal are the Supreme Court's acknowledgement that the system used by Travis County "displays the ballot" (emphasis added). This is the only relevant part of *Andrade, supra* and actually makes Appellant's point that this ballot is not printed and not preserved even though it is formatted 1 CR 1927, lines 13 -18 and 1 CR 1805 for every voter to see by the Hart voting system. As a result, the evidence eSlate formats a ballot raises at least a fact issue as to whether

the Secretary of State had authority under the Texas Election Code § 52.075 App.37 to imply in its instructions and definitions that a CVR is synonymous with an image of a ballot as defined in the Election Code.

The other case Appellee has relied on is *Texas Democratic Party v. Williams*, No. A-07-CA-115-SS (W.D. Tex. August 16, 2007). In that case, voters complained that the eSlate deprived them of the ability to "emphasis vote"; that is, to cast a straight party vote and then also again vote for a particular candidate within that party—to make sure their votes count for these particular candidates. The voters argued that, if they attempted to emphasis vote, the eSlate would de-select, rather than register a vote for, the individual candidate. The trial court held that even assuming that the eSlate impacted voters' ability to cast emphasis votes, the use of DREs was constitutionally permissible. Therefore, neither case dealt with either of the issues involved in this case (does a CVR satisfy the election code requirement to maintain an image of a ballot and can several irregularities and mistakes in the conduct of an election permit a court to void the election by making it impossible to ascertain the true outcome?).

The trial court conceded that if a CVR is not an image of a ballot then Appellant would be entitled to a new election, 4 RR 60, line 13 to 62, line 20, then erroneously granted a no evidence summary judgment that

Appellant did not produce more than a scintilla of evidence that a CVR is not an image of a ballot.

**2. APPELLANT PRODUCED MORE THAN A SCINTILLA OF EVIDENCE THAT THERE WERE IRREGULARATIES AND MISTAKES IN THE CONDUCT OF THE ELECTION TO DEFEAT APPELLEE'S MOTION FOR NO EVIDENCE SUMMARY JUDGMENT.**

"A court trying an election contest shall attempt to ascertain whether the outcome shown by the final canvass was not the true outcome because illegal votes were counted or because an election official or other person officially involved in the administration of the election (1) prevented eligible voters from voting, (2) failed to count legal votes, or (3) engaged in other fraud or illegal conduct or made a mistake. Texas Election Code Ann. § 221.003(a) (Vernon 2010). To set aside the outcome of an election, the contestant must prove by clear and convincing evidence that a violation of the election code occurred and such violation materially affected the outcome of the election. *McCurry v. Lewis*, 259 S.W.3d 369, 372-73 (Tex. App.--Amarillo 2008, no pet.). The outcome of an election is 'materially affected' when a different and correct result would have been reached in the absence of irregularities or 'irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will.' *Id.* at 373, *see also Gonzalez v. Villarreal*, 251 S.W.3d 763, 773, 777-78 (Tex. App.--Corpus Christi 2008, pet. denied) ; *Ware v. Crystal City Indep. Sch. Dist.*, 489 S.W.2d 190, 191-92 (Tex. Civ. App.-San Antonio 1972, writ dism'd)." *Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 98 (Tex. App. Dallas 2010, pet. den.) (emphasis added).

In *Duncan-Hubert, supra* the court reversed the grant of a no evidence summary judgment based on the affidavit of an expert showing that were so many mistakes and irregularities that it could be impossible to

ascertain the true outcome of the election even though the Contestant could not point to actual votes affected. This is strikingly similar to the case at bar except Appellant presented much more evidence of mistakes, irregularities and counting of illegal ballots.

In the case of *Gonzalez v. Villarreal*, 251 S.W.3d 763, 773, 777-78 (Tex. App.--Corpus Christi 2008, pet. denied) the Court also held after a trial that mistakes and irregularities were enough to overturn an election. It held:

> "{T}the election code does not require a trial court to rely solely on 'illegal votes' in attempting to ascertain the true outcome of an election. As is evident from section 221.003, the outcome of an election can be muddled not just by the counting of illegal votes or the failure to count legal votes, but also by mistakes made by election officers. TEX. ELEC. CODE ANN. § 221.003(a)(2)(C) See *Alvarez*, 844 S.W.2d at 242. A contestant may allege and prove that "irregularities rendered impossible a determination of the majority of the voters' true will.' *Guerra*, 865 S.W.2d at 576."

*Gonzalez v. Villarreal*, 251 S.W.3d 763, 773, 777-78 (Tex. App.--Corpus Christi 2008, pet. denied).

In *Garcia v. Avila*, 597 S.W.2d 400, 403 (Tex. Civ. App. -San Antonio 1980, no writ), the Court held that missing election records alone could justify overturning an election. In this case, the trial court clung to the erroneous belief that appellant was required to identify specific vote

changes caused by the mistakes 4 RR 104, lines 3-17. The missing images of items that met the statutory definition of a ballot and satisfied the Texas Constitution's minimum requirements of what must be on a ballot that is counted to determine the outcome of an election was more than enough to void the election and appellant provided ample proof of this to avoid summary judgment.

In addition, Appellant produced evidence that there were numerous Invalid/Corrupt MBBs,1 CR 2086 - 2087, 1 CR 2118, 2135, 2136, 2139, 2140, 2142, 2155 and 2 CR 1880, 1897, 1898, 1901, 1902, 1904, 1917; 1 CR 2056 paragraph 41 through 2059 paragraph 48; that there were more Invalid/Corrupt MBBs than the County Clerk had seen in all her years of conducting elections (MBBs contain the CVRs from a voting machine) 1 CR 1978 lines 9-20; that the "reader" tallying the votes was broken 1 CR 1979 line 4-5; that seals were broken bringing the security and accuracy of the MBBs into question 1 CR 917, 922, 923, 924, 925, 926, 927, 929, 930; that the computer that tallies the CVRs was left open on several occasions and for extended period of time that the County Clerk did not believe the tally log which recorded the MBBs and all of the other events in the election in order to verify the results were reliable 1 CR 1995 lines 7-13; that the County Clerk ordered her employees not to print zero tapes and result

tapes on the day of the run–off election as required by the Secretary of State 1 CR 1865 and Appellant was told the same by Mr. Winn, the Clerk's Director of Elections 1 CR 872 paragraph 42; 874, paragraph 48; that images of the ballots cast were missing; 1 CR 1982 lines 19-21; that a statistical analysis of the reported results of the run-off election indicated that the results were not believable and that the county clerk's employees refused to allow the poll watchers to witness the whole process of the printing of the CVRs from the tally computer 1 CR 886 paragraph 93..

Specifically, Appellant and her official Recount Watchers were not allowed to monitor the integrity of where the CVRs were retrieved, the source where the retrieval occurred, or the copying of the CVR files to an aggregated pdf file. 1 CR 886, ¶ 93. Since they were arguably allowed to do so by Texas Election Code § 33.056 App.12 and § 213.013 App.33 that obstruction may have violated Texas Election Code § 33.061. App.35

These errors relate to the counting of votes and the scope of their effect on the vote count is significant even though that by their nature and the court's erroneous discovery order it is impossible to say how many illegal votes were counted or how many legal votes were not counted. Based on the cases cited above, Appellant's Opposition to the No Evidence Motion for Summary Judgment produced much more than a scintilla of

evidence that would have allowed a court to exercise its discretion at a trial and decide that the cumulative effect of these violations of the election code, irregularities and mistakes "rendered impossible a determination of the majority of the voter's true will" *Gonzalez v. Villarreal, supra.* Therefore, the Court erred in granting Appellee's no evidence motion for summary judgment and this court should reverse the judgment below and remand it for trial.

The court in *Alvarez, supra* said it best:

"But perceptions of fairness are also important. The public must have confidence that the election process is fair for all candidates. It is therefore imperative that election officials comply with code procedures. Those who have studied history and have observed the fragility of democratic institutions in our own time realize that one of our country's most precious possessions is the commitment of our public officials to the rule of law -- fair and evenhanded application of rules known in advance -- and the widespread acceptance of election results. Repeated abuse of power by election officials can chip away at public respect for our legal institutions and undermine the willingness of losing candidates to accept the results. Cases may arise in which official disregard of the election laws is so pervasive that the courts could not let the election stand, even though the contestant might not be able to prove that the violations caused an incorrect outcome." *Alvarez v. Espinoza,* 844 S.W.2d 238, 249 (Tex. App.--San Antonio 1992, writ dism'd w.o.j.)

The Court in *Alvarez, supra* did not believe there were enough errors to exercise its discretion to void the election but it did analyze a much less

compelling bed of evidence in making that decision. It did not hold the evidence of errors and missing records was no evidence. It just said it was enough to reverse the trial court's exercise of discretion at trial. Therefore, the evidence submitted by appellant in opposition to the no evidence motion for summary decision entitled her to a trial and the judgment should be reversed and the case remanded to afford her the trial the law affords her.

## Issue 2. DID THE TRIAL COURT COMMIT REVERSABLE ERROR BY AWARDING SANCTIONS AGAINST APPELLANT PRESSLEY?

**Sub Issue 1. WAS THE RIGHT TO SEEK SANCTIONS FORECLOSED AND BARRED BY THE LANGUAGE OF THE ONLY FINAL JUDGMENT DURING THE COURT'S PLENARY POWER OR THE RULE 11 AGREEMENT THAT ALL ISSUES BETWEEN THE PARTIES WERE RESOLVED?**

At the conclusion of the summary judgment hearing Appellant's counsel asked the court to rule that the judgment it was about to enter resolved all issues between all parties. Appellee's counsel agreed to this language and the court wrote it in at the bottom of the judgment. 4 RR 12, lines 18 -21; 1 CR 4605; App.1. This Judgment was entered on May 26, 2015. The next time the court entered a final judgment amending the May 26, 2015 final judgment was on July 23, 2015 App.3, CR Suppl. IV 52, well beyond the court's 30 day plenary authority which expired on June 25,

2015. The order entered on June 24, 2015 App.2. CR Suppl. IV 16 did not amend the earlier judgment in that it was not a final judgment in itself because it affirmatively showed it was not intended to resolve all issues and it did not include the finality language the first judgment had. "…O{o}nly a motion seeking a substantive change will extend the appellate deadlines and the court's plenary power under Rule 329b(g) App. 36. *See Cavalier Corp. v. Store Enter, Inc.*, 742 S.W.2d 785, 786 (Tex. App.— Dallas 1987, writ denied)." *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, (Tex. 2000); ; See *Schroeder v. Haggard*, 2007 Tex. App. LEXIS 3725 (Ct. App.- San Antonio 2007 no pet.) In *Schroeder*, *supra* the Court held that a document filed in the record and issued by the Court that anticipated further action by the Court did not extend the Court's plenary power past 30 days. This June 24, 2015 order did not amend a judgment by entering a different final judgment or by modifying the existing judgment and it did not order a new trial. Therefore, it did not qualify as an order extending the plenary jurisdiction of the Court for another 30 days. There was no post judgment motion filed (the second amended and third amended motions for sanctions were filed after the final judgment was signed on May 26, 2015, but both related back to a pretrial motion filed on April 23, 2015, (1 CR 479) which had already been resolved by the finality

language in the May 26, 2015 judgment that all issues between the parties pending at that time had been resolved as of that date. 1 CR 4605. The Court's plenary jurisdiction was not extended to entertain a sanctions motion that was pending at the time the Court entered a final judgment. *Jobe v. Lapidus*, 874 S.W.2d 764, 767 (Tex. App. Dallas 1994, no pet.). Therefore, the Court did not have plenary jurisdiction to enter the July 23, 2015 final judgment containing sanctions and same was void. *Id.*; *In re: Reynolds* 2014 Tex. App. Lexis 7105 (no pet. h.) voiding post judgment sanction requested pretrial.

In addition, the language that Appellee agreed to in the first judgment that resolved all pending issues (the Motion for Sanctions was pending at the time) (1 CR 479) was made in open court and approved by the Court. The agreement between the parties on the record and approved by the Court constituted a binding agreement enforceable pursuant to Texas Rules of Civil Procedure, Rule 11, App.26 that no other issues, including the sanctions motion, could be taken up by the trial court after the agreement was approved by the Court. Therefore, the first judgment and the Rule 11 Agreement approved by the Court, precluded the Court under settled principals of law form conducting a hearing and entering a sanctions

order.  Doing so was therefore a clear abuse of discretion and reversible error.

**Sub Issue 2.    WAS CHAPTER 10 OF THE CIVIL PRACTICES AND REMEDIES CODE VIOLATED?**

**A.**

**Standard of Review**

In the event this Court does not decide that it was an abuse of discretion to take up the Motion for Sanctions and the Court's sanction order was within its plenary power, the following is the case law describing the standard of review for deciding whether to reverse a sanction order.

"A trial court's ruling on a motion for sanctions is reviewed under an abuse of discretion standard.  *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex. 2004).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles.  *Id.* at 838-39.  The trial court's ruling should be reversed only if it was arbitrary or unreasonable.  *Downer*, 701 S.W.2d at 242, *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex. 2004).  A trial court abuses its discretion when its ruling is arbitrary and unreasonable without reference to any guiding rules and principles. *Id.* at 838-39.  In conducting

our review, we are not limited to a review of the 'sufficiency of the evidence' to support the trial court's findings; rather, we make an independent inquiry of the entire record to determine if the court abused its discretion by imposing the sanction." *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 812 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

"Generally, courts presume that pleadings and other papers are filed in good faith. *Low*, 221 S.W.3d at 614; *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993). The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Low*, 221 S.W.3d at 614." *Rogers v. Walke*r, 2013 Tex. App. LEXIS 6452, 13th Court of Appeals, 2013; *Foust v. Hefner,* 2014 Tex. App. LEXIS 8880, page 3 (Tex. App. Amarillo Aug. 12, 2014 no pet.). App.30.

## B.

### Appellee's Burden Below

It seems clear that to carry its burden, Appellee must have presented enough evidence to overcome the presumption that the Appellant has not violated Texas Civil Practice and Remedies Code, Chapter 10*. App.10.* "In order for a party seeking sanctions to prevail, there must be little or no

basis for claims, no grounds for legal arguments, a misrepresentation of law or facts, or a legal action that is sought in bad faith. *Herring,* 27 S.W.3d at 143. It is the movant's burden to establish there was no evidentiary support for the allegations in plaintiffs' petition. See Id." *Griffin Indus. v. Grimes,* 2003 Tex. App. LEXIS 3439, 2003 WL 1911993 (Tex. App. San Antonio, 2003, no pet.); Herring v. Welborn, 27 S.W.3d 132, 2000 Tex. App. LEXIS 4567 (Tex. App. San Antonio 2000 no Pet.) See on rehearing, *Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 228 (Tex. App. -Dallas 2000). In addition with regard to monetary sanctions against a party the entire record must show that the pleading contains factual allegations that have no evidentiary basis (See the limitation against the imposition of monetary sanctions against a party in Texas Civil Practice and Remedies Code, Section 10.004 (d)) App.10. *See also Low v. Henry*, 221 S.W.3d 609, 615 (Tex. 2007). Appellant did not sign a pleading and given her status as a party the court abused its discretion by imposing monetary sanctions against her in light of Texas Civil Practice and Remedies Code, Section 10.004 (d), App.10, unless the entire record shows the particular factual allegation challenged by the motion has no evidentiary basis or was not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. See *Foust*, *supra* at page 3. Since there

was no evidence at the sanction hearing that any allegation met the test for imposition of monetary sanctions against a party the trial court's sanction order was arbitrary and unreasonable without reference to guiding rules and principles that by ignoring that:

1. There is a presumption that the allegations were not subject to sanctions that was not overcome;

2. There was no evidence or it was against the great weight and preponderance of the evidence enabling the trial court to reach a conclusion that factual allegations challenged by the motion has no evidentiary basis or was not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery either was evidence or was against the great weight of the evidence after a review of the entire record;

3. The trial court made no determination or inquiry into whether lesser sanctions than $40,000 plus expenses and appellate attorney's fees were available and sufficient to accomplish its goals;

4. The trial court misapplied the *Low* factors in determining the appropriateness and amount of the sanctions;

5. There trial court did not determine that and there was a direct nexus between any improper conduct and the sanctions imposed. *Low*, 221 S.W.3d at 614; and

6. The sanctions imposed were not tailored to remedy any identified prejudice allegedly caused by the alleged conduct. *Thottumkal v. McDougal*, 251 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004).

## C.
## Argument

Appellant incorporates herein her argument under Issue 1 which shows record references that her allegations had evidentiary support and valid legal arguments that were sufficient to render a sanction order arbitrary and capricious and reversible error.

It is clear from the court's conclusions of law that it imposed sanctions for assertion of facts on the following:

1. Zero tapes were not printed on the day of the election (contained in all seven contest pleadings) 3 Suppl. RR 222, line 17 – 223, line 2.

2. Some voter's did not vote because the voting location they went to in the general election were closed and consolidated elsewhere. (not in the 6th amended final pleading) 3 Suppl. RR 219, line 2 – 220, line 9.

3. Michael Winn and Dana DeBeauvoir violated the criminal statute prohibiting interference with poll watchers. 3 Suppl. RR 221, lines 2-10. Election Code 221.013, App. 24

It is also clear the Court imposed sanctions for making the legal contention that the above-referenced facts were evidence that could be used to void an election. See also discussion in 3 Suppl. RR 223, lines 11-24.

Although there are findings of fact related the allegation that the Clerk violated the election code by counting and maintain only CVRs when she was required to maintain and count images of ballots cast, the trial court made it clear that it was not sanctioning for those allegations, 3 Suppl. RR 223, lines 8-10 and made no conclusion of law that doing so was sanctionable. Suppl. III CR 36 – 51. App.3.

The trial court's view of the factual and legal allegations in the various incarnations of the Contest Petitions is totally contrary to the clear great weight and preponderance of the evidence in the record as a whole. The fact that plaintiff lost the no evidence Motion for Summary Judgment (especially when that was an erroneous ruling) or that Appellant attempted to pursue an unpopular claim or one that someone else would not have pursued cannot form the basis of a sanctions order. *Foust*, *supra*, at page 3. App.29. In *Foust* the Court overturned a sanctions order based on the failure to produce evidence of causation at trial when there was no evidence of improper motive at the time the allegation was made.

Indeed, Appellant went through the unusual effort of attaching almost all of the evidence upon which the factual allegations of mistakes and irregularities in the election were based to each version of the Contest and

did several statistical analyses before filing this Contest. Other than the allegation that voting locations were changed this court need only look at the 6th Amended Contest, 1 CR 863, since the allegations therein were developed after "further investigation and discovery" and therefore obviously complied with Section 10.001(3), App.10. *Bader, Inc. v. Sandstone Prods. Inc., Supra.* The pleading should be read as a whole for a complete listing of evidence attached to it.

The pleading included evidence showing the following and more with respect to the evidentiary basis for its allegations:

1. Tally Audit logs showing multiple missing Logout entries 1 CR 1807, 1CR 1814, 1 CR 1863, 1 CR 1863.6;

2. Tally Audit Logs showing multiple "Invalid/Corrupt MBB Mobile Ballot Box errors (1 CR 1811, 1828, 1829, 1832, 1833, 1835, 1848, 1978 line 4 - 20, 1979 line 4.);

3. Judges' Booth Controller (JBC), Judge's Envelope cover states, "DO NOT PRINT THE TALLY" (1 CR 1865); Election Code § 66.051-054. App.18

4. Travis County Clerk, Dana DeBeauvoir's Deposition regarding no Results Tapes, (1 CR 2008, lines 13-15). Tally Audit Logs, 1967, 1968, 1974, 1975, 1976, 1977, 1978) Election Code § 66.051-.054. App.18

5. There were no zero tapes printed on the day of the election. As noted in the Sixth Amended Petition, p. 12-13 ¶¶ 38 – 41, (1 CR 871-872), the Texas Secretary of State requires the printing of Zero Tape Reports during Early Voting and on Election Day at each precinct/polling location. Zero Tape Reports are defined by the Texas Secretary of State as: "A Zero Tape is the tape that is printed when the voting machine is first set up at the polls. It is called a Zero Tape since *all contests* or propositions should have zero votes next to each name or question." (2 CR 712; 2 Suppl. RR 78, line 9 to 79, line 13). Also, according to the Texas Secretary of State's Election Advisory No. 2012-03(6)(g)(vi), 2 CR 707 and 726 related to Zero Tapes:

"Opening the Polls:

1. At a minimum print one zero tape from each applicable device, as follows: The presiding judge, an election clerk, and not more than two watchers, if one or more watchers are present, *shall* sign the zero tape. 2. Maintain zero tapes in a secure location to be returned with election materials (i.e. Ballot Box #4 or other secure means designated by the general custodian of election records)." *(emphasis added)*(Exhibit J, p. 8 (2 CR 707))

In Contestee's Third Amended Motion for Sanctions, it is claimed that Appellant actually produced a zero tape as an Exhibit. (IV Suppl. CR 9)

The document referred to is not a Zero Tape, 1 CR 1875, and App.36, because it does not contain all of the information required to be in a Zero tape in order for it to perform its function. It does not contain the following information required by the Texas Secretary of State for Zero Tapes (2 CR 710):

"All contests should have zero votes next to each name" In fact, Contestant and Contestee's District 4 is not listed on the partial tape and neither Pressley nor Casar is listed with zero votes next to their respective names,

"Zero Tape is printed when voting machine is first set up at polls" 1 CR 710. In fact, the partial tape Travis County produced was not printed when the voting machines were set up at the polls during Early Voting (December 1) or during Election Day (December 16). The partial tape was printed on November 26th, a week prior to Early Voting,

"The presiding judge…shall sign the Zero Tape" 1 CR 703, item vi.1.

The partial tape produced by Travis County and attached to Appellant's pleading was not signed by an election judge. (1 CR 1875) See larger version App.36; Election Code § 66.051-.054. App. 18

Travis County Clerk testified at the Sanctions Hearing on June 18, 2015 that tapes were not printed on Election Day. 2 Suppl. RR 224, lines 3-8. She also testified that a letter exempting her from printing Zero tapes for the general election (2 CR 7618-7619) applied to the run-off even though she did not have a similar letter referring to the run-off. 2 Suppl.

RR 183 lines 5 - 16 which implies that the Clerk did not print zero tapes on the day of the election. As noted in the Sixth Amended Petition, P. 13 ¶ 42 (1 CR 872 ¶ 42), Appellant communicated with the Travis County Elections Division Director and was told no Zero Tapes would be printed for the run-off. In addition the testimony at the sanctions hearing made clear that Appellant had a lot of evidentiary support for her allegations that Zero tapes were not printed on the day of the election. 2 RR 48 to 50, line 5.

6. The allegation that voters were disenfranchised because their voting location was changed from the locations at which they voted in the general election was likely to have evidentiary support after a reasonable opportunity for further investigation and discovery given the statistical evidence indicating voters who always vote in run-offs did not vote in this one and numerous complaints to Pressley's phone bank and the likelihood that voters would be willing to testify about their disenfranchisement. 2 Suppl. RR 88, line 6 to 96, line 10, line 20. When it became clear that the voters who the statistical study indicated did not vote because of a change in voting locations would not be willing to testify and other expected reasonably likely evidentiary support would not materialize, Pressley dropped that claim from her final pleading since it turned out to be a

"hairball". 2 Suppl. RR 88, line 6 to 96, line 10, line 20. This is precisely what the sanctions power is designed to encourage. To use removing an allegation after the anticipated evidence did not materialize, which should be rewarded not sanctioned, is an abuse of discretion. *Thottumkal v. McDougal*, 251 S.W.3d 715, 717 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004)) and Texas Civil Practice and Remedies Code § 10.004(b). App.10. This evidence proves Appellant had the appropriate state of mind when she made this allegation and was not subject for sanctions for doing so. "The party moving for sanctions must prove the pleading party's subjective state of mind." *Brozynski v. Kerney,* 2006 Tex. App. LEXIS 6817, 2006 WL 2160841, at *4 (Tex. App.--Waco Aug. 2, 2006, pet. denied) (citing *Mattly v. Spiegel, Inc.,* 19 S.W.3d 890, 896 (Tex. App.--Houston [14th Dist.] 2002, no pet.)). "In the case of Section 10.001(1), the movant must show, and the Court must describe and explain, that the pleading was filed for the improper purpose of harassment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(1) ; *id.* § 10.005 ("A court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed.")". *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 708

(Tex. App.—Waco 2008, pet denied). Since Appellant clearly had an evidentiary basis for making the allegation or reasonably expected she would obtain witness statements or proof there were no signs posted redirecting voters from their original vote locations, the presumption of good faith was not overcome. Therefore, it was an abuse of discretion to sanction Appellant for making this allegation.

7. Appellee's counsel, in an effort to prejudice the trial court, continuously accused Pressley and Rogers of directly accusing Dana DeBeauvoir and Michael Winn of criminal conduct. 3 Suppl. RR 25, line 21 to 26, line 4. The pleadings do not directly accuse any particular election official of committing a crime. 1 CR 877, ¶¶ 60 - 62 and 886, ¶ 93 to 887, ¶ 96. The allegations of interference with poll watchers was supported by affidavit (2 CR 7620) and was only included because illegal conduct is one of the grounds a court looks at in deciding to overturn an election. Nowhere in these allegations is Dana DeBeauvoir even mentioned, and all that Mr. Winn is directly accused of doing is not answering phone calls. Indeed, there is no direct allegation that either had any personal involvement in the illegal activities. 1 CR 875-878. Therefore, sanctions based on the totally erroneous proposition that Appellant had no evidence or legal basis to accuse Dana DeBeauvoir and Michael Winn of criminal

conduct is arbitrary and capricious. To the extent there may have been some innuendo (which is denied) that the actions regarding the obstructing the poll watchers from viewing of printing of the CVRs, the pleading merely makes true allegations supported by affidavit and cites election code provisions and criminal statutes that arguably could apply to those facts. They certainly can be said to reasonably argue for an extension or interpretation of legal principals. The trial court and the Appellee never pointed out any cases holding that Rogers' application of the factual affidavits to the criminal code was erroneous. Put another way, there are no cases that hold that it is not a violation of the cited as criminal provision to commit the acts verified by the affidavits as having been committed.

Since there was some evidentiary support or such was reasonably likely to be obtained for each of the sanctioned allegations, the Court abused its discretion by sanctioning Pressley for making them.

In summary, Appellant conducted her own reasonable inquiry before filing the lawsuit. She looked at the Texas Constitution, Article VI and Election Code provisions defining an official ballot (Chapter 52) and requiring a computerized voting system to maintain images of them and compared that to the information appearing on the CVRs obtained at the recount (2 CR 5116). She looked into reports from other states about the

need for maintaining a cross check on the CVR consisting of the ballot that voters looked at when deciding who to vote for (2 CR 7515). She did a statistical analysis which indicated many voters did not vote in the run-off whose voting location was changed when they have always voted in run-offs in the past, and had reports from voters who refused to go to the consolidated location (2 CR 1580-1614), She was told by the Director of Elections that zero tapes and result tapes would not be printed on the day of the election (1 CR 872, ¶ 42) and obtained affidavits for poll watchers that were told the same thing (2 CR 7620). She saw instructions from the Clerk instructing election personnel not to print result tapes (1 CR 1865). She had information from her poll watchers stating they were denied access to certain parts of the process of printing the CVRs for the run-off and was present when it occurred (1 CR 886, ¶ 93). The trial court's holding that she did not make a reasonable inquiry is an abuse of discretion given the entire record in this case some of which is cited above. For the same reason, the trial court's holding that there was no evidentiary basis for these allegations and it was not reasonably likely discovery would produce any evidence was likewise arbitrary, capricious and unreasonable. Since Appellant did not engage in any conduct for which the court had the authority to impose sanctions, it committed reversible error in doing so.

As the Texas Supreme Court noted in *Low, supra* at 621: "We recognize that in some cases, a party may not have evidence that proves each specific factual allegation at the time a lawsuit is filed. Certainly, the law does not require proof of a case without reasonable time for discovery." All of the allegations made in the first 5 contests had evidentiary support by the time discovery was over and the 6th amended contest was filed. This is not like *Low* when an examination of medical records showed undisputable evidence that the allegations made and sanctioned were untrue.

**Sub Issue 3. IF APPELLANT PRESSLEY WAS SUBJECT TO SANCTIONS, WERE THE SANCTIONS IMPOSED JUSTIFIED AND APPROPRIATE?**

<u>Introduction</u>

"When determining if the trial court abused its discretion, the appellate court engages…" in a two-part inquiry. First, we must ensure that the punishment was imposed on the true offender and tailored to remedy any prejudice caused. *Id.* at 839; *see also Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 319 (Tex. App.--Texarkana 2006, pet. denied). Second, we must make certain that less severe sanctions would not have been sufficient. *Cire,* 134 S.W.3d at 839; *Save Our Springs,* 198 S.W.3d at 319-320." *Thottumkal v. McDougal*, 251 S.W.3d 715, (Tex. App. Houston 14th Dist. 2008).

The trial court made findings and conclusions in a futile effort to show it had applied the factors the Texas Supreme Court recommended sanctioning courts to look at in its decision in *Low v. Henry*, 221 S.W.3d 609, 622 f/n 5 (Tex. 2007). However, the trial court misapplied the *Low* factors to the actual evidence in this case. It followed lock step with the unusual testimony of Appellee's attorney (unusual because he was clearly testifying to contested facts that were really his argument for sanctions and not evidence) even though he was not designated as an expert on sanctions over Appellant's counsel's objection. It is clear that this Court did not consider Mr. Herring's testimony on the *Low* factors and this Court should not either. 3 Suppl. RR 48, line 16 to 49, line 2.

By imposing sanctions in disregard of the basis for the considerations it was required by the Supreme Court in *Low, supra* to look at the trial court abused its discretion. Therefore, even if the Court could enter the sanctions order and even if sanctionable conduct had occurred, the factor's in *Low* required the court not to impose monetary sanctions and certainly not in the amounts it ordered.

2.    The *Low Factor*

The first *Low* factor, the good faith or bad faith of the offender, weighs against awarding sanctions for alleging that certain actions of the Clerk's

office violated a criminal sanction in the Election Code under this factor. The trial court found Appellant is only responsible under this factor for the factual allegation that the clerk's employees did not let them see the entire process of printing the ballots. There is absolutely no evidence that this factual allegation was without evidentiary support. There is a presumption that the allegations and the pleadings were made in good faith. There was no evidence at the sanctions hearing or elsewhere that even tended to overcome this presumption. The complaint the trial court points to is about characterizing the interference truthfully alleged as having occurred as a criminal violation. Doing so was purely a legal conclusion drawn by Mr. Rogers from the true facts reported and alleged by Appellant. There is no evidence either Appellant or Rogers acted in bad faith. Indeed, Appellant's factual and legal positions in this case were made in good faith. The allegations that there was some interference with Poll Watcher's request to view the entire process involved in printing the CVRs for the recount was true and there was no evidence they were fake. Most importantly, Contestant and her official Recount Watchers were not allowed to monitor the integrity of where the CVRs were retrieved (1 CR 1803) the source where the retrieval occurred, or the copying of the CVR files to an aggregated pdf file. (1 CR 886 ¶¶ 93-96). The Election Code makes it

illegal to knowingly prevent a watcher from observing an activity the watcher is entitled to observe Election Code Section 33.061, App.34. Therefore, there was interference with poll watchers' activities and arguably this was a criminal violation of the Election Code.

It was Appellee's contention that the law does not empower poll watchers to observe anything except the printer's regurgitation of CVRs. The law is not clear on this point and it certainly was not sanctionable to allege the restrictions that actually did occur violated the law. Sanctions based on the first *Low* factor were an abuse of discretion.

The second *Low* factor weighs against imposing sanctions against Appellant. There was no evidence Appellant or Rogers acted willfully or negligently with vindictiveness in asserting that the clerk failed to print zero tapes on the day of the election since Michael Winn reported the same to Pressley and the Clerk had admitted she did not in her testimony. There is no evidence Appellant or Rogers acted willfully or negligently with vindictiveness in asserting or in relying on a statistical analysis and reports from irate potential voters in alleging what Pressley reasonably believed would develop convincing evidence that voters were disenfranchised by change in voting locations and when the discovery evidence did not develop as she hoped dropping that allegation. While she did allege true

occurrences, supported by third party affidavits that illegal activity did occur 2 CR 7620, 7333; a factor in determining whether the true outcome could be ascertained, she did not directly accuse any particular person responsible for that activity". (See earlier discussion not repeated here.)

Appellant conducted her own reasonable inquiry which evidences this case was filed in good faith and not out of the kind of ill will or bad motive which is the inquiry in the second *Low* factor. Since Appellant did not engage in any conduct for which the court had the authority to impose sanctions, it committed reversible error in doing so.

The third *Low* factor, the knowledge, experience, and expertise of the offender, may weigh slightly but insignificantly in favor of awarding sanctions against Rogers. Rogers is an experienced attorney who has handled election contests previously and holds himself out as being knowledgeable regarding election contests. This knowledge supports his use of the true facts alleged showing no images of ballots and numerous irregularities and mistakes could legally permit a court to exercise discretion to hold that the true outcome of the election could not be ascertained. In any event Roger's knowledge experience and expertise cannot justify sanctions against Pressley who justifiably relied on the ability of her lawyer. Although Pressley has a PhD in Chemistry, a business

owner and is actively involved in her community, and has appeared before Austin City Council at least thirty times. She was personally involved in proposing drafts to her attorney for portions of the Contests and discovery. This does not mean that Pressley had the knowledge, expertise and experience in election law and contests that would make any of her actions in this case sanctionable. The focus of this factor is clearly did the sanctioned person know the conduct was sanctionable?  Clearly Pressley's resume does not fit into this factor.  At best, it shows that she is not stupid and is active in her community.  Chemists and business owners who are active in their community should not be more likely to be sanctioned for those reasons.  Indeed her PhD in Chemistry weighs against sanction of any kind because it gives credibility to the statistical analysis she did as part of her reasonable inquiry before hiring Rogers to file this case since a chemistry doctorate clearly requires intimate knowledge of statistics.

The fourth *Low* factor, any prior history of sanctionable conduct on the part of the offender weighs against the imposition of sanctions.  There is no evidence of such a prior history.

The fifth *Low* factor, the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct weighs against the imposition of sanctions because Appellee

has not paid any attorney's fees and will not be sued for them. 3 Suppl. RR 79, line 6 through 80, line 6. Appellee is not out of pocket for attorney's fees and will never be required to pay any attorney's fees. 3 Suppl. RR 79, line 6 through 80, line 6. There was no evidence at the sanctions hearing of the reasonableness of Appellee's out of pocket expenses or that they were incurred as the result of any particular misconduct by Appellant or Rogers.

The sixth *Low* factor, the nature and extent of prejudice, apart from out-of-pocket expenses weighs against the imposition of sanctions. There was no evidence of this at the hearing. The only relevant evidence was that he was never accused of any personal misconduct so he could not have been prejudiced.

The seventh *Low* factor, the relative culpability of client and counsel, is relevant as to which person to assess how much of the sanctions if sanctions were appropriate, the evidence of Appellant proving assistance to her attorney has little if any significance since many clients assist their attorneys for various reasons including their better familiarity with the facts and a hope of saving money. Her involvement was not much more than any client of providing information of the facts to the attorney and being sure they were accurately represented in the pleadings. (2 Suppl. RR 42

line 23 to 43, line 25). These normal activities by Appellant should not weigh in favor of sanctions in the *Low* analysis of sanction imposition. There was no evidence of any action by Appellant contributed to the pleading found by the trial court to be sanctionable (zero tapes, voting locations or refusing to allow poll watchers and the candidate to see various aspects of the printing of the CVRs). Indeed all of Appellant's factual allegations were true and had some evidentiary support as outlined and attached to the various Contest pleadings and as testified to at the sanctions hearing.

The eighth *Low* factor, the risk of chilling the specific type of litigation involved, also weighs heavily against awarding sanctions. This factor weighs against awarding sanctions of $90,000.00 for filing an election contest 44.44% of which are assessed against the Candidate because doing so will obviously have a chilling effect on any decision by another candidate to exercise their statutory right to file an election contest for fear that a court who holds they failed to prove their case by clear and convincing evidence at trial or in response to a Motion for Summary Judgment will impose crippling sanctions on them. The consequences of chilling a candidate from even attempting to prove the wrong candidate is guiding our public policy is so consequential that the huge monetary

sanctions awarded in this case would allow a person to serve as an elected official no matter how many election laws were violated and no matter how many mistakes and irregularities occurred. The trial court's award is designed to prevent a litigant from making true allegations that a court eventually decides do not persuade the court to call for a new election without incurring huge sanctions should the court rule against the candidate. What lawyer will ever take an election contest case if he will expose himself and his firm to $50,000 in sanctions? This case, if it stands, will ring the death knoll of the right to contest elections provided by our Legislature. This factor is designed to be sure sanctions will not have the effect of discouraging citizens from exercising their constitutional, statutory or common law rights of access to courts. The trial court's action has the precise effect sought to be prevented by proper consideration of this factor.

The ninth *Low* factor, the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction, also weighs against awarding sanctions. Appellant has very few assets that can be used to pay sanctions and Appellee offered no evidence of the extent to which she needs her assets to pay normal living expenses. This Court can see that what she has and her husband earns is needed to start a business (the LLC assets), and to live on. There is no evidence she still has any of

the $40,000 she raised to pay expenses in this case. The undisputed evidence is that her costs have greatly exceeded that amount already. 2 Suppl. 68, line 20 through 70, line 16. The $170,000 that belongs to an independent entity is not hers and could not be subject to seizure to pay the sanctions. 2 Suppl. RR 67, line 23 – 68, line 13. Here there is no evidence that she has any of the profit from the sale of her home or how much of the sales price was profit. 2 Suppl. RR 63, line 14 through 64, line 14. She is no longer making a salary. 2 Suppl. RR 70, lines 11 - 14. Her husband's earning capacity is not an asset that can be currently liquidated to pay sanctions and does make her more able to pay monetary sanctions. She has basically has $1,000 in assets, $6,000 counting her husband's assets. (2 Suppl. RR 65, line 12 to 66, line 19) The $40,000 award is greatly in access of the assets she has available to pay the sanctions. Appellee did not identify or prove Appellant's existing liabilities and therefore, a full accounting of her net assets could not be assessed by the Court. Appellee accepted the burden of proving liabilities to show net worth (2 Suppl. RR 61, lines 7-11) and never did it. (2 Suppl. RR 61 line 1 to 62, line 19). The focus of this *Low* factor is to be sure the trial court does not impose sanctions in an amount absent proof there are current assets of the person being sanctioned to pay them without bankrupting her. The court

did not have enough evidence to ascertain whether or not it was complying with this *Low* factor before imposing the sanctions imposed in this case.

The tenth *Low* factor, the impact of the sanction on the offended party, including the offended person's need for compensation, also weighs against awarding sanctions. There is no evidence of Appellee's need for compensation nor that the sanction would have a positive impact on him. Since it has been made clear that he is not accused of any wrongdoing, he does not to point to an award of sanctions as evidence of vindication.

The eleventh *Low* factor, the relative magnitude of sanction necessary to achieve the goal or goals of the sanction, also weighs against awarding sanctions. The Texas Civil Practice and Remedies Code Section 10.004 states that the sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. There cannot be any more challenges before the court of appeals rules so either there will be no more suits because the CVR only practice violates the election code or everyone will know this is not a winnable argument and will not go through the unnecessary expense of litigation. Furthermore, an award of sanctions of $90,000 is manifestly greater than is necessary to deter the conduct in this case while not chilling future election contest proceedings. The award of sanctions calculated by attorney's fees

requires that there was no reasonable inquiry made. As discussed above, Pressley made a reasonable inquiry into the truth of her allegations and Rogers asserted causes of action based on those facts described by the election code and several cases holding that mistakes, illegal conduct and irregularities alone could be relied on by a trial court in calling for a new election without abusing its discretion. In addition, the amount of sanctions was manifestly excessive since this case involved responses to written discovery (erroneously cut off by the court) and two depositions followed by the granting of summary judgement. It was not a jury trial or even a trial before the Court. As described above, the magnitude of the sanctions in this case will chill future candidates from exercising their statutory, constitutional and common law rights and lawyers from representing them and clearly not warranted by the actions found by the Court to be sanctionable.

The twelfth *Low* factor, burdens on the court system attributable to the misconduct, weighs against awarding sanctions. There is no evidence that this no evidence Summary Judgment burdened the Court system any more than any other election contest. The judge would have to be appointed and hear the case even if allegations of criminal conduct, voter

disenfranchisement and failure to print CVRs on the day of the election were not issues in this case.

The thirteenth *Low* factor, the degree to which the offended person's own behavior caused the expenses for which recovery is sought, weighs insignificantly against awarding sanctions. Appellant admits that Appellee did nothing wrong in the conduct of the election and has never accused him of any misconduct.

A review of the *Low* factors that the Court was required to look to as guiding rules and principals in deciding whether to impose sanctions and if so how much shows the court abused its discretion in imposing the sanctions of $90,000 for a case at the point of granting a summary judgment ($40,000 against Pressley and $50,000 against her lawyer).

**Sub Issue 4.    DID THE TRIAL COURT ABUSE ITS DISCRETION BY IMPOSING SANCTIONS BASED ON ATTORNEY'S FEES IN THE EVENT OF AN UNSUCCESSFUL APPEAL WITHOUT ANY EVIDENCE?**

The trial court, in another exhibition of arbitrary and capricious action and in a total disregard of guiding principles imposed conditional sanctions on Appellant if she was not successful in pursuing her appeal. Suppl. IV CR 54 App.3. There was no request for these sanctions and absolutely no evidence of what would be reasonable necessary attorney's fees that would be incurred in the event of appeal.

Awarding attorney's fees without any evidence to support them is a clear abuse of discretion. *Great American Reserve Ins. Co. v. Britton,* 406 S.W.2d 901, 907; (Tex. 1966); *Lesikar v. Rappeport*, 33 S.W.3d 282, 308 (Tex. App.—Texarkana 2000 no pet.)  In addition as pointed out above Appellee would not be pressed to pay any attorney's fees. Furthermore, a great portion of the appeal is devoted to the issue of whether a CVR satisfies the statutory requirement of maintaining an image of the ballot for which no sanctions were found warranted.

Finally sanctions for filing a frivolous appeal is within the exclusive jurisdiction of this Court.  Texas Rules of Appellate Procedure, Rule 45. While a trial court may award attorney's fees for a losing appeal when the law allows it to award attorney's fees, (there is no statutory authority for awarding attorney's fees in an election contest) a trial court is not vested with jurisdiction or discretion to award <u>sanctions</u> for appealing its decision. The trial court in this case therefore abused its discretion in awarding sanctions measured by attorney's fees on appeal without any evidence of that amount or reasonableness thereof and contingent on what happens in the future with respect to the disposition of an appeal.

## CONCLUSION

The trial court committed reversible error by granting Appellee's No Evidence Motion for Summary Judgment because there was more than a scintilla of evidence that the clerk counted CVRs instead of and without images of ballots and that there were mistakes, irregularities, and other evidence that tended to prove that the true outcome of the election could not be ascertained. Therefore, this Court should reverse the trial court's judgment and remand it to the trial court for trial. The trial court also committed reversal error in awarding sanctions in the absence of evidence that sanctionable conduct occurred and in violation of the *Low* factors and appellate sanctions measured by attorney's fees without any evidence. Therefore, the sanctions order of the court should be reversed and rendered that Appellee take nothing by his request for sanctions.

## PRAYER

Based on the record and the law cited herein, Appellant prays this honorable Court to reverse the trial courts judgment granting Appellee a summary judgment and to remand it with instructions to permit requested discovery of the ESlate manual, and the JBC and to examine the eSlate program and its functioning in tallying the votes in this election and conduct further proceedings consistent with the holding that CVRs do not satisfy the

statutory requirement of maintaining a ballot image and that the trial court may void the election if it believes in its discretion that irregularities and mistakes makes it impossible to ascertain the true outcome of the election without requiring appellant to identify particular votes that were affected. Appellant also asks the court to reverse and render that Appellee take nothing by its Motion for Sanctions.

Respectfully Submitted,

/s/ Mark A. Cohen_____
Mark A. Cohen / SBN:  04508400
805 West 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424   Telephone
(512) 472-5444   Facsimile
mark@cohenlegalservices.com

***ATTORNEY FOR APPELLANT***
***DR. LAURA PRESSLEY***

## CERTIFICATE OF COMPLIANCE

This brief complies with the requirements of Texas Rules of Appellate Procedure 9.4(i)3 for type-volume limitation because this brief contains 14,315 words, excluding the parts of the brief exempted by Texas Rules of Appellate Procedure 9.4(i)3.   This brief complies with the typeface requirements of Texas Rules of Appellate Procedure 9.4(i)3 because this brief has been prepared in a proportionally spaced sans serif typeface using Microsoft Word 2010 in 14 pt. Arial.

/s/ Mark A. Cohen_____
Mark A. Cohen
Attorney for Laura Pressley, Appellant
Dated:      September 16, 2015____

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by efile and/or facsimile to the following persons on this 16th day of September, 2015.

Kurt Kuhn
State Bar No. 24002433
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000   Telephone
(512) 476-6002   Facsimile
Kurt@KuhnHobbs.com

Charles 'Chuck' Herring Jr.
State Bar No. 09534100
Herring & Irwin, L.L.P.
1411 West Avenue, Ste 100
Austin, TX  78701
(512) 320-0665   Telephone
(512) 519-7580   Facsimile
cherring@herring-irwin.com

**ATTORNEYS FOR APPELLEE GREGORIO "GREG" CASAR**

David A. Rogers
State Bar No. 24014089
1201 Spyglass Drive, Suite #100
Austin, Texas 78746
(512) 923-1836   Telephone
(512) 201-4082   Facsimile
Firm@DARogersLaw.com

**PRO SE**

/s/ Mark A. Cohen_____
Mark A. Cohen

# APPENDIX

# APPENDIX TABLE OF CONTENTS

1.      Original Final Judgment 5/26/15
2.      Amended Summary Judgment Order 6/24/15
3.      7/23/15 Judgment with Sanctions
4.      Notice of Accelerated Appeal
5.      First Amended Notice of Accelerated Appeal
6.      Request for Amended Findings of Fact and Conclusions of Law
7.      Order on Request for Amended and Additional Findings
8.      Second Amended Notice of Accelerated Appeal
9.      Texas Constitution, Art VI. § 4
10.     Ch 10 Civil Practice and Remedies Code
11.     Texas Election Code § 2.001
12.     Texas Election Code § 33.056
13.     Texas Election Code § 52.001
14.     Texas Election Code § 52.003
15.     Texas Election Code § 52.062
16.     Texas Election Code § 56.063
17.     Texas Election Code § 52.031
18.     Texas Election Code § 66.051-054
19.     Texas Election Code § 128.001
20.     Texas Election Code § 213.016
21.     Texas Election Code § 214.049 e
22.     Texas Election Code § 221.003
23.     Texas Election Code § 221.012
24.     Texas Election Code § 221.013
25.     Texas Rule of Appellate Procedure 45
26.     Texas Rule of Civil Procedure 11
27.     Rules of Civil Procedure 192
28.     Texas Rules of Civil Procedure 193.4
29.     Foust case
30.     Texas Election Code § 231.009
31.     Texas Election Code § 52.070

32. Texas Election Code § 52.064
33. Texas Election Code § 213.013
34. Texas Election Code § 33.061
35. Texas Rules of Civil Procedure 329b
36. Big Version of Tape Attached to Contest
37. Texas Election Code § 52.075

NO. D-1-GN-15-000374

Filed in The District Court of Travis County, Texas
MAY 26 2015
At _____ M.
Velva L. Price District Clerk

| | | |
|---|---|---|
| LAURA PRESSLEY<br>Contestant | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | TRAVIS COUNTY, TEXAS |
| GREGORIO "GREG" CASAR<br>Contestee | §<br>§<br>§ | 201ST JUDICIAL DISTRICT |

## ORDER

The Court has considered Contestee Casar's Amended Motion for Summary Judgment, Contestee's Supplement to his Amended Motion for Summary Judgment, Contestee's No-Evidence Motion for Summary Judgment, Contestant's Response to Contestee's Amended and Supplemented Motion for Summary Judgment, the exhibits cited in those documents, and the parties' arguments, and the Court rules as follows:

1. ~~Casar's Amended Motion for Summary Judgment is GRANTED.~~

2. Casar's No-Evidence Motion for Summary Judgment is GRANTED.

3. Under Texas Election Code § 221.012(a), the Court declares that the true outcome of the December 16, 2014 runoff election is that Contestant Gregorio "Greg" Casar was elected to the Austin City Council District 4 seat.

4. This action is hereby dismissed in its entirety.

IT SO ORDERED.

SIGNED this the 26 day of _May_, 2015.

_____
PRESIDING DISTRICT JUDGE

_This Order Resolves All the Issues Between All the Parties and is Appealable_

_DHM_

NO. D-1-GN-15-000374

| | | |
|---|---|---|
| LAURA PRESSLEY | § | IN THE DISTRICT COURT |
| Contestant | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR | § | |
| Contestee | § | 201ST JUDICIAL DISTRICT |

## Amended Summary Judgment Order

The Court has considered Contestee Casar's Amended Motion for Summary Judgment, Contestee's Supplement to his Amended Motion for Summary Judgment, Contestee's No-Evidence Motion for Summary Judgment, Contestant's Response to Contestee's Amended and Supplemental Motion for Summary Judgment, the exhibits cited in those documents, and the parties' arguments, and the Court FINDS and ORDERS as follows:

1. Casar's No-Evidence Motion for Summary Judgment is GRANTED.

2. Under Texas Election Code § 221.012(a), the Court DECLARES that the true outcome of the December 16, 2014 runoff election is that Contestee Gregorio "Greg" Casar was elected to the Austin City Council District.

3. Contestee Casar's motion for sanctions against Contestant Laura Pressley and her Counsel remains pending before the Court and will be considered and decided by the Court in a separate order.

4. This Order amends and replaces the Court's prior May 26, 2015 Order.

IT SO ORDERED.

SIGNED this the 24 day of _____June_____, 2015.

_____
JUDGE DAN MILLS

P.002/031
of the District Court
of Travis County, Texas

JUL 23 2015
At_____10:50_____A.M.
Veiva L. Price, District Clerk

NO. D-1-GN-15-000374

| | | |
|---|---|---|
| LAURA PRESSLEY | § | IN THE DISTRICT COURT |
| Contestant | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR | § | |
| Contestee | § | 201ST JUDICIAL DISTRICT |

## Amended Final Judgment

On May 26, 2015, the Court entered a final summary judgment order granting Contestee Casar's No-Evidence Motion for Summary Judgment. On June 12, 2015, Contestee Casar timely filed his Third Amended Motion for Sanctions to amend the May 26, 2015 Order to include an award of sanctions. On June 24, 2015, the Court entered an Amended Summary Judgment Order that amended and replaced the May 26, 2015 Order. The Court now enters this Amended Final Judgment and FINDS and ORDERS as follows:

1. Contestee Casar's Third Amended Motion for Sanctions is GRANTED.

2. Pursuant to Texas Civil Practice and Remedies Code § 10.005, the Court entered an order on July 23, 2015 that describes the conduct the Court has determined violated Texas Civil Practice and Remedies Code § 10.001, and explains the basis for the sanctions imposed. The Court incorporates by reference that Order herein.

3. Contestee Casar's No-Evidence Motion for Summary Judgment is GRANTED.

4. The Court incorporates by reference the June 24, 2015 Order granting Casar's No-Evidence Motion for Summary Judgment.

5. Under Texas Election Code § 221.012(a), the Court DECLARES that the true outcome of the December 16, 2014 runoff election is that Contestee Gregorio "Greg" Casar was elected as the Austin City Council District 4 member.

6. Pursuant to Texas Civil Practice and Remedies Code § 10.004(c)(3), Contestee Casar shall recover from Contestant Laura Pressley individually monetary sanctions in the amount of $ 40,000.00, together with postjudgment interest from the date of this Amended Final Judgment until paid at the rate of five percent (5.0%) per annum.

7. Pursuant to Texas Civil Practice and Remedies Code § 10.004(c)(3), Contestee Casar shall recover from Contestant's counsel David Rogers individually monetary sanctions in the amount of $ 50,000.00, together with postjudgment interest from the date of this Amended Final Judgment until paid at the rate of five percent (5.0%) per annum.

8. Pursuant to Texas Civil Practice and Remedies Code §§ 10.002 and 10.004, Contestee Casar shall recover from Contestant Laura Pressley and Contestant's counsel David Rogers jointly and severally his out-of-pocket expenses in the amount of $7,794.44, together with postjudgment interest from the date of this Amended Final Judgment until paid at the rate of five percent (5.0%) per annum.

9. If either Contestant Laura Pressley or Contestant's counsel David Rogers unsuccessfully appeals this Amended Final Judgment, pursuant to Texas Civil Practice and Remedies Code § 10.004(c)(3), Contestee Casar shall

also recover from Contestant Laura Pressley, if unsuccessful on appeal, and Contestant's counsel David Rogers, if unsuccessful on appeal, additional monetary sanctions in the amount of $25,000.00, if appealed to the Court of Appeals; $10,000.00, if a petition for review is filed in the Supreme Court of Texas; $15,000.00, if full briefing is requested by the Supreme Court of Texas; and $15,000.00, if oral argument is granted at the Supreme Court of Texas. These additional monetary sanctions shall be imposed jointly and severally on Contestant Laura Pressley and Contestant's counsel David Rogers, if both are unsuccessful on appeal.

10.    Court costs are awarded in favor of Contestee Casar and against Contestant Laura Pressley, together with post-judgment interest from the date of this Amended Final Judgment until paid at the rate of five percent (5.0%) per annum.

11.    This order finally disposes of all claims and all parties and is appealable.

12.    All relief not expressly granted in this Amended Final Judgment is denied.

IT SO ORDERED.

SIGNED this the 23rd day of ___July___, 2015.

_____
JUDGE DAN MILLS

Filed in The District Court
of Travis County, Texas

**JUL 2 3 2015**

At____/0:50____A.M.
Velva L. Price, District Clerk

NO. D-1-GN-15-000374

| | | |
|---|---|---|
| LAURA PRESSLEY | § | IN THE DISTRICT COURT |
| Contestant | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR | § | |
| Contestee | § | 201ST JUDICIAL DISTRICT |

### Order

The Court has considered Contestee Casar's Third Amended Motion for Sanctions, Contestant Laura Pressley's ("Pressley") Response to Contestee's Third Amended Motion for Sanctions, Attorney David Rogers' ("Rogers") Response to Contestee's Motion for Sanctions, Contestee's Reply to Rogers' Response, Rogers' Sur-Reply to Rogers Response to Contestee's Third Amended Motion for Sanctions, the pleadings and evidence in the record, and all of the evidence and argument offered at the evidentiary hearings on June 18, 2015 and June 24, 2015. The Court FINDS and ORDERS as follows:

1.    Contestee Casar's Motion for Sanctions is GRANTED.

2.    The Court finds that sanctions against David Rogers are justified and proper under Chapter 10 of the Civil Practices and Remedies Code.

3.    The Court finds that sanctions against Laura Pressley are justified and proper due to her participatory role in this litigation under Chapter 10 of the Civil Practices and Remedies Code.

4.    Pursuant to Texas Civil Practice and Remedies Code § 10.004(c)(3), Contestee Casar shall recover from Contestant Laura Pressley individually monetary sanctions in the amount of $ 40,000.00.

5. Pursuant to Texas Civil Practice and Remedies Code § 10.004(c)(3), Contestee Casar shall recover from Contestant's counsel David Rogers individually monetary sanctions in the amount of $ 50,000.00.

6. If either Contestant Laura Pressley or Contestant's counsel David Rogers unsuccessfully appeal this Order, pursuant to Texas Civil Practice and Remedies Code § 10.004(c)(3), Contestee Casar shall also recover from Contestant Laura Pressley, if unsuccessful on appeal, and Contestant's counsel David Rogers, if unsuccessful on appeal, additional monetary sanctions in the amount of $ 25,000.00, if appealed to the Court of Appeals; $10,000.00; if a petition for review is filed in the Supreme Court of Texas; $15,000.00 if full briefing is requested by the Supreme Court of Texas; and $15,000.00 if oral argument is granted at the Supreme Court of Texas. Contestant Laura Pressley shall pay these additional monetary sanctions only if she is unsuccessful on appeal, and David Rogers shall pay these additional monetary sanctions only if he is unsuccessful on appeal. These costs were derived from reviewing similar awards for cost of appeals in the following cases. *Marsalise v. Wallace*, 2005 WL 1116010 (Tex. App.—Austin, May 12, 2005, no pet.); *R&R Resources Corp. v Echelon Oil & Gas, LLC.*, 2010 W L 5575919 (Tex. App.—Austin, Jan 14, 2011, pet denied) ; *John Kleas Co., Inc, v Prokop*, 2015 WL 1544797 (Tex. App.—Corpus, April 2, 2015, no pet.)

7. Pursuant to Texas Civil Practice and Remedies Code §§ 10.002 and 10.004, Contestee shall recover from Contestant Laura Pressley and Contestant's counsel David Rogers his reasonable expenses of $ 7,794.44. Contestant Laura Pressley and Contestant's counsel David Rogers shall be jointly and severally liable for these expenses.

8. In compliance with Section 10.005 of the Civil Practice and Remedies Code, the Court makes the following Findings of Fact and Conclusion of Law supporting this Order of sanctions:

## FINDINGS OF FACT

9. In November 2002, Travis County began using the Hart Intercivic eSlate system (the "Hart eSlate System") as an electronic voting system.

10. Since November 2011, Travis County has used a countywide voting system that employs central voting centers. Instead of requiring voters to vote at their home precinct polling locations, vote centers allow all registered voters in Travis County the option of voting at any of the county's polling locations on Election Day.

11. Pressley and Casar were among eight candidates for the District 4 seat of the Austin City Council at the November 4, 2014 general election. In the general election, Casar received the highest number of votes (3,272 or 38.63%), Pressley received the second-highest (1,826 or 21.56%), and the remaining votes were distributed among the other six candidates.

12. Some voting locations in the City of Austin were changed between the general and the runoff elections as is normal practice for a runoff election. For the December 16, 2014 runoff, there were 136 citywide voting locations available to all City of Austin voters. The City of Austin gave the public notice of the voting locations for the runoff election and an opportunity to comment on the proposed locations. On November 13, 2014, the Austin City Council posted the agenda of the November 18, 2014 Special Called Meeting of the Austin City Council. The agenda included setting the run-off election and making provisions for the runoff election. On Tuesday, November 18, 2014,

the Austin City Council held the special called meeting and approved an ordinance ordering the runoff election. A list of all polling locations for the runoff was attached to the City Council's approved ordinance. The locations were also posted at City Hall and in the office of the City Clerk, as well as published in the newspaper. Additionally, the City of Austin and the Travis County Clerk websites both posted information about the runoff election and a list of polling locations.

13.   At the November 18, 2014 Austin City Council meeting, neither Pressley nor any of her ten campaign workers attended the meeting to lodge any complaint or objections about the changes in voting locations. Pressley could have attended the meeting but did not. Over the years, she has attended and commented at 30 or more Austin City Council Meetings. She knows where the agendas are posted, knows how to read them in advance, and is familiar with the process for commenting at a Council meeting.

14.   Casar won the December 16, 2014 runoff election by a margin of almost 65% to 35%; the difference in their vote totals was 1,291 votes. 4,417 votes were cast in the District 4 runoff election. Of those votes, 480 were mail-in ballots. The remaining 3,937 ballots were cast using Travis County's chosen electronic voting system, the Hart eSlate System.

15.   As required by Chapter 122 of the Election Code, and after an analysis of the Hart eSlate System by a team of computer and election law experts, the Secretary of State reviewed, approved, and certified the Hart eSlate System. The Secretary of State found that the Hart eSlate System fully complied with Election Code requirements and, of particular relevance in this case, was "capable of providing records from which the operation of the system may be audited[.]"

16.    On January 5, 2015, the day before Casar was to be sworn-in, Pressley filed a recount petition with the Secretary of State. Before the recount took place, County Clerk Dana DeBeauvoir offered to run an audit of the election results for Pressley. An audit would have provided much more detailed information about the electronic votes than a recount, including many of the questions Pressley has presented in this lawsuit. Pressley refused DeBeauvoir's offer and demanded a recount. An audit would have provided a reasonable opportunity to view issues raised in the lawsuit and would have allowed for a reasonable inquiry into many of the allegations alleged by the Contestant in this lawsuit to determine if there was merit to any of such claims.

17.    On January 6, 2015, Travis County conducted a manual recount of all early, election day, mail-in, and provisional ballots. The recount confirmed the election result. Jay Brim, the Chair of the Recount Committee, and Dana DeBeauvoir, the Travis County Clerk, supervised the recount. For votes cast electronically, the recount team printed off the Cast Vote Records (CVRs), also called Ballot Images. Pressley witnessed the printing of the Cast Vote Records. All votes were then manually recounted. Mr. Brim found that the totals in all precincts matched those in the original canvas, and that the number of voters matched the number of ballots cast. He declared that Casar remained the victor of the election.

18.    The Secretary of State had a representative present at the recount—Christina Adkins. During the recount, Pressley complained to Ms. Adkins that the Cast Vote Records were not "images of ballots cast," and pointed to the specific provisions of the Election Code that she believed were germane. Ms. Adkins witnessed the County's use of

the Cast Vote Records for the recount, disagreed with Pressley's interpretation of the Election Code, and refused to challenge the use of the Cast Vote Records in the recount.

19.    After the recount, Pressley lodged several complaints regarding the recount with the Secretary of State. One of Pressley's complaints was that she and her poll watchers were not allowed to be present at the printing of the ballots as Pressley believed she was entitled to view the source, properties, retrieval and counting of the ballots. In its January 20, 2015 response letter to Pressley, the Secretary of State dismissed this complaint and confirmed that Pressley had been present when the "ballot images (also known as 'cast vote records')" were printed:

> You state that Travis County conducted activities such as extracting data from the Hart electronic voting system, compiling ballot images onto a centralized system, printing ballot images (also known as "cast vote records"), and sorting by mail ballots before the recount was scheduled to begin . . . . [W]e agree with you that you and your representatives under Section 213.013(b) were entitled to be present at the printing of the ballot images, and when you raised this issue with the Travis County Elections Division, Travis County agreed to re-print the ballot images in the presence of you and your watchers.

20.    Responding to a subsequent complaint from Pressley, the Secretary of State again made the same point in another letter, dated January 27, 2015. That letter also noted that an inspector from the Secretary of State's office had confirmed the printing of the ballot images:

> You have stated that upon your arrival, you discovered that ballot images had already been printed. You alerted Travis County to the issue and reminded them that you and your watchers were entitled to be present at the printing. In response, Travis County began anew with the printing of the ballot images in the presence of you and your watchers, and only the ballot images printed in your presence were used in the recount. This information is confirmed by the

inspector sent by our office to attend the recount. Therefore, our office believes you and your watchers were able to witness the printing of all ballot images used in verifying the vote count in your race.

21. With the Hart eSlate System, the permanent record of the vote cast is known as a Cast Vote Record or CVR. A CVR is a data field representation depicting which votes were cast on each voting device. The Cast Vote Records are used for counting votes and a visual representation of the CVR can be printed in the event of a recount.

22. The U.S. Election Assistance Commission is an independent, bipartisan commission charged with developing guidance to meet the requirements of the Help America Vote Act of 2002. It is charged by statute with adopting voluntary voting system guidelines and to serve as a national clearinghouse of information on election administration. In its Glossary of Key Election Terminology, the U.S. Election Assistance Commission defines "Cast Vote Record" as "a ballot image when used to refer to electronic ballots."

23. The Texas Secretary of State defines "Cast Vote Record" as a Ballot Image. Ten days before Pressley filed this lawsuit, the Secretary of State expressly stated in its January 20, 2015 letter to Pressley that "ballot images" are also known as "cast vote records."

24. As required by the Election Code, Travis County and the City of Austin used the Secretary of State's definitions when interpreting the Election Code in this case.

25. On January 31, 2015, Pressley filed her Original Contest of Election against Casar, seeking to overturn the results of the runoff election for the Austin City Council District 4 seat. Pressley's Original Contest was signed by her counsel David Rogers.

26. In paragraphs 32 through 38, the Original Contest alleged that the Hart eSlate

System did not comply with the Texas Election Code because it could print only Cast Vote Records, which Pressley claimed were not "images of ballots cast" under the Texas Election Code. In paragraph 13, the Original Contest alleged that Travis County disenfranchised District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 14 and 15, the Original Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State. In paragraphs 26 through 44, the Original Contest alleged that procedural irregularities occurred during the recount.

27.     On February 18, 2015, Pressley filed her Second Amended Contest. In paragraphs 31 through 37, the Second Amended Contest alleged that the Hart eSlate System did not comply with the Texas Election Code because it could print only Cast Vote Records, which Pressley claimed were not "images of ballots cast" under the Texas Election Code. In paragraph 13, the Second Amended Contest alleged that Travis County disenfranchised District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 11 and 14, the Second Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State. In paragraphs 26 through 44, the Second Amended Contest alleged that procedural irregularities occurred during the recount.

28.     On February 27, 2015, Pressley filed her Third Amended Contest. In paragraphs 43 through 53, the Third Amended Contest alleged that the Hart eSlate System did not comply with the Texas Election Code because it could print only Cast Vote Records, which Pressley claimed were not "images of ballots cast" under the Texas Election Code.

In paragraphs 12 through 23, the Third Amended Contest alleged that Travis County disenfranchised District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 35 and 37, the Third Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State. In paragraphs 41 through 66, the Third Amended Contest alleged that procedural irregularities occurred during the recount that materially affected the election results.

29.    On March 12, 2015, Pressley filed her Fourth Amended Contest. In paragraphs 43 through 53, the Fourth Amended Contest alleged that the Hart eSlate System did not comply with the Texas Election Code because it could print only Cast Vote Records, which Pressley claimed were not "images of ballots cast" under the Texas Election Code. In paragraphs 12 through 23, the Fourth Amended Contest alleged that Travis County disenfranchised thousands of District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 35 and 37, the Fourth Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State. In paragraphs 41 through 66, the Fourth Amended Contest alleged that procedural irregularities occurred during the recount that materially affected the election results.

30.    On April 16, 2015, the deposition of Pressley took place. At her deposition, Pressley admitted that she could not identify a single voter who was disenfranchised by the change in voting locations for the runoff election. Pressley did testify she had spoken with people who claimed they had difficulty in voting, but she was not able to obtain even one affidavit from one voter who claimed to have been disenfranchised. Pressley

also admitted that she did not know what a Cast Vote Record was and that the U.S. Election Assistance Commission, the Texas Secretary of State, Travis County, and the City of Austin all reject her definition of "ballot image." Pressley also testified that she did not know if zero tapes had been printed, where they may have been printed, or when.

31.     On April 20, 2015, Pressley filed her Fifth Amended Contest. In paragraphs 49 through 59, the Fifth Amended Contest alleged that the Hart eSlate System did not comply with the Texas Election Code because it could print only Cast Vote Records, which Pressley claimed were not "images of ballots cast" under the Texas Election Code. In paragraphs 12 through 29, the Fifth Amended Contest alleged that Travis County disenfranchised thousands of District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 41 and 43, the Fifth Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State. In paragraphs 47 through 74, the Fifth Amended Contest alleged that procedural irregularities occurred during the recount that materially affected the election results.

32.     Pressley filed her final and Sixth Amended Contest on May 19, 2015. In paragraphs 3, 13, 82, 84, and 97 through 138, the Sixth Amended Contest alleged that the Hart eSlate System did not comply with the Texas Election Code because it could print only Cast Vote Records, which Pressley claimed were not "images of ballots cast" under the Texas Election Code. In paragraphs 3, 4, 8, 42 through 52, and 64, the Fifth Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State. In paragraphs 82 through 101, the Fifth Amended Contest alleged that procedural irregularities occurred during the recount that

materially affected the election results. In paragraphs 93 and 94, Pressley alleged that Travis County Director of Elections Michael Winn committed a criminal violation by not allowing Pressley and her poll watchers to view the source, properties, and copying of the CVR files during the recount. Pressley dropped from her Sixth Amended Contest her allegations that Travis County disenfranchised thousands of District 4 voters because certain voting locations were changed between the general election and the runoff election.

33. Travis County produced documents in this case on April 22 and 23, 2015. County Clerk Dana DeBeauvoir was deposed on May 11, 2015. The due date for the Motion for Summary Judgment response was May 19, 2015. On May 22, 2015, County Clerk Dana DeBeauvoir made changes to her deposition testimony.

34. On May 26, 2015, after briefing and a hearing, this Court granted Casar's no-evidence summary judgment motion, which establishes that Pressley failed to raise any genuine issue of material fact in response to Casar's motion.

35. Rogers had prior experience working on election contest cases. According to Rogers, most successful election contests involved a margin of victory of less than 50 votes.

36. Before filing the Contests, Rogers had never heard of an election contest case in which a contestant had overcome a margin of victory of 1,291 votes.

37. Before filing the Contests, Rogers was aware of the Texas Supreme Court decision in *Andrade v. NAACP*, 345 S.W.3d 1 (Tex. 2011), in which the Texas Supreme Court rejected an equal-protection challenge to the Hart eSlate System and held that "[t]he Secretary [of State] made a reasonable, nondiscriminatory choice to certify the

eSlate, a decision justified by the State's important regulatory interests."

38. The Cast Vote Record is a "ballot image" as that term is used in the Texas Election Code.

39. The U.S. Election Assistance Commission and Texas Secretary of State have consistently stated that for electronic voting, the Cast Vote Record is the Ballot Image. The Secretary of State stated this to Pressley explicitly in its January 20, 2015 letter to her.

40. The City of Austin and Travis County define a Cast Vote Record as a Ballot Image.

41. Texas Election Code § 52.075 gives the Secretary of State authority to prescribe the form and content of ballots for electronic voting machines.

42. Texas Election Code § 129.002 of the Election Code gives the Secretary of State the authority to implement Direct Recording Electronic voting systems that utilize Cast Vote Records.

43. Pressley and Rogers did not cite the 1990 Federal Election Commission Performance and Test Standards until the Sixth Amended Contest, and these standards do not distinguish a Ballot Image from a Cast Vote Record. The 2002 Federal Election Commission Report entitled "Voting Systems Standards Volume I – Performance Standards" defines Ballot Image as "an electronic record of all votes cast by the voter."

44. Pressley and Rogers did not cite the 2007 Source Code Review of the Hart Intercivic Voting System until the Sixth Amended Contest, and this report does not distinguish a Ballot Image from a Cast Vote Record.

45. The allegation that the consolidation or changing of voting locations for the runoff

election disenfranchised District 4 voters is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. *See Gonzalez v Villarreal*, 251 S.W.3d 763, 777-778 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.).

46.     There is no evidentiary support for the allegation that the consolidation or changing of voting locations for the runoff election disenfranchised District 4 voters.

47.     The Texas Secretary of State repeatedly rejected Pressley's complaints regarding alleged irregularities at the recount, including both at the recount itself and in multiple subsequent letters responding to Pressley's complaints.

48.     The allegation that irregularities allegedly occurred during the recount materially affected the outcome of the runoff election is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

49.     There is no evidentiary support for the allegation that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election. *See Gonzalez v Villarreal*, 251 S.W.3d 763, 777-778 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.).

50.     The allegations that Travis County Director of Elections Michael Winn committed a criminal violation are not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law.

51.     There is no evidentiary support for the allegation that Travis County Director of Elections Michael Winn committed a Class A misdemeanor criminal violation by not allowing Pressley and her poll watchers to view the source, properties, and copying of the

CVR files at the recount. The Election Code provides that at a recount, the candidate and her representatives are entitled to be present "during the printing of the images [of ballots cast]." Pressley and her poll watchers were present while the Travis County recount team printed all of the CVRs for the recount. The Secretary of State confirmed this in its January 27, 2015 letter to Pressley, stating "Travis County began anew with the printing of the ballot images in the presence of you and your watchers, and only the ballot images printed in your presence were used in the recount. This information is confirmed by the inspector sent by our office to attend the recount. Therefore, our office believes you and your watchers were able to witness the printing of all ballot images used in verifying the vote count in your race."

52.     Pressley and Rogers failed to exercise due diligence in investigating the evidentiary support for each of the allegations in the Contests before filing them.

53.     Pressley testified that she does not know what a "Cast Vote Record" is.

54.     Pressley acknowledged that the U.S. Election Assistance Commission, the Texas Secretary of State, Travis County, and the City of Austin all reject her definition of "ballot image."

55.     Over 100 counties in Texas use the Hart eSlate System. County Clerk DeBeauvoir testified that, before this lawsuit, she had never heard anyone ever allege that CVRs are not ballot images for purposes of electronic voting. She also serves on the Standards Board for the U.S. Election Assistance Commission.

56.     County Clerk DeBeauvoir fully complied with the Texas Election Code and Secretary of State procedures in conducting the general and runoff elections.

57.     Pressley failed to exercise her right to comment on or object to any of the voting

location changes at the Austin City Council meeting.

58.     Consolidating voting locations between a general election and a runoff election is a routine and entirely legal and proper practice. Such changes occur for a variety of legitimate reasons, including to achieve cost and staffing efficiencies due to the lower voter turnout and fewer number of candidates generally associated with runoffs. In this election, a total of 304 candidates were on the ballot countywide at the November 4, 2014 general election. By contrast, in the runoff election in District 4, only four races were on the ballot: this Council race, the Mayor's race, and 2 school district races—a total of eight candidates.

59.     Because Travis County uses countywide voting centers, any voter in Travis County could vote at any one of the 136 voting locations across the county for the runoff election. In District 4 alone, there were 9 voting centers within the district, as well as 7 centers located within a five-minute drive of the district and 17 centers located within a ten-minute drive of the district.

60.     Pressley testified if a voter had to drive as little as 20 seconds to a new voting location, that voter was disenfranchised.

61.     Rogers did not identify a single witness who could or would testify that changes in voting locations had disenfranchised District 4 voters.

62.     When Pressley was deposed on April 16, 2015, she could not identify a single voter who was disenfranchised as a result of the changes in voting locations. Four days later, on April 20, 2015, she filed her Fifth Amended Contest, which alleged in Paragraph 29 that 1,108 voters, at least, were disenfranchised as a result of the change in voting location.

63.     There is no evidentiary support for the allegation that the Austin City Council ,
changed the voting locations for the runoff to disenfranchise any District 4 voters.

64.     There is no evidentiary support for the allegation that the changes in the voting
locations for the runoff resulted in the disenfranchisement of any District 4 voters.

65.     There is no evidentiary support that any voter was actually prevented from voting
at the new locations.

66.     Paragraph 42 of Pressley's Sixth Amended Contest states that "[r]eview of
Discovery documents provided by Travis County [shows that] no Zero Tapes (showing
the number of votes present on the Hart Voting equipment for each candidate when the
polls open) were printed during Early Voting and no Zero Tapes were printed on Election
Day of the Runoff." Similar allegations are contained in ¶¶ 3, 8, 43, & 64 of the Sixth
Amended Contest and in prior Contests.

67.     Zero Tapes were produced to Pressley and Rogers by Travis County during their
document production on April 22 and 23, 2015. Pressley's Sixth Amended Contest was
filed on May 19, 2015.

68.     Travis County printed zero tapes both before the runoff election and on the day of
the runoff election. There is no evidentiary support for the allegation that zero tapes were
not printed on the day of the runoff election.

69.     Pressley and Rogers attached as Exhibit C to the Sixth Contest a zero tape that
was printed on December 16, 2014, the day of the runoff election.

70.     Results tapes were printed the day of the runoff election. There is no evidentiary
support for the allegation that results tapes were not printed as required by the Texas
Secretary of State.

71. Pressley took a personal and participatory role in this lawsuit. Pressley testified she personally authored portions of the Contests and their appendices. She estimated that she spent hours and hours working on the lawsuit and that she had worked until 3:00 a.m. drafting the Contests. Pressley was present at the deposition of County Clerk DeBeauvoir, as well as the two-day document production by the County Clerk's office.

72. Pressley testified at least three people assisted her in drafting discovery and with various other aspects of this election contest.

73. Pressley testified Contestee Casar has done nothing wrong in the conduct of the election.

74. Pressley testified she has assets and income sufficient to be able to pay a monetary sanction. Specifically, Pressley has: (1) approximately $30,000 to $40,000 that she has raised for the cost of pursuing this Contest and the appeal; (2) at least $170,000 in her business account for Pure Rain LLC, which is a Limited Liability Company of which she is the only owner; (3) real estate in Wyoming with a net value of between $10,000 and $25,000; (4) profit from a home that she and her husband recently sold for approximately $530,000; (5) annual sales of $50,000 to $60,000 per year from Pure Rain LLC; (6) annual income of approximately $130,000 to $160,000 from her husband's job as an engineer at Applied Materials; (7) a personal checking account valued at approximately $1,000; (8) her husband's personal account which is valued at approximately $5,000; and (9) savings of approximately $51,500 in legal fees which were owed to her attorney David Rogers. Additionally, Pressley has income earning capacity of over $100,000 per year based on her previous jobs.

75. Rogers has assets and income sufficient to be able to pay a monetary sanction.

Specifically, Rogers is a practicing attorney who charges approximately $350/hour. Additionally, Rogers testified he has the financial-ability-to-be-able-to-forgo-legal-fees of approximately $51,500 from Pressley.

**Findings of Fact Supporting Attorneys Fees**

76.     During this litigation, Casar retained Charles Herring, Jr. and Lauren Ross of Herring & Irwin LLP and Jessica Palvino of McGinnis Lochridge & Kilgore LLP.

77.     The services rendered by Charles Herring, Jr., Lauren Ross, and Jessica Palvino in defending Casar in this litigation were reasonable and necessary for these types of services in Travis County.

78.     The fees charged by Herring & Irwin LLP and McGinnis Lochridge & Kilgore LLP in defending Casar in this litigation were $ 150,000.00.

79.     The fees and rates charged by Charles Herring, Jr., Lauren Ross, and Jessica Palvino in defending Casar in this litigation were reasonable and customary for these types of services in Travis County.

## CONCLUSIONS OF LAW

80.     Irregularities that allegedly occurred during the recount did not materially affect the outcome of the runoff election. *See Gonzalez v Villarreal*, 251 S.W.3d 763, 777-778 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.) (headnotes 10 and 11).

81.     At the time the Original, Second Amended, Third Amended, Fourth Amended, Fifth Amended, and Sixth Amended Contests were filed, Rogers certified that to his best knowledge, information, and belief, formed after reasonable inquiry, that the allegation that irregularities that occurred during the recount materially affected the outcome of the runoff election was warranted by existing law or by a non-frivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law.

82.     There is no evidentiary support for the allegation that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election. *See Gonzalez v Villarreal*, 251 S.W.3d 763, 777-778 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.).

83.     Rogers failed to conduct a reasonable inquiry into whether each allegation (that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election) was warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

84.     Rogers knew or should have known this allegation (that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election) was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

85.     A reasonable inquiry would have revealed irregularities that allegedly occurred during the recount **did not materially affect** the outcome of the runoff election.

86.     The allegations that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election were not supported by existing law and there was not a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

87.     By failing to conduct a reasonable inquiry into whether the legal contentions in the Contests were warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code.

88. By asserting legal contentions in the Contests that were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code.

89. This Court has authority to impose a sanction on David Rogers because of this violation of Section 10.001(2). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both."

90. At the time that the Original, Second Amended, Third Amended, Fourth Amended, Fifth Amended, and Sixth Amended Contests were filed, Rogers and Pressley certified that, to the best of their knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contests had evidentiary support, including the allegation that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election.

91. At the time that the Original, Second Amended, Third Amended, Fourth Amended, Fifth Amended, and Sixth Amended Contests were filed, Rogers and Pressley failed to conduct a reasonable inquiry into whether their allegation (that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election) had evidentiary support.

92. At the time that the Original, Second Amended, Third Amended, Fourth Amended, Fifth Amended, and Sixth Amended Contests were filed, Rogers and Pressley knew or should have known their allegation that irregularities that allegedly occurred during the recount materially affected the outcome of the runoff election did not have

evidentiary support.

93.     The allegation that irregularities that allegedly occurred during the recount

materially affected the outcome of the runoff election has no evidentiary support.

94.     By failing to make a reasonable inquiry into whether factual claims in the

Contests had evidentiary support, Pressley and Rogers violated Section 10.001(3) of the

Civil Practices and Remedies Code.

95.     By asserting factual claims in the Contests that Pressley and Rogers knew were

without evidentiary support, Pressley and Rogers violated Section 10.001(3) of the Civil

Practices and Remedies Code.

96.     This Court has authority to impose a sanction on David Rogers and on Laura

Pressley because of this violation of Section 10.001(3). This authority arises from Texas

Civil Practice and Remedies Code Section 10.004, which states that "a court that

determines that a person has signed a pleading or motion in violation of Section 10.001

may impose a sanction on the person, a party represented by the person, or both."

97.     Travis County Director of Elections Michael Winn did not commit a criminal

violation by not allowing Pressley and her poll watchers to view the source, properties,

and copying of the CVR files during the recount.

98.     At the time the Sixth Amended Contest was filed, Rogers certified that to the best

of his knowledge, information, and belief, formed after reasonable inquiry, that the

allegation that Mr. Winn committed a criminal violation by not allowing Pressley and her

poll watchers to view the source, property, and copying of the CVR files was warranted

by existing law or by a non-frivolous argument for the extension, modification, or

reversal of existing law or the establishment of new law.

99.   Rogers failed to conduct a reasonable inquiry into whether this allegation (that Michael Winn committed a criminal violation) was warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

100.   Rogers knew that this allegation (that Michael Winn committed a criminal violation) was not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

101.   A reasonable inquiry would have revealed that Mr. Winn did not violate Texas Election Code § 33.061 by not allowing Pressley and her poll watchers to view the source and properties of the CVR files during the recount; that, under Election Code § 213.016, Pressley and her poll watchers were allowed to be and were present for the printing of the CVRs; and that nothing in the Election Code authorized Pressley or her poll watchers to view the source and properties of the CVR files, such as dates of the CVR files and origination.

102.   The allegations that Mr. Winn committed criminal violations were not supported by existing law and there was not a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

103.   By failing to conduct a reasonable inquiry into whether the legal contentions in the Contests were warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code.

104.   By asserting legal contentions in the Contests that were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing

law, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code.

105.    This Court has authority to impose a sanction on David Rogers because of this violation of Section 10.001(2). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both."

106.    At the time the Sixth Amended Contest was filed, Rogers and Pressley certified that, to the best of their knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contests had evidentiary support, including the allegation that Mr. Winn committed a criminal violation by not allowing Pressley and her poll watchers to view the source, property, and copying of the CVR files.

107.    At the time that the Sixth Amended Contest was filed, Rogers and Pressley failed to conduct a reasonable inquiry into whether their allegation (that Mr. Winn committed a criminal violation by not allowing Pressley and her poll watchers to view the source, property, and copying of the CVR files) had evidentiary support.

108.    At the time that the Sixth Amended Contest was filed, Rogers and Pressley knew that their allegation (that Mr. Winn committed a criminal violation by not allowing Pressley and her poll watchers to view the source, property, and copying of the CVR files) did not have evidentiary support.

109.    The allegation that Mr. Winn committed a criminal violation by not allowing Pressley and her poll watchers to view the source, property, and copying of the CVR files has no evidentiary support.

110. By failing to make a reasonable inquiry into whether factual claims in the Contests had evidentiary support, Pressley and Rogers violated Section 10.001(3) of the Civil Practices and Remedies Code.

111. By asserting factual claims in the Contests that Pressley and Rogers knew were without evidentiary support, Pressley and Rogers violated Section 10.001(3) of the Civil Practices and Remedies Code.

112. This Court has authority to impose a sanction on David Rogers and on Laura Pressley because of this violation of Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both."

113. No credible evidence exists to prove that any Travis County voters were disenfranchised by the consolidation of voting locations between the general election, held on November 4, 2014 and the runoff election held on December 16, 2014.

114. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers certified that to his best knowledge, information, and belief, formed after reasonable inquiry, that the allegation that Travis County illegally disenfranchised District 4 voters by consolidating voting locations was warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

115. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers failed to conduct a reasonable inquiry in whether this allegation (that Travis County illegally disenfranchised District 4

voters by consolidating voting locations) was supported by existing law or a non-frivolous argument for extension, modification, or reversal of existing law or the establishment of new law.

116. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers knew or should have known that this allegation (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) was unsupported by existing law or a non-frivolous argument for extension, modification, or reversal of existing law or the establishment of new law.

117. A reasonable inquiry would have revealed that existing law did not support the allegation that voters had been illegally disenfranchised by the consolidation of voting locations, and that there was not a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

118. By failing to conduct a reasonable inquiry into whether the legal contentions in the Contests were warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code.

119. By asserting legal contentions in the Contests that were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code.

120. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers and Pressley certified that, to the best of their knowledge, information, and belief, formed after reasonable inquiry,

each allegation or other factual contention in the Contest had evidentiary support, including the allegations that Travis County illegally disenfranchised District 4 voters by consolidating voting locations.

121. At the time that the Original, Second Amended, Third Amended, and Fourth Amended Contests were filed, Rogers and Pressley failed to conduct a reasonable inquiry into whether these factual allegations (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) had evidentiary support.

122. At the time that the Original, Second Amended, Third Amended, and Fourth Amended Contests were filed, Rogers and Pressley knew that these factual allegations (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) had no evidentiary support.

123. At the time that the Fifth Amended Contest was filed, Rogers and Pressley knew that these allegations (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) did not have evidentiary support. Pressley testified four days prior to filing the Fifth Amended Contest that she could not identify a single voter who was disenfranchised due to the change in voting locations. Pressley testified that regardless of the fact that she could not obtain one affidavit from one voter attesting to disenfranchisement of voters, she made her claims based on statistical analysis of prior voting patterns and conversations she had with persons she could not identify.

124. The allegation that Travis County illegally disenfranchised thousands of District 4 voters by consolidating voting locations has no evidentiary support.

125. By failing to make a reasonable inquiry into whether factual claims in the Contests had evidentiary support, Pressley and Rogers violated Section 10.001(3) of the

Civil Practices and Remedies Code.

126.   By asserting factual claims in the Contests that Pressley and Rogers knew were without evidentiary support, Pressley and Rogers violated Section 10.001(3) of the Civil Practices and Remedies Code.

127.   This Court has authority to impose a sanction on David Rogers and Laura Pressley because of this violation of Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both."

128.   Travis County printed zero tapes and results tapes for the runoff election as required by the Texas Secretary of State. Some of the zero tapes were printed prior to the date of the run-off election held on December 16, 2014.

129.   At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers and Pressley certified that, to the best of their knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contest had evidentiary support, including the allegations that Travis County failed to print zero tapes and results tapes in accordance with the Texas Secretary of State's requirements.

130.   At the time that the Sixth Amended Contest was filed, Rogers and Pressley certified that, to the best of their knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contest had evidentiary support, including the allegations that "discovery documents provided by Travis County [shows that] no Zero Tapes (showing the number of votes present on the

Hart Voting equipment for each candidate when the polls open) were printed during Early Voting and no Zero Tapes were printed on Election Day of the Runoff."

131. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers and Pressley knew that these allegations (that Travis County failed to print zero tapes and results tapes in accordance with the Texas Secretary of State's requirements) lacked evidentiary support.

132. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers and Pressley failed to conduct a reasonable inquiry into whether these allegations (that Travis County failed to print zero tapes and results tapes in accordance with the Texas Secretary of State's requirements) had evidentiary support.

133. At the time that the Sixth Amended Contest was filed, Rogers and Pressley knew that these allegations (that Travis County failed to print zero tapes and results tapes in accordance with the Texas Secretary of State's requirements and that discovery documents provided by Travis County showed that no Zero Tapes were printed during Early Voting and no Zero Tapes were printed on Election Day of the Runoff) lacked evidentiary support. Zero Tapes were produced by Travis County during their document production on April 22 and 23, 2015. Pressley's Sixth Amended Contest was filed on May 19, 2015. Pressley and Rogers attached as Exhibit C to the Sixth Contest a zero tape that was printed on December 16, 2014, the day of the runoff election. County Clerk Dana DeBeauvoir testified in her deposition on May 11, 2015 that zero tapes and results tapes were printed.

134. The allegations that Travis County failed to print zero tapes and results tapes in

accordance with the Texas Secretary of State's requirements have no evidentiary support. Some of the zero tapes were not printed on December 16, 2014, the date of the runoff election.

135. The allegations that discovery documents provided by Travis County showed that no Zero Tapes were printed during Early Voting and no Zero Tapes were printed on Election Day of the Runoff has no evidentiary support.

136. By failing to make a reasonable inquiry into whether factual claims in the Contests had evidentiary support, Pressley and Rogers violated Section 10.001(3) of the Civil Practices and Remedies Code.

137. By asserting factual claims in the Contests that Pressley and Rogers knew were without evidentiary support, Pressley and Rogers violated Section 10.001(3) of the Civil Practices and Remedies Code.

138. This Court has authority to impose a sanction on David Rogers and Laura Pressley because of this violation of Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both."

139. The factors articulated by the Texas Supreme Court in *Low v. Henry*, 221 S.W.3d 609 (Tex. 2007), support an award of sanctions in this case.

140. The first *Low* factor, the good faith or bad faith of the offender, weighs in favor of awarding sanctions. Pressley's conduct during the case, including making false allegations of criminal activity against the Travis County Director of Elections Michael Winn, indicate that she was not acting in good faith.

141. The second *Low* factor, the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense, weighs heavily in favor of sanctions. Pressley lost the election by a margin of 1,291 votes, a margin far greater than Rogers had ever seen and greater than has been overcome in the history of reported Texas jurisprudence. The Hart eSlate system, which Pressley alleges violated the Texas Election Code, was certified by the Texas Secretary of State and variations of the system have been used in other counties in Texas. There are two court decisions rejecting attacks on the Hart eSlate system. In the *Andrade v. NAACP* case, 345 S.W.3d 1 (Tex. 2011), the Texas Supreme Court found that "[t]he Secretary made a reasonable, nondiscriminatory choice to certify the eSlate, a decision justified by the State's important regulatory interests." In *Texas Democratic Party v. Williams*, No. A–07–CA–115–SS (W.D. Tex. Aug. 16, 2007), the Western District of Texas noted that the Secretary of State "made a reasonable, politically neutral, and non-discriminatory choice to certify the eSlate voting machines for use in elections, and nothing in the Constitution forbids this choice." Rogers was either aware of or failed to adequately investigate the legal and factual bases for Pressley's allegations.

142. The third *Low* factor, the knowledge, experience, and expertise of the offender, also weighs in favor of awarding sanctions. Rogers is an experienced attorney who has handled election contests previously and holds himself out as being knowledgeable regarding election contests. Pressley has a PhD in Chemistry, is actively involved in her community, and has appeared before Austin City Council at least thirty times. She was personally involved in drafting portions of the Contests and discovery.

143. The fourth *Low* factor, any prior history of sanctionable conduct on the part of the offender, is not applicable in this case.

144. The fifth *Low* factor, the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct, weighs in favor of awarding sanctions. Contestee Casar seeks the reasonable and necessary attorney's fees incurred in defending this election contest, and his attorneys are charging a reduced hourly rate. Casar has not yet paid any of his attorney fees.

145. The sixth *Low* factor, the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct, also weighs in favor of awarding sanctions. Contestee Casar is now a Council Member for the City of Austin, and has been required to divide his time between his duties as a Council Member and responding to Pressley's Election Contests. His city council annual salary is approximately $70,000.00.

146. The seventh *Low* factor, the relative culpability of client and counsel, also weighs in favor of awarding sanctions. Pressley took a personal and participatory role in this lawsuit. She testified she drafted portions of the Contests, drafted discovery questions to Travis County for Rogers to decide how to use, and was, according to Rogers, the most hands-on client he's ever had.

147. The eighth *Low* factor, the risk of chilling the specific type of litigation involved, also weighs in favor of awarding sanctions. There should not be a chilling effect from awarding sanctions in this case, as the purpose of sanctions in this case would be to encourage compliance with Chapter 10.

148. The ninth *Low* factor, the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction, also weighs in favor of awarding sanctions. Pressley has assets and income potential due to her high level of education sufficient to

justify the award of sanctions. Rogers has the ability to earn income sufficient to justify the award of sanctions.

149. The tenth *Low* factor, the impact of the sanction on the offended party, including the offended person's need for compensation, also weighs in favor of awarding sanctions. Pressley testified she knew of nothing Contestee Casar did wrong in the conduct of the election. Because of Pressley's election contest, Contestee Casar has incurred more than $150,000 in attorney's fees and has been unable to fully devote himself to his role as City Councilmember. His annual income as a council member is far less than Ms. Pressley's.

150. The eleventh *Low* factor, the relative magnitude of sanction necessary to achieve the goal or goals of the sanction, also weighs in favor of awarding sanctions. The goals in awarding sanctions, according to the Texas Supreme Court in *Remington Arms v. Caldwell* are compensation, punishment, and deterrence. 850 S.W.2d 167 (Tex. 1993). The Texas Civil Practices and Remedies Code Section 10.004 states that the sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. The same challenge to the Hart eSlate voting system that was brought by Pressley in this Election Contest could have been brought against any elected official in Austin, Travis County, or the hundreds of other counties in Texas that use the eSlate voting machine. It is important to deter these types of challenges to the Hart eSlate voting system, which has been fully approved and certified by the Texas Secretary of State.

151. The twelfth *Low* factor, burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs, have to date minimal impact in favor of awarding sanctions.

152.    The thirteenth *Low* factor, the degree to which the offended person's own behavior caused the expenses for which recovery is sought, also weighs in favor of awarding sanctions. Pressley admits that Casar did nothing wrong in the conduct of the election.

153.    Rogers and Pressley failed to show due diligence in violation of Section 10.002 of the Civil Practices and Remedies Code.

154.    All Conclusions of Law shall also be deemed to be Findings of Fact. To the extent any Conclusion of Law is a Finding of Fact or is a mixed question of law and fact, the same is found as a fact.

IT SO ORDERED.

SIGNED this the 23rd day of July, 2015.

JUDGE DAN MILLS

No. D-1-GN-15-000374

| | | |
|---|---|---|
| LAURA PRESSLEY,<br>Contestant, | §<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§ | OF TRAVIS COUNTY, TEXAS |
| GREGORIO "GREG" CASAR,<br>Contestee. | §<br>§<br>§ | 201st JUDICIAL DISTRICT |

## NOTICE OF ACCELERATED APPEAL

TO THE HONORABLE COURT:

NOW COMES, Laura Pressley, Contestant herein and give notice of her intent to appeal the trial court's judgment rendered on May 26, 2015 by accelerated appeal. This accelerated appeal is taken to the Third Court of Appeals, in Austin, Texas. This appeal does not pertain to a parental termination or child protection case as defined in Appellate 28.4.

Respectfully Submitted,

Mark Cohen
SBN: 04508400
805 W. 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424    Phone
(512) 472-5444    Facsimile
mark@cohenlegalservices.com

**ATTORNEY FOR CONTESTANT**

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by efile and/or facsimile to the following persons on this 15th day of June, 2015.

Charles 'Chuck' Herring Jr.
Jess Irwin
Lauren Ross
Herring & Irwin, L.L.P.
1411 West Avenue, Suite 100
Austin, TX  78701
(512) 320-0665     Telephone
(512) 519-7580     Facsimile
cherring@herring-irwin.com
jess@herring-irwin.com
laurenbross@herring-irwin.com

Jessica Palvino
McGinnis, Lochridge and Kilgore, LLP
600 Congress, Suite 2100
Austin, Texas  78701
(512) 495-6079     Telephone
(512) 505-6379     Facsimile
jpalvino@mcginnislaw.com

Kurt Kuhn
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000     Telephone
(512) 476-6002     Facsimile
kurt@kuhnhobbs.com

_____
Mark Cohen

No. D-1-GN-15-000374

| | | |
|---|---|---|
| LAURA PRESSLEY, | § | IN THE DISTRICT COURT |
| Contestant, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR, | § | |
| Contestee. | § | 201st JUDICIAL DISTRICT |

## FIRST AMENDED NOTICE OF ACCELERATED APPEAL

TO THE HONORABLE COURT:

NOW COMES, Laura Pressley, Contestant herein and give notice of her intent to appeal the trial court's judgment rendered on May 26, 2015 and the trial court's amended judgment filed on June 24, 2015 by accelerated appeal. This accelerated appeal is taken to the Third Court of Appeals, in Austin, Texas. This appeal does not pertain to a parental termination or child protection case as defined in Appellate 28.4.

Respectfully Submitted,

Mark Cohen
SBN: 04508400
805 W. 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424    Phone
(512) 472-5444    Facsimile
mark@cohenlegalservices.com

**ATTORNEY FOR CONTESTANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by efile and/or facsimile to the following persons on this 10th day of July, 2015.

Kurt Kuhn
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000     Telephone
(512) 476-6002     Facsimile
kurt@kuhnhobbs.com

Charles 'Chuck' Herring Jr.
Jess Irwin
Lauren Ross
Herring & Irwin, L.L.P.
1411 West Avenue, Suite 100
Austin, TX 78701
(512) 320-0665     Telephone
(512) 519-7580     Facsimile
cherring@herring-irwin.com
jess@herring-irwin.com
laurenbross@herring-irwin.com

Jessica Palvino
McGinnis, Lochridge and Kilgore, LLP
600 Congress, Suite 2100
Austin, Texas 78701
(512) 495-6079     Telephone
(512) 505-6379     Facsimile
jpalvino@mcginnislaw.com

Mark Cohen

## NO. D-1-GN-15-000374

| | | |
|---|---|---|
| LAURA PRESSLEY, | § | IN THE DISTRICT COURT |
| Contestant, | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR, | § | |
| Contestee, | § | 201ST JUDICIAL DISTRICT |

## FORMAL REQUEST FOR AMENDED AND ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Now comes Contestant Laura Pressley and subsequent to the court's entry of it order granting sanctions and its Findings of Fact and Conclusions of law related thereto on July 23, 2015 requests the court to amend them as follows and to make the following additional Findings of Fact and Conclusions of Law:

1. Finding of Fact number 1 be amended as follows:

   "Contestee Casar's Motion for Sanctions is DENIED."

2. Finding of Fact number 2 be amended by deleting it.

3. Finding of Fact number 3 be amended by deleting it.

4. Finding of Fact number 4 be amended by deleting it.

5. Finding of Fact number 5 be amended by deleting it.

6. Finding of Fact number 6 be amended by deleting it.

7. Finding of Fact number 7 be amended by deleting it.

8. Finding of Fact number 9 be amended by deleting it.

9. Finding of Fact number 15 be amended by deleting it.

10. Finding of Fact number 16 be amended to read as follows:

"16. On January 5, 2015, the day before Casar was to be sworn-in, Pressley filed a recount petition with the City of Austin. Before the recount took place, County Clerk Dana DeBeauvoir offered to run an audit of the election results for Pressley. The County Clerk testified that at the audit she would have told Pressley that a cast vote record satisfied statutory requirements of maintaining an image of the ballot cast which would not have prevented Pressley from filing this contest. Pressley refused DeBeauvoir's offer and demanded a recount."

11. Finding of Fact number 17 be amended by deleting it.

12. Finding of Fact number 18 be amended by deleting it.

13. Finding of Fact number 19 be amended by deleting it.

14. Finding of Fact 20 be amended to read as follows:

"After the recount, Pressley lodged several complaints regarding the recount with the Secretary of State."

15. Finding of Fact number 21 be amended by deleting it.

16. Finding of Fact number 22 be amended by deleting it.

17. Finding of Fact number 23 be amended by deleting it.

18. Finding of Fact number 24 be amended by deleting it.

19. Finding of Fact number 25 is amended by deleting it.

20. Finding of Fact number 26 be amended to read as follows:

"26. In paragraph 13, the Original Contest alleged that Travis County disenfranchised District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 14 and 15, the Original Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State."

21. Finding of Fact number 27 be amended to read as follows:

"27. In paragraph 13, the Second Amended Contest alleged that Travis County disenfranchised District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 11 and 14, the Second Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State."

22.    Finding of Fact number 28 be amended to read as follows:

"28.    In paragraphs 12 through 23, the Third Amended Contest alleged that Travis County disenfranchised District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 35 and 37, the Third Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State."

23.    Finding of Fact number 29 be amended to read as follows:

"29. On March 12, 2015, Pressley filed her Fourth Amended Contest. In paragraphs 12 through 23, the Fourth Amended Contest alleged that Travis County disenfranchised thousands of District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 35 and 37, the Fourth Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State."

24.    Finding of Fact number 30 be amended to read as follows:

"30. On April 16, 2015, the deposition of Pressley took place. At her deposition, Pressley admitted that she could not identify a single voter who was disenfranchised by the change in voting locations for the runoff election. Pressley also testified that she did not know if zero tapes had been printed, where they may have been printed, or when but that she was told by the County Clerk's representative Michael Winn that no Zero tapes would be printed on the day of the run-off election."

25.    Finding of Fact number 31 be amended to read as follows:

"31. On April 20, 2015, Pressley filed her Fifth Amended Contest. In paragraphs 12 through 29, the Fifth Amended Contest alleged that Travis County disenfranchised thousands of District 4 voters because certain voting locations were changed between the general election and the runoff election. In paragraphs 41 and 43, the Fifth Amended Contest alleged that Travis County did not print zero tapes and results tapes on Election Day as required by the Texas Secretary of State."

26. Finding of Fact number 32 be amended to read as follows:

"32. Pressley filed her final and Sixth Amended Contest on May 19, 2015. In paragraphs 3, 4, 8, 42 through 52, and 64, the Sixth Amended Contest alleged that Travis County did not produce or print zero tapes (per the definition of the Texas Secretary of State, showing the number of votes present on the Hart Voting equipment for each candidate when the polls open on Election Day,) and results tapes on Election Day as required by the Texas Secretary of State. What Travis County produced, and what was included in the Sixth Amended Contest as Exhibit C was a tape from Pct 133, a Pressley/Casar District 4 Precinct, that was printed on 11/26/15 and in the title indicated the date of the election, 12/16/15. The tape did not meet the definition of a Zero Tape in that it was not printed when the polls opened on Election Day (12/16/15 and it did not have all candidates names listed with zero votes next to each name. In the sanctions hearings the Travis County Clerk testified Pressley's name was not listed on it. In paragraphs 93 and 94, Pressley alleged that some unnamed election workers committed a criminal violation by not allowing Pressley and her poll watchers to view the source, properties, and copying of the CVR files during the recount. Pressley dropped from her Sixth Amended Contest her allegations that Travis County disenfranchised thousands of District 4 voters because certain voting locations were changed between the general election and the runoff election."

27. Finding of Fact number 34 be amended to read as follows:

"On May 26, 2015, after briefing and a hearing, the Court granted Casar's No-Evidence Summary Judgment Motion."

28. Finding of Fact number 36 be amended by deleting it.

29. Finding of Fact number 37 be amended by deleting it.

30. Finding of Fact number 38 be amended by deleting it.

31. Finding of Fact number 39 be amended by deleting it.

32. Finding of Fact number 40 be amended by deleting it.

33. Finding of Fact number 41 be amended by deleting it.

34. Finding of Fact number 42 be amended by deleting it.

35. Finding of Fact number 43 be amended by deleting it.

36. Finding of Fact number 44 be amended by deleting it.

37. Finding of Fact number 45 be amended by deleting it.

38. Finding of Fact number 46 be amended by deleting it.

39. Finding of Fact number 47 be amended by deleting it.

40. Finding of Fact number 48 be amended by deleting it.

41. Finding of Fact number 49 be amended by deleting it.

42. Finding of Fact number 50 be amended by deleting it.

43. Finding of Fact number 51 be amended to read as follows:

> "51. Pressley and her poll watchers were present while the Travis County recount team printed all of the CVRs for the recount. Pressley and her poll watchers were prevented from seeing any aspect of the selection of the CVRs other than the printer's act of regurgitating copies of CVRs."

44. Finding of Fact number 52 be amended by deleting it.

45.   Finding of Fact number 53 be amended by deleting it.

46.   Finding of Fact number 54 be amended by deleting it.

47.   Finding of Fact number 55 be amended by deleting it.

48.   Finding of Fact number 56 be amended by deleting it.

49.   Finding of Fact number 57 be amended to read as follows:

"57.   Pressley did not comment on or object to any of the voting
location changes at the Austin City Council meeting"

50.   Finding of Fact number 59 be amended by deleting it.

51.   Finding of Fact number 60 be amended by deleting it.

52.   Finding of Fact number 62 be amended to read as follows:

62. When Pressley was deposed on April 16, 2015, she could not
identify a single voter who was disenfranchised as a result of the
changes in voting locations. Pressley testified she had spoken with
people while phone banking on Election Day who claimed they had
difficulty."

53.   Finding of Fact number 63 be amended to read as follows:

"63.   Other than the statistical analysis described in the
pleadings and bank discussions with  irate potential voters there
is no other evidentiary support for the allegation that the Austin
City Council changed the voting locations for the runoff to
disenfranchise any District 4 voters."

54.   Finding of Fact number 64 be amended to read as follows:

"64.   Other than the statistical analysis described in the
pleadings and the phone bank discussions with irate potential
voters there is no other there is no evidentiary support for the

allegation that the changes in the voting locations for the runoff resulted in the disenfranchisement of any District 4 voters."

55. Finding of Fact number 65 be amended to read as follows:

"65. Other than the statistical analysis described in the pleadings and the phone bank discussions with irate potential voters there is no other irate potential voters there is no evidentiary support for the allegation that the Austin City Council changed the voting locations for the runoff to disenfranchise any District 4 voters. There is no evidentiary support that any identified voter was actually prevented from voting at the new locations."

56. Finding of Fact number 68 be amended by deleting it.

57. Finding of Fact number 69 be amended by deleting it.

58. Finding of Fact number 70 be amended by deleting it.

59. Finding of Fact number 71 be amended to read as follows:

"71. Pressley took a personal and participatory role in this lawsuit. She estimated that she spent hours and hours working on the lawsuit and that she had worked until 3:00 a.m. helping with the drafting the Contests on one occasion. Pressley was present at the deposition of County Clerk DeBeauvoir, as well as the two-day document production by the County Clerk's office."

60. Finding of Fact number 72 be amended to read as follows:

"72. Pressley testified at least three people assisted her in drafting proposed discovery and with various other aspects of this election contest."

61. Finding of Fact number 74 be amended to read as follows:

62."74. Pressley testified (1) she raised approximately $30,000 to $40,000 for the cost of pursuing this Contest and the appeal,

there was no evidence that any of that amount was unspent and available to pay monetary sanctions; (2) she owns all of the membership interest in an independent legal entity that at the time of her testimony had at least $170,000 in its business account named Pure Rain LLC, which is an Limited Liability Company; (3) she and her husband owned real estate in Wyoming with a net value of between $10,000 and $25,000, but did not testify it could be liquidated for that amount to pay monetary sanctions; (4) she and her husband had made a profit from a home that she and her husband recently sold for approximately $530,000 but there was no evidence that she still had any of that available to pay monetary sanctions; (5) the annual sales from Pure Rain, LLC were of $50,000 to $60,000 per year, but there was no evidence what the net profit was currently nor that there was any money from such sales were in her possession or that there would be any in the future to use to pay monetary sanctions; (6) her husband had an annual income of approximately $130,000 to $160,000 from her husband's job as an engineer at Applied Materials, but there was no evidence that any of that was in the form of cash available to pay monetary sanctions; (7) she had a personal checking account valued at approximately $1,000; (8) her husband had a personal account which was valued at approximately $5,000; and (9) that David Rogers had forgiven $ legal fees which but not that she had the money to pay him that anyhow. Contestee did not identify or prove Pressley's existing liabilities and therefore, a full accounting of her assets could not be assessed by the Court."

63. Finding of Fact number 75 be amended to read as follows:

"75. Rogers is a practicing attorney who charges approximately $350/hour. Additionally, Rogers testified he has the financial ability to be able to forgo legal fees from Pressley."

**Findings of Fact Supporting Attorney's Fees**

64. Finding of Fact number 78 be amended to read as follows:

"78. The fees charged by Herring & Irwin LLP and McGinnis

Lochridge & Kilgore LLP in defending Casar in this litigation were $150,000.00. Casar has not paid any of these fees and his attorneys will not take any action to collect them."

## CONCLUSIONS OF LAW"

65. Conclusion of Law number 80 be amended by deleting it.

66. Conclusion of Law number 81 be amended by deleting it.

67. Court Conclusion of Law number 82 be amended to read as follows:

"82. There was some evidence that there were irregularities in the conduct of the election."

68. Conclusion of Law number 83 be amended by deleting it.

69. Court Conclusion of Law number 84 be amended by deleting it.

70. Court Conclusion of Law number 85 be amended by deleting it.

71. Court Conclusion of Law number 86 be amended by deleting it.

72. Court Conclusion of Law number 87 be amended by deleting it.

73. Conclusion of Law number 88 be amended by deleting it.

74. Conclusion of Law Number 89 be amended to reads as follows:

"89. This Court has authority to impose a sanction on David Rogers if he violated Section 10.001(2). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both."

75. Conclusion of Law number 90 be amended by deleting it.

76. Conclusion of Law number 91 be amended by deleting it.

77. Conclusion of Law number 92 be amended by deleting it.

78. Conclusion of Law number 93 be amended by deleting it.

79. Conclusion of Law number 94 be amended by deleting it.

80. Conclusion of Law number 95 be amended by deleting it.

81. Conclusion of Law number 96 be amended to read as follows:

"96. This Court has authority to impose a sanction on David Rogers and on Laura Pressley if they violated Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both.""

82. Conclusion of Law number 97 be amended to read as follows:

"97. Travis County Director of Elections Michael Winn did not commit a criminal violation by not answering or returning phone calls to Pressley."

83. Conclusion of Law number 98 be amended by deleting it.

84. Conclusion of Law number 99 be amended by deleting it.

85. Conclusion of Law number 100 be amended by deleting it.

86. Conclusion of Law number 101 be amended by deleting it.

87. Conclusion of Law number 102 be amended by deleting it.

88. Conclusion of Law number 103 be amended to read as follows:

"103. If Rogers had failed to conduct a reasonable inquiry into whether the legal contentions in the Contests that were warranted by existing law or by a non-frivolous argument for the extension,

modification or reversal of existing law, Rogers would have violated Section 10.001(2) of the Civil Practices and Remedies Code."

89. Conclusion of Law number 104 be amended to read as follows:

"104. If Rogers had asserted legal contentions in the Contests that were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers would have violated Section 10.001(2) of the Civil Practices and Remedies Code."

90. Conclusion of Law number 105 be amended to read as follows:

"105. This Court has authority to impose a sanction on David Rogers if he violated Section 10.001(2). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both.""

91. Conclusion of Law number 106 be amended to read as follows:

"106. At the time the Sixth Amended Contest was filed, Rogers certified that, to the best of his knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contests had evidentiary support."

92. Conclusion of Law number 107 be amended by deleting it.

93. Conclusion of Law number 108 be amended by deleting it.

94. Conclusion of Law number 109 be amended by deleting it.

95. Conclusion of Law number 110 be amended by deleting it.

96. Conclusion of Law number 111 be amended by deleting it.

97. Conclusion of Law number 112 be amended to read as follows:

"112. This Court has authority to impose a sanction on David Rogers

and on Laura Pressley if there had been a violation of Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001(3) may impose a sanction on the person, a party represented by the person, or both."

98. Conclusion of Law number 113 be amended to read as follows:

"113. The only evidence that Travis County voters were disenfranchised by the consolidation of voting locations between the General Election held on November 4, 2014 and the Runoff Election held on December 16, 2014 was the statistical analysis done of voting trends and discussions with irate potential voters to Pressley while she was phone banking."

99. Conclusion of Law number 115 be amended to read as follows:

"115. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers conducted an inquiry in whether this allegation (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) was supported by existing law or a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law by relying on *Gonzales v. Villareal*, supra."

100. Conclusion of Law number 116 be amended to read as follows:

"116. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers knew or should have known this allegation (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) was unsupported by existing law or a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law other than *Gonzales v. Villareal*, supra."

101. Conclusion of Law number 117 be amended to read as follows:

"117. A reasonable inquiry would have revealed that existing law did not support the allegation that voters had been illegally

disenfranchised by the consolidation of voting locations, and that there was not a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law other than *Gonzales v. Villareal*, supra."

102. Conclusion of Law number 118 be amended to read as follows:

"118. By failing to conduct an inquiry into whether the legal contentions in the Contests that were warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law other than *Gonzales v. Villareal*, supra, Rogers violated Section 10.001(2) of the Civil Practices and Remedies Code."

103. Conclusion of Law number 119 be amended to read as follows:

"119. By asserting legal contentions in the Contests that were not warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, Rogers would have violated Section 10.001(2) of the Civil Practices and Remedies Code."

104. Conclusion of Law number 121 be amended to read as follows:

"121. At the time that the Original, Second Amended, Third Amended, and Fourth Amended Contests were filed, Rogers failed to conduct a reasonable inquiry into whether these factual allegations (that Travis County illegally disenfranchised District 4 voters by consolidating voting locations) had evidentiary support other than the statistical analysis of voting trends and calls from irate potential voters to Pressley's phone bank."

105. Conclusion of Law number 122 be amended by deleting it.

106. Conclusion of Law number 123 be amended to read as follows:

"123. Pressley testified that the evidentiary support for the allegation that consolidating voting locations was an irregularity in the conduct of the run-off election was her statistical analysis and reports from voters and her poll workers."

107.  Conclusion of Law number 124 be amended by deleting it.

108.  Conclusion of Law number 125 be amended by deleting it.

109.  Conclusion of Law number 126 be amended by deleting it.

110.  Conclusion of Law number 127 be amended to read as follows:

"127. This Court has authority to impose a sanction on David Rogers and Laura Pressley if there had been a violation of Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both.""

111.  Conclusion of Law number 128 be amended by deleting it.

112.  Conclusion of Law number 129 be amended to read as follows:

"129. At the time that the Original, Second Amended, Third Amended, Fourth Amended, and Fifth Amended Contests were filed, Rogers certified that, to the best of his knowledge, information, and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contest had evidentiary support, including the allegations that Travis County failed to print zero tapes."

113.  Conclusion of Law number 130 be amended to read as follows:

"130. At the time that the Sixth Amended Contest was filed, Rogers certified that, to the best of his knowledge, information and belief, formed after reasonable inquiry, each allegation or other factual contention in the Contest had evidentiary support, including the allegations that "discovery documents provided by Travis County shows that no Zero Tapes ((per the definition of the Texas Secretary of State, showing the number of votes present on the Hart Voting equipment for each candidate when the polls open on Election Day, 12/16/15)) were printed on the date of the run-off election.""

114. Conclusion of Law number 131 be amended by deleting it.

115. Conclusion of Law number 132 be amended by deleting it.

116. Conclusion of Law number 133 be amended by deleting it.

117. Conclusion of Law number 134 be amended by deleting it.

118. Conclusion of Law number 135 be amended to read as follows:

"135. The allegations that discovery documents provided by Travis County showed that no Zero Tapes were printed during Early Voting and no Zero Tapes were printed on Election Day of the Runoff has evidentiary support. The undisputed testimony is that the County Clerk instructed her employees not to print Zero Tapes on the day of the run-off election and that Mr. Winn, the Clerk's director of elections, told several people Zero tapes would not be printed on the day of the election."

119. Conclusion of Law number 136 be amended by deleting it.

120. Conclusion of Law number 137 be amended by deleting it.

121. Conclusion of Law number 138 be amended to read as follows:

"138. This Court has authority to impose a sanction on David Rogers and Laura Pressley if there had been a violation of Section 10.001(3). This authority arises from Texas Civil Practice and Remedies Code Section 10.004, which states that "a court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both.""

122. Conclusion of Law number 139 be amended to read as follows:

"139. Even if there had been a basis for sanctions under Section 10.001, et. Seq. of the Texas civil Practices and Remedies Code, the factors articulated by the Texas Supreme Court in *Low v. Henry*, 221 S.W.3d 609 (Tex. 2007), insignificantly, at best, would support an award of sanctions in this case, but taken as a whole these factors do

not support an award of sanctions."

123. Conclusion of Law number 140 be amended to read as follows:

"140. The first *Low* factor, the good faith or bad faith of the offender, weighs against awarding sanctions. Pressley is only responsible for the factual allegation that the clerk's employees did not let them see the entire process of printing the ballots. That was true. The complaint is about calling that a criminal violation and doing so was purely a legal conclusion drawn by Mr. Rogers from the true fact reported and alleged by Dr. Pressley. Also Pressley's 6th amended does not accuse Mr. Winn of criminal activity here is no evidence either Pressley or Rogers acted in bad faith. Indeed, their positions in this case were made in good faith."

124. Conclusion of Law number 141 be amended to read as follows:

"141. The second *Low* factor is not applicable. There was no evidence Pressly or Rogers acted willfully or negligently with vindictiveness in asserting that the clerk failed to print zero tapes on the day of the election since Michael Winn reported the same to Pressley and the Clerk had admitted she did not in her testimony. There is no evidence Pressley or Rogers acted willfully or negligently with vindictiveness in asserting or in relying on a statistical analysis and reports from irate potential voters in alleging what Pressley reasonably believed would develop convincing evidence that voters were disenfranchised by change in voting locations and when the discovery evidence did not develop as she hoped dropping that allegation. While she did allege true occurrences, supported by third party affidavits that illegal activity did occur, a factor in determining whether the true outcome could be ascertained, she did not name any particular person responsible for that activity."

125. Conclusion of Law number 142 be amended to read as follows:

"142. The third *Low* factor, the knowledge, experience, and expertise of the offender, also weighs slightly but insignificantly in favor of awarding sanctions against Rogers. Rogers is an experienced attorney who has handled election contests previously and holds himself out as

being knowledgeable regarding election contests. Although Pressley has a PhD in Chemistry, a business owner and is actively involved in her community, and has appeared before Austin City Council at least thirty times. She was personally involved in drafting portions of the Contests and discovery. This does not mean that Pressley had the knowledge, expertise and experience in election law and contests that would make any of her actions in this case sanctionable. At best, it shows that she is not stupid and is active in her community. Chemists and business owners who are active in their community should not be more likely to be sanctioned for those reasons."

126. Conclusion of Law number 143 be amended to read as follows:

"143. The fourth *Low* factor, any prior history of sanctionable conduct on the part of the offender weighs against the imposition of sanctions. There is no evidence if such a prior history."

127. Conclusion of Law number 144 be amended to read as follows:

"144. The fifth *Low* factor, the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct weighs against the imposition of sanctions because he has not paid any attorney's fees and will not be sued for them. Casar is not out of pocket for attorney's fees and will never be required to pay any attorney's fees."

128. Conclusion of Law number 145 be amended to read as follows:

"145. The sixth *Low* factor, the nature and extent of prejudice, apart from out-of-pocket expenses, is not applicable in this case. There was no evidence of this at the hearing."

129. Conclusion of Law number 146 be amended to read as follows:

"146. The seventh *Low* factor, the relative culpability of client and counsel, is relevant as to which person to assess how much of the sanctions if sanctions were appropriate. Pressley took a personal and participatory role in this lawsuit. She testified she propose drafts for Rogers consideration and at his directions of portions of the Contests, assisted in drafting discovery questions to Travis County for Roger's

to decide how to use, and was, according to Rogers, the most hands-on client he's ever had. These facts have little if any significance since many clients assist their attorneys for various reasons including their better familiarity with the facts and a hope of saving money. These normal activities by Pressley should not weigh in the Low analysis of sanction imposition and that Pressley would be responsible for 44.44 % of the sanction award."

130. Conclusion of Law number 147 be amended to read as follows:

"147. The eighth *Low* factor, the risk of chilling the specific type of litigation involved, also weighs against awarding sanctions. This factor weighs against awarding sanctions of $90,000.00 for filing an election contest 44.44% of which are assessed against the Candidate because doing so will obviously have a chilling effect on any decision by another candidate to exercise their statutory right to file an election contest for fear that a court who holds they failed to prove their case by clear and convincing evidence will impose crippling sanctions on them."

131. Conclusion of Law number 148 be amended to read as follows:

"148. The ninth *Low* factor, the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction, also weighs against awarding sanctions. Pressley has very few assets that can be used to pay sanctions. There is no evidence she still has any of the $40,000 she raised to pay expenses in this case. The undisputed evidence is that her costs have greatly exceeded that amount already. The $170,000 that belongs to an independent entity is not hers and could not be subject to seizure to pay the sanctions. Here, there is no evidence that she has any of the profit from the sale of her home or how much or the sales price was profit. She is no longer making a salary and if she could in the future it would be is needed to live on as is her husbands and earning capacity not an asset that can be currently liquidated to pay sanctions and does make her more able to pay monetary sanctions. She has basically has $1,000 in assets, $6,000 counting her husband's assets. The $40,000 award is greatly in access of the assets she has available to pay the sanctions Rogers presumable earns enough income but there is no evidence he has assets available to pay any monetary sanctions. Contestee did not identify or prove

Pressley's existing liabilities and therefore, a full accounting of her net assets could not be assessed by the Court."

132. Conclusion of Law number 149 be amended to read as follows:

"149. The tenth *Low* factor, the impact of the sanction on the offended party, including the offended person's need for compensation, also weighs against awarding sanctions. There is no evidence of Casar's need for compensation or that the sanction would have a positive impact on Casar. Since it has been made clear that he is not accused of any wrongdoing, he does not to point to an award of sanctions as evidence of vindication."

133. Conclusion of Law number 150 be amended to read as follows:

"150. The eleventh *Low* factor, the relative magnitude of sanction necessary to achieve the goal or goals of the sanction, also weighs against awarding sanctions. The goals in awarding sanctions, according to the Texas Supreme Court in *Remington Arms v. Caldwell* are compensation, punishment, and deterrence. 850 S.W.2d 167 (Tex. 1993). The Texas Civil Practices and Remedies Code Section 10.004 states that the sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. There cannot be any more challenges before the court of appeals rules so either there will be more suits because the cast vote record only practice violates the election code or everyone will know this is not a winnable argument and will not go through the unnecessary expense of litigation. Furthermore, an award of sanctions of $90,000 is manifestly greater than is necessary to deter the conduct in this case while not chilling future election contest proceedings."

134. Conclusion of Law number 151 be amended to read as follows:

"151. The twelfth *Low* factor, burdens on the court system attributable to the misconduct, weighs against awarding sanctions. There is no evidence that this no evidence Summary Judgment burdened the Court system any more than any other election contest. The judge would have to be appointed and hear the case even if allegations of criminal conduct, voter disenfranchisement and failure to print cast vote records on the day of the election were not issues in

this case."

135. Conclusion of Law number 152 be amended to read as follows:

"152. The thirteenth *Low* factor, the degree to which the offended person's own behavior caused the expenses for which recovery is sought, weighs in slightly favor of awarding sanctions. Pressley admits that Casar did nothing wrong in the conduct of the election."

136. Conclusion of Law number 153 be amended by deleting it.

## Additional Findings of Fact and Conclusions of Law

135. Additional Finding of Fact No. 1."The Court did not base findings and conclusions on allegations related to whether cast vote record satisfies the statutory requirement to maintain an image of a ballot."

136. Additional Finding of Fact No. 2. "There was no evidence at the hearing that Pressley knew her evidentiary allegations were without evidentiary support, if they were. She testified that she thought the disenfranchise allegations were properly based on factual statistical analysis and reports from potential voters, that being told no zero tapes were made on the day of the election by Mr. Winn and that the clerk instructed her workers not to print zero tapes was the evidence for that allegation and that the refusal to let poll watchers to see the whole process of printing the CVRs was her evidence for violations of the law requiring poll watchers to view the printing process. There was no evidence Pressley knew that those facts were either false, if they were (they were admitted) or that they did not

constitute evidence of irregularities that a court could use to determine it could not ascertain the true outcome. Although the court in hindsight may have believed they were sufficient to establish the legal causes of action that does not mean she knew they could not have that effect."

Respectfully Submitted,

Mark Cohen
SBN: 04508400
Rose Cohen
SBN: 24031961
805 West 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424    Telephone
(512) 472-5444    Facsimile
mark@cohenlegalservices.com
rose@cohenlegalservices.com

**ATTORNEYS FOR CONTESTANT
LAURA PRESSLEY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by efile and/or facsimile to the following persons on this 30th day of July, 2015.

Kurt Kuhn
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000    Telephone
(512) 476-6002    Facsimile
kurt@kuhnhobbs.com

Charles 'Chuck' Herring Jr.
Jess Irwin
Lauren Ross
Herring & Irwin, L.L.P.
1411 West Avenue, Suite 100
Austin, TX 78701
(512) 320-0665     Telephone
(512) 519-7580     Facsimile
cherring@herring-irwin.com
jess@herring-irwin.com
laurenbross@herring-irwin.com

Jessica Palvino
McGinnis, Lochridge and Kilgore, LLP
600 Congress, Suite 2100
Austin, Texas 78701
(512) 495-6079     Telephone
(512) 505-6379     Facsimile
jpalvino@mcginnislaw.com

Mark Cohen



STATE OF TEXAS

OFFICE OF THE DISTRICT JUDGES
Travis County Court House
P.O. Box 1748
Austin, Texas 78767
(512) 854-9300

August 13, 2015

Mr. Mark Cohen
*Via Facsimile (512) 472-5444*

Mr. David A. Rogers
*Via Facsimile (512) 201-4082*

Ms. Jessica Palvino
*Via Facsimile (512) 519-7580*

Mr Kurt Kuhn
*Via Facsimile (512) 476-6002*

Mr. Charles Herring, Jr.
*Via Facsimile (512) 519-7580*

Re: **Cause No. D-1-FM-15-000374;** *Laura Pressley vs. Gregorio "Greg" Casar;* in the 200th Judicial District, Travis County, Texas

Dear Counsel:

Please find enclosed copy of ***Order On Request For Amended And Additional Findings Of Fact And Conclusions Of Law*** in the above matter signed by **Judge Dan Mills.** The original order has been filed with the District Clerk's office. Please provide copies to all parties of record in this case.

Sincerely,

Laura Gomez
Civil District Courts

Orig: Ms. Velva Price, Travis County District Clerk

Filed in The District Court
of Travis County, Texas

AUG 1 3 2015

At_____/0:45_____A M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-15-000374

| LAURA PRESSLEY | § | IN THE DISTRICT COURT |
| Contestant | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR | § | |
| Contestee | § | 201ST JUDICIAL DISTRICT |

## ORDER ON REQUEST FOR AMENDED AND ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

On this day came the request of Laura Pressley, Contestant herein to make amended and additional findings of fact and conclusions of law from those made by the court on July 23, 2015 and the court having reviewed the Formal Request For Amended and Additional Findings of Fact and Conclusions of Law, rules as follows:

The following paragraphs of Contestant's Formal Request for Amended and Additional Findings of Fact and Conclusions of Law are granted in part and denied in part and are amended to read as follows:

#34  On May 26, 2015, after briefing and a hearing, this Court granted Casar's no-evidence summary judgment motion.

#57  Pressley did not exercise her right to comment on or object to any of the voting location changes at the Austin City Council meeting

#72 Pressley testified at least three people assisted her in drafting proposed discovery and with various other aspects of this election contest.

#74  Pressley testified she has assets and income sufficient to be able to pay a monetary sanction. Specifically, Pressley has: (1) approximately $30,000 to $40,000 that she has raised for the cost of pursuing this Contest and the appeal; (2) at least $170,000 in her business account for Pure Rain LLC, which is an Limited Liability Company of which she is the only owner; (3) real estate in Wyoming with a net value of between $10,000 and $25,000; (4) profit from a home that she and her husband recently sold for approximately

$530,000; (5) annual sales of $50,000 to $60,000 per year from Pure Rain LLC; (6) annual income of approximately $130,000 to $160,000 from her husband's job as an engineer at Applied Materials; (7) a personal checking account valued at approximately $1,000; (8) her husband's personal account which is valued at approximately $5,000; and (9) savings of approximately $51,500 in legal fees which were owed to her attorney David Rogers. Additionally, Pressley has income earning capacity of over $100,000 per year based on her previous jobs. No evidence was offered to address Pressley's existing liabilities, if any.

**#78**   The fees charged by Herring & Irwin LLP and McGinnis Lochridge & Kilgore LLP in defending Casar in this litigation were $ 150,000.00. Casar has not paid any of the legal fees.

**#135**   The allegations that discovery documents provided by Travis County showed that no Zero Tapes were printed during Early Voting and no Zero Tapes were printed on Election Day of the Runoff has no evidentiary support.  There is evidence to suggest some "zero tapes" were printed prior to the run-off election and there is evidence to suggest "zero tapes" were printed on the day of the run-off election.

All other paragraphs of Contestants Formal Request for Amended and Additional Findings of Fact and Conclusions of Law not granted herein are denied.

SIGNED this the _____ day of _____ ,2015.


_____
JUDGE DAN MILLS

$530,000; (5) annual sales of $50,000 to $60,000 per year from Pure Rain LLC; (6) annual income of approximately $130,000 to $160,000 from her husband's job as an engineer at Applied Materials; (7) a personal checking account valued at approximately $1,000; (8) her husband's personal account which is valued at approximately $5,000; and (9) savings of approximately $51,500 in legal fees which were owed to her attorney David Rogers. Additionally, Pressley has income earning capacity of over $100,000 per year based on her previous jobs. No evidence was offered to address Pressley's existing liabilities, if any.

**#78** The fees charged by Herring & Irwin LLP and McGinnis Lochridge & Kilgore LLP in defending Casar in this litigation were $ 150,000.00. Casar has not paid any of the legal fees.

**#135** The allegations that discovery documents provided by Travis County showed that no Zero Tapes were printed during Early Voting and no Zero Tapes were printed on Election Day of the Runoff has no evidentiary support. There is evidence to suggest some "zero tapes" were printed prior to the run-off election and there is evidence to suggest "zero tapes" were printed on the day of the run-off election.

All other paragraphs of Contestants Formal Request for Amended and Additional Findings of Fact and Conclusions of Law not granted herein are denied.

SIGNED this the _12th_ day of _August_ ,2015.

_____
JUDGE DAN MILLS

No. D-1-GN-15-000374

| LAURA PRESSLEY, | § | IN THE DISTRICT COURT |
| Contestant, | § | |
| | § | |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| GREGORIO "GREG" CASAR, | § | |
| Contestee. | § | 201st JUDICIAL DISTRICT |

### SECOND AMENDED NOTICE OF ACCELERATED APPEAL

TO THE HONORABLE COURT:

NOW COMES, Laura Pressley, Contestant herein and give notice of her intent to appeal the trial court's judgment rendered on May 26, 2015 the trial court's amended judgment filed on June 24, 2015, the trial court's Amended Judgment filed on July 23, 2015, the trial court's Order on Sanctions with Findings of Fact and Conclusions of Law also filed on July 23, 2015. This is an accelerated appeal. This accelerated appeal is taken to the Third Court of Appeals, in Austin, Texas. This appeal does not pertain to a parental termination or child protection case as defined in Appellate 28.4.

Respectfully Submitted,

Mark Cohen
SBN: 04508400
805 W. 10th Street, Suite 100
Austin, Texas 78701
(512) 474-4424    Phone
(512) 472-5444    Facsimile
mark@cohenlegalservices.com

**ATTORNEY FOR CONTESTANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by efile and/or facsimile to the following persons on this 30th day of July, 2015.

Kurt Kuhn
KUHN HOBBS PLLC
3307 Northland Drive, # 310
Austin, Texas 78731
(512) 476-6000     Telephone
(512) 476-6002     Facsimile
kurt@kuhnhobbs.com

Charles 'Chuck' Herring Jr.
Jess Irwin
Lauren Ross
Herring & Irwin, L.L.P.
1411 West Avenue, Suite 100
Austin, TX  78701
(512) 320-0665     Telephone
(512) 519-7580     Facsimile
cherring@herring-irwin.com
jess@herring-irwin.com
laurenbross@herring-irwin.com

Jessica Palvino
McGinnis, Lochridge and Kilgore, LLP
600 Congress, Suite 2100
Austin, Texas  78701
(512) 495-6079     Telephone
(512) 505-6379     Facsimile
jpalvino@mcginnislaw.com

Mark Cohen

Print this page

# Case # D-1-GN-15-000374

## Case Information

| | |
|---|---|
| Location | Travis County - District Clerk |
| Date Filed | 07/30/2015 02:33:28 PM |
| Case Number | D-1-GN-15-000374 |
| Case Description | |
| Assigned to Judge | |
| Attorney | Mark Cohen |
| Firm Name | Law Office of Mark Cohen |
| Filed By | Rose Cohen |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.00 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $0.00 |
| Total Provider Tax Fees | $0.00 |
| Grand Total | $0.00 |

## Payment

| | |
|---|---|
| Account Name | American Airlines Credit Card |
| Transaction Amount | $0.00 |
| Transaction Response | |
| Transaction ID | 10320695 |
| Order # | 006294762-0 |

## No Fee Documents

| | |
|---|---|
| Filing Type | EFileAndServe |
| Filing Code | No Fee Documents |
| Filing Description | Pressley-Second Amended Notice of Accelerated Appeal |
| Reference Number | Pressley-Second Amended Notice of Accelerated Appeal |
| Comments | |
| Courtesy Copies | jan@thormannlegal.com |
| Status | Accepted |

Accepted Date                                        07/30/2015 02:55:06 PM
**Fees**
Court Fee                                            $0.00
Service Fee                                          $0.00
**Documents**

*Lead Document*          Second Amended Notice of Accelerated       [Original] [Transmitted]
                         Appeal.pdf

**eService Details**

| Name/Email | Firm | Service Type | Status | Served | Date/Time Opened |
|---|---|---|---|---|---|
| Laura Pressley purerainlaura@aol.com | | EServe | Sent | Yes | Not Opened |
| Kurt Kuhn kurt@kuhnhobbs.com | Kuhn Hobbs PLLC | EServe | Sent | Yes | 07/30/2015 02:38:13 PM |
| Linda Trial linda@kuhnhobbs.com | Kuhn Hobbs PLLC | EServe | Sent | Yes | 07/30/2015 02:53:08 PM |
| Jessica Palvino jpalvino@mcginnislaw.com | McGinnis Lochridge | EServe | Sent | Yes | 07/30/2015 02:34:39 PM |
| Chuck Herring cherring@herring-irwin.com | | EServe | Sent | Yes | Not Opened |
| Kurt Kuhn Kurt@kuhnhobbs.com | | EServe | Sent | Yes | 07/30/2015 02:37:06 PM |
| Lauren Ross laurenbross@gmail.com | | EServe | Sent | Yes | 07/30/2015 02:34:31 PM |
| Mark Cohen mark@cohenlegalservices.com | | EServe | Sent | Yes | 07/30/2015 02:38:04 PM |
| Jess Irwin jess@herring-irwin.com | | EServe | Sent | Yes | Not Opened |

# Tex. Const. Art. VI, § 4

## Sec. 4. Elections By Ballot; Numbering, Fraud, and Purity of Elections; Registration of Voters.

- In all elections by the people, the vote shall be by ballot, and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box; and the Legislature shall provide by law for the registration of all voters.

CIVIL PRACTICE AND REMEDIES CODE

TITLE 2. TRIAL, JUDGMENT, AND APPEAL

SUBTITLE A. GENERAL PROVISIONS

CHAPTER 10. SANCTIONS FOR FRIVOLOUS PLEADINGS AND MOTIONS

Sec. 10.001. SIGNING OF PLEADINGS AND MOTIONS. The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

Sec. 10.002.  MOTION FOR SANCTIONS.  (a)  A party may make a motion for sanctions, describing the specific conduct violating Section 10.001.

(b)  The court on its own initiative may enter an order describing the specific conduct that appears to violate Section 10.001 and direct the alleged violator to show cause why the conduct has not violated that section.

(c)  The court may award to a party prevailing on a motion under this section the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.

Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.


Sec. 10.003.  NOTICE AND OPPORTUNITY TO RESPOND.  The court shall provide a party who is the subject of a motion for sanctions under Section 10.002 notice of the allegations and a reasonable opportunity to respond to the allegations.

Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.


Sec. 10.004.  VIOLATION;  SANCTION.  (a)  A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both.

(b)  The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated.

(c)  A sanction may include any of the following:

(1)  a directive to the violator to perform, or refrain from performing, an act;

(2)  an order to pay a penalty into court;  and

(3)  an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.

(d)  The court may not award monetary sanctions against a represented party for a violation of Section 10.001(2).

(e)  The court may not award monetary sanctions on its own initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party or the party's attorney who is to be sanctioned.

(f)  The filing of a general denial under Rule 92, Texas Rules of Civil Procedure, shall not be deemed a violation of this chapter.

Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.


Sec. 10.005.  ORDER.  A court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed.

Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.


Sec. 10.006.  CONFLICT.  Notwithstanding Section 22.004, Government Code, the supreme court may not amend or adopt rules in conflict with this chapter.

Added by Acts 1995, 74th Leg., ch. 137, Sec. 1, eff. Sept. 1, 1995.

ELECTION CODE

TITLE 1. INTRODUCTORY PROVISIONS

CHAPTER 2. VOTE REQUIRED FOR ELECTION TO OFFICE

SUBCHAPTER A. ELECTION BY PLURALITY

Sec. 2.001.  PLURALITY VOTE REQUIRED.  Except as otherwise provided by law, to be elected to a public office, a candidate must receive more votes than any other candidate for the office.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

## Sec. 33.056. Observing Activity Generally.

- **(a)** Except as provided by Section 33.057, a watcher is entitled to observe any activity conducted at the location at which the watcher is serving. A watcher is entitled to sit or stand conveniently near the election officers conducting the observed activity.

- **(b)** A watcher is entitled to sit or stand near enough to the member of a counting team who is announcing the votes to verify that the ballots are read correctly or to a member who is tallying the votes to verify that they are tallied correctly.

- **(c)** A watcher is entitled to inspect the returns and other records prepared by the election officers at the location at which the watcher is serving.

- **(d)** A watcher may not be prohibited from making written notes while on duty. Before permitting a watcher who made written notes at a precinct polling place to leave while the polls are open, the presiding officer may require the watcher to leave the notes with another person on duty at the polling place, selected by the watcher, for retention until the watcher returns to duty.

## History

Enacted by Acts 1985, 69th Leg., ch. 211 (S.B. 616), § 1, effective January 1, 1986.

Sec. 52.001.  OFFICIAL BALLOT.  (a)  Except as provided by Subsection (b), the vote in an election is by official ballot.

(b)  If an official ballot is unavailable at a polling place, the presiding election judge shall provide a ballot designed in accordance with this chapter.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Election Code Sec. 52.003. PLACING CANDIDATE'S NAME ON BALLOT. (a) Except as otherwise provided by law, the authority responsible for having the official ballot prepared shall have placed on the ballot the name of each candidate:

      (1) who has filed with the authority an application for a place on the ballot that complies with the requirements as to form, content, and procedure that the application must satisfy for the candidate's name to be placed on the ballot; or

      (2) whose entitlement to placement on the ballot has been lawfully certified to the authority.

    (b) A candidate's name shall be placed on the ballot in the form indicated on the candidate's application or, if the application was not filed with the authority, in the form certified to the authority.

    (c) Except as otherwise provided by law, in a runoff election, the authority shall have placed on the ballot the name of each candidate who is entitled to a place on the runoff ballot as indicated by the canvass for the main election.

Sec. 52.062.  NUMBERING OF BALLOTS.  The ballots prepared by each authority responsible for having the official ballot prepared shall be numbered consecutively beginning with the number "1."

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Texas Election Code Sec. 52.063.  DESIGNATION OF ELECTION AND DATE.  A designation of the nature of the election and the date of the election shall be printed at the top of the ballot.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Texas Election code Sec. 52.031.  FORM OF NAME ON BALLOT.  (a)  A candidate's name shall be printed on the ballot with the given name or initials first, followed by a nickname, if any, followed by the surname, in accordance with this section

Election code sections 66.051 to .054

Sec. 66.051.  DISTRIBUTION OF ELECTION RECORDS.  (a)  The presiding judge shall deliver envelope no. 1 in person to the presiding officer of the local canvassing authority.  If the presiding officer of the local canvassing authority is unavailable, the envelope shall be delivered to the general custodian of election records who shall then deliver it to the local canvassing authority before the time set for convening the local canvass.

(b)  The presiding judge shall deliver envelope no. 2, ballot box no. 3, and ballot box no. 4 and its key in person to the general custodian of election records.

(c)  The presiding judge shall retain envelope no. 3.

(d)  The presiding judge shall deliver envelope no. 4 in person to the voter registrar.  If the voter registrar is unavailable, the envelope shall be delivered to the general custodian of election records, who shall deliver it to the voter registrar on the next regular business day.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.  Amended by Acts 1987, 70th Leg., ch. 54, Sec. 12(b), eff. Sept. 1, 1987;  Acts 1993, 73rd Leg., ch. 728, Sec. 21, eff. Sept. 1, 1993;  Acts 1997, 75th Leg., ch. 1078, Sec. 17, eff. Sept. 1, 1997;  Acts 2003, 78th Leg., ch. 1315, Sec. 39, eff. Jan. 1, 2004.

Sec. 66.052.  DELIVERY BY ELECTION CLERK.  A delivery of election records or supplies that is to be performed by the presiding judge may be performed by an election clerk designated by the presiding judge.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

Sec. 66.053.  TIME FOR DELIVERING ELECTION RECORDS.  (a) The precinct election records shall be delivered to the

appropriate authorities immediately after the precinct returns are completed.

(b) If the presiding judge determines that the ballots will not be counted in time to allow delivery of the precinct election records by 2 a.m. of the day after election day, the presiding judge, between midnight of election day and 1 a.m. of the following day, shall notify the general custodian of election records by telephone of:

(1) the total number of voters who voted at the polling place as indicated by the poll list;

(2) the vote totals tallied for each candidate and for and against each measure at the time of notification; and

(3) the expected time of finishing the count.

(c) The precinct election records shall be delivered not later than 24 hours after the polls close in each election.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.


Sec. 66.054. FAILURE TO DELIVER ELECTION RETURNS AND VOTED BALLOTS. (a) An election officer responsible for delivering precinct election returns or voted ballots commits an offense if the officer:

(1) fails to make the delivery to the appropriate authority;

(2) fails to make the delivery by the deadline prescribed by Section 66.053(c); or

(3) fails to prevent another person from handling in an unauthorized manner the returns or voted ballots that the officer is responsible for delivering while they are in the officer's custody.

(b) If the officer is an election clerk, it is an exception to the application of Subsection (a)(2) that the election clerk did not receive the returns from the presiding judge in time to permit a timely delivery.

(c) An offense under this section is a Class B misdemeanor.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

# Tex. Elec. Code § 128.001

## Sec. 128.001. Computerized Voting System Standards.

- (a) The secretary of state shall prescribe procedures to allow for the use of a computerized voting system. The procedures must provide for the use of a computerized voting system with:
    - o (1) multiple voting terminals for the input of vote selections on the ballot presented by a main computer; and
    - o (2) a main computer to coordinate ballot presentation, vote selection, ballot image storage, and result tabulation.

- (b) Notwithstanding Chapter 66, a system under this section may allow for the storage of processed ballot materials in an electronic form on the main computer.

- (c) The secretary of state may modify existing procedures as necessary to allow the use of a system authorized by this chapter.

## History

Enacted by Acts 1997, 75th Leg., ch. 1349 (H.B. 331), § 50, effective September 1, 1997.

Texas Election Code Sec. 213.016.  PRINTING IMAGES OF BALLOTS CAST USING DIRECT RECORDING ELECTRONIC VOTING MACHINES. During any printing of images of ballots cast using direct recording electronic voting machines for the purpose of a recount, the full recount committee is not required to be present.  The recount committee chair shall determine how many committee members must be present during the printing of the images.  Each candidate is entitled to be present and to have representatives present during the printing of the images in the same number as Section 213.013(b) prescribes for watchers for a recount.

Texas Election Code Sec. 214.049.  COUNTING PROCEDURE.

(e)  If electronic voting system ballots are to be recounted manually, the original ballot, rather than the duplicate of the original ballot, shall be counted.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1987, 70th Leg., 2nd C.S., ch. 59, Sec. 19, eff. Oct. 20, 1987;  Acts 1997, 75th Leg., ch. 864, Sec. 225, eff. Sept. 1, 1997;  Acts 2001, 77th Leg., ch. 851, Sec. 8, eff. Sept. 1, 2001.

# Tex. Elec. Code § 221.003

## Sec. 221.003. Scope of Inquiry.

- (a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because:
  - (1) illegal votes were counted; or
  - (2) an election officer or other person officially involved in the administration of the election:
    - (A) prevented eligible voters from voting;
    - (B) failed to count legal votes; or
    - (C) engaged in other fraud or illegal conduct or made a mistake.

- (b) In this title, "illegal vote" means a vote that is not legally countable.

- (c) This section does not limit a provision of this code or another statute expanding the scope of inquiry in an election contest.

## History

Enacted by Acts 1985, 69th Leg., ch. 211 (S.B. 616), § 1, effective January 1, 1986.

## Annotations

## Notes

LexisNexis ® Notes
STATUTORY NOTES
Revisor's Notes.

The revised law clarifies the scope of inquiry of a tribunal hearing an election contest, provides a definition of "illegal vote," and provides that the scope of inquiry in an election contest is not limited by this section.

# Case Notes

⊞ Civil Procedure: Judicial Officers: Judges: Discretion
⊞ Civil Procedure: Appeals: Standards of Review: Abuse of Discretion
⊞ Evidence: Procedural Considerations: Burdens of Proof: Clear & Convincing Proof
⊞ Evidence: Testimony: Experts: Credibility: General Overview
⊞ Governments: Legislation: Initiative & Referendum
⊞ Governments: Local Governments: Elections
⊞ Governments: State & Territorial Governments: Elections
Case Notes

- ⊞ Civil Procedure: Judicial Officers: Judges: Discretion
- ⊞ Civil Procedure: Appeals: Standards of Review: Abuse of Discretion
- ⊞ Evidence: Procedural Considerations: Burdens of Proof: Clear & Convincing Proof
- ⊞ Evidence: Testimony: Experts: Credibility: General Overview
- ⊞ Governments: Legislation: Initiative & Referendum
- ⊞ Governments: Local Governments: Elections
- ⊞ Governments: State & Territorial Governments: Elections

⊞ Civil Procedure: Judicial Officers: Judges: Discretion

1. If a sufficient number of voters are rendered potentially ineligible by mistakes made during the recording process to account for the entire margin of victory, a trial court is within its discretion to declare an election void because it is impossible to determine the true outcome of the election. Gonzalez v. Villarreal, 251 S.W.3d 763, 2008 Tex. App. LEXIS 921 (Tex. App. Corpus Christi 2008)pet. dism'd w.o.j.No. 08-0132, 2008 Tex. LEXIS 194 (Tex. Mar. 4, 2008), reh'g denied, No. 13-07-704-CV, 2008 Tex. App. LEXIS 4339 (Tex. App. Corpus Christi Mar. 24, 2008, no pet.).
⊞ Civil Procedure: Appeals: Standards of Review: Abuse of Discretion

2. In a case where a contestee won an election by three votes, a trial court did not abuse its discretion by declaring an election void under Tex. Elec. Code Ann. § 221.012 where seven voters testified that they were precluded from voting in a county commissioner's race due to

their being assigned to the incorrect precinct. McCurry v. Lewis, 259 S.W.3d 369, 2008 Tex. App. LEXIS 5029 (Tex. App. Amarillo 2008, no pet.).

Evidence: Procedural Considerations: Burdens of Proof: Clear & Convincing Proof

3. Where a trial court was presented with clear and convincing evidence that illegal votes were counted in an election for places on the board of trustees for an independent school district, that officials failed to count some legal votes, and that election judges made mistakes that materially affected and obscured the true outcome of the election, the trial court properly declared the election void and ordered a new election; legally sufficient evidence supported the trial court's implied findings that 77 votes were illegally cast and that, with respect to 436 voters, mistakes by election clerks in failing to record information required by the election code made it impossible to determine whether those votes were legally cast and countable because, among the undisputed testimony presented by an election contestant was that: (1) 72 voters listed on the combination forms were registered voters but, according to the online database, did not reside in the school district at issue; (2) five voters voted in the wrong precinct; (3) with respect to 127 voters who cast their votes on election day, the names or registration certificate numbers could not be located on the list of registered voters, either because the name did not appear on the list at all or because there were multiple, identical names on the list that might or might not have been the voter, making it impossible to tell if those votes were legally cast; (4) four voters on election day voted, but provided an incorrect voter registration number, and no address was provided, making it impossible to tell if those voters were qualified and properly accepted for voting, or whether they had been required to cast a provisional ballot; and (5) with respect to voting during early voting, because there was a lack of an address on the combination forms and the inability to match a particular voter with a particular listing on the online database, the contestant could not determine the eligibility of 208 voters from one polling place and 97 voters at another polling place. Gonzalez v. Villarreal, 251 S.W.3d 763, 2008 Tex. App. LEXIS 921 (Tex. App. Corpus Christi 2008)pet. dism'd w.o.j.No. 08-0132, 2008 Tex. LEXIS 194 (Tex. Mar. 4, 2008), reh'g denied, No. 13-07-704-CV, 2008 Tex. App. LEXIS 4339 (Tex. App. Corpus Christi Mar. 24, 2008, no pet.).

Evidence: Testimony: Experts: Credibility: General Overview

4. In an election contest under Tex. Elec. Code Ann. § 221.003(a), a trial court was not required to accept the opinion of an expert concerning the unreliability of electronic voting devices where he admitted that he had not examined or tested any machines used in the county; his conclusions were unsupported by any analysis or reasoning, and a county elections administrator testified to the contrary by pointing to the fact that signature rosters almost perfectly matched the number of paper votes. The trial court found that the election day count was valid; even if a court-supervised recount was accurate, the benefit to the incumbent was insufficient to affect the outcome of the election. Flores v. Cuellar, 269 S.W.3d 657, 2008 Tex. App. LEXIS 6610 (Tex. App. San Antonio 2008, no pet.)

Governments: Legislation: Initiative & Referendum

5. Statements by the mayor, cited as newly discovered evidence in a motion for new trial, were immaterial to the scope of inquiry in an election contest because the statements did not address matters discussed in either the measure or the proposition and consequently did not bear on the

question of whether voters were misled by the proposition. Dacus v. Parker, 383 S.W.3d 557, 2012 Tex. App. LEXIS 5420 (Tex. App. Houston 14th Dist. 2012, no pet. h.)

Governments: Local Governments: Elections

6. Court properly granted summary judgment in favor of appellee, because appellant indicated that he had no evidence that anybody failed to count legal votes and no evidence to prove the election results were wrong or that the voting machines were not working, and testified he had no evidence of any illegal votes. Vazaldua v. Muoz, — S.W.3d —, 2014 Tex. App. LEXIS 6701 (June 20, 2014, no pet. h.)

7. Statements by the mayor, cited as newly discovered evidence in a motion for new trial, were immaterial to the scope of inquiry in an election contest because the statements did not address matters discussed in either the measure or the proposition and consequently did not bear on the question of whether voters were misled by the proposition. Dacus v. Parker, 383 S.W.3d 557, 2012 Tex. App. LEXIS 5420 (Tex. App. Houston 14th Dist. 2012, no pet. h.)

8. Given that the parties utilized the trial court to resolve an issue of disputed fact and appellants had a right to the court's review to determine whether the trial court properly exercised its discretion in resolving the issues in this election contest, the court declined to issue sanctions. McDuffee v. Miller, 327 S.W.3d 808, 2010 Tex. App. LEXIS 8676 (Tex. App. Beaumont 2010, no pet.).

9. Clearly, the Legislature contemplated the use of election contest proceedings to resolve disputes concerning whether votes were countable. McDuffee v. Miller, 327 S.W.3d 808, 2010 Tex. App. LEXIS 8676 (Tex. App. Beaumont 2010, no pet.).

10. Legislature gave district courts a significant role in election contest proceedings, given that in an election contest, the district court determines whether the canvassed result includes illegal votes, under Tex. Elec. Code Ann. § 221.003, and the trial court is expressly authorized to subtract illegal votes from the official total for the candidate, under Tex. Elec. Code Ann. § 221.011; thus, it does not appear that the Legislature intended the registrar's role of hearing complaints about the validity of a voter's registration to be the exclusive method of assuring the accuracy of elections. McDuffee v. Miller, 327 S.W.3d 808, 2010 Tex. App. LEXIS 8676 (Tex. App. Beaumont 2010, no pet.).

11. Because the incumbent directors prevailed in the trial court, on appeal the court reviewed the evidence in the light most favorable to the judgment and determined if the trier-of-fact could have formed a firm belief that the residences of the voters casting the challenged votes were not within the right district on the date they signed a voter's registration application, nor when they voted, nor subsequently. McDuffee v. Miller, 327 S.W.3d 808, 2010 Tex. App. LEXIS 8676 (Tex. App. Beaumont 2010, no pet.).

12. Trial court erred in awarding summary judgment to a mayor in a city resident's action challenging a special election in which three proposed city charter amendments were passed because the expert testimony offered by the resident raised a genuine issue of material fact regarding whether irregularities in the conduct of the election rendered it impossible to determine

the majority of the voters' true will under Tex. Elec. Code Ann. § 221.003(a). Duncan-Hubert v. Mitchell, 310 S.W.3d 92, 2010 Tex. App. LEXIS 1889 (Tex. App. Dallas 2010)pet. deniedNo. 10-0493, 2010 Tex. LEXIS 729 (Tex. Oct. 1, 2010).

13. Challenge that does not concern whether the outcome of the election was incorrect for one of the four reasons listed in the statute is, by definition, not an election contest under Tex. Elec. Code Ann. § 221.003. City of Granite Shoals v. Winder, 280 S.W.3d 550, 2009 Tex. App. LEXIS 1925 (Tex. App. Austin 2009)pet. deniedNo. 09-0368, 2010 Tex. LEXIS 152 (Tex. Feb. 12, 2010).

14. Because property owners' suit for declaratory judgment did not raise any of the issues that had to be resolved in an election contest, they were not required to bring their challenge as an election contest under Tex. Elec. Code Ann. § 221.003. City of Granite Shoals v. Winder, 280 S.W.3d 550, 2009 Tex. App. LEXIS 1925 (Tex. App. Austin 2009)pet. deniedNo. 09-0368, 2010 Tex. LEXIS 152 (Tex. Feb. 12, 2010).

15. In an election contest under Tex. Elec. Code Ann. § 221.003(a), a trial court was not required to accept the opinion of an expert concerning the unreliability of electronic voting devices where he admitted that he had not examined or tested any machines used in the county; his conclusions were unsupported by any analysis or reasoning, and a county elections administrator testified to the contrary by pointing to the fact that signature rosters almost perfectly matched the number of paper votes. The trial court found that the election day count was valid; even if a court-supervised recount was accurate, the benefit to the incumbent was insufficient to affect the outcome of the election. Flores v. Cuellar, 269 S.W.3d 657, 2008 Tex. App. LEXIS 6610 (Tex. App. San Antonio 2008, no pet.)

16. Election was properly declared void where two voters testified that they were prevented from voting in a county commissioner race due to their placement in an improper voting precinct; the voters' testimony did not amount to impeachment, the fact that the voters were able to cast a ballot did not preclude a finding that they were prevented from voting, and they had no correction duty under Tex. Elec. Code Ann. § 15.021(a). The trial court was unable to determine the true outcome of the election under Tex. Elec. Code Ann. § 221.012. Perez v. Alanis, No. 04-08-00276-CV, 2008 Tex. App. LEXIS 6127 (Tex. App. San Antonio Aug. 13, 2008, no pet.).

17. In a case where a contestee won an election by three votes, a trial court did not abuse its discretion by declaring an election void under Tex. Elec. Code Ann. § 221.012 where seven voters testified that they were precluded from voting in a county commissioner's race due to their being assigned to the incorrect precinct. McCurry v. Lewis, 259 S.W.3d 369, 2008 Tex. App. LEXIS 5029 (Tex. App. Amarillo 2008, no pet.).

18. If a sufficient number of voters are rendered potentially ineligible by mistakes made during the recording process to account for the entire margin of victory, a trial court is within its discretion to declare an election void because it is impossible to determine the true outcome of the election. Gonzalez v. Villarreal, 251 S.W.3d 763, 2008 Tex. App. LEXIS 921 (Tex. App. Corpus Christi 2008)pet. dism'd w.o.j.No. 08-0132, 2008 Tex. LEXIS 194 (Tex. Mar. 4, 2008), reh'g denied, No. 13-07-704-CV, 2008 Tex. App. LEXIS 4339 (Tex. App. Corpus Christi Mar.

24, 2008, no pet.).

19. Where a trial court was presented with clear and convincing evidence that illegal votes were counted in an election for places on the board of trustees for an independent school district, that officials failed to count some legal votes, and that election judges made mistakes that materially affected and obscured the true outcome of the election, the trial court properly declared the election void and ordered a new election; legally sufficient evidence supported the trial court's implied findings that 77 votes were illegally cast and that, with respect to 436 voters, mistakes by election clerks in failing to record information required by the election code made it impossible to determine whether those votes were legally cast and countable because, among the undisputed testimony presented by an election contestant was that: (1) 72 voters listed on the combination forms were registered voters but, according to the online database, did not reside in the school district at issue; (2) five voters voted in the wrong precinct; (3) with respect to 127 voters who cast their votes on election day, the names or registration certificate numbers could not be located on the list of registered voters, either because the name did not appear on the list at all or because there were multiple, identical names on the list that might or might not have been the voter, making it impossible to tell if those votes were legally cast; (4) four voters on election day voted, but provided an incorrect voter registration number, and no address was provided, making it impossible to tell if those voters were qualified and properly accepted for voting, or whether they had been required to cast a provisional ballot; and (5) with respect to voting during early voting, because there was a lack of an address on the combination forms and the inability to match a particular voter with a particular listing on the online database, the contestant could not determine the eligibility of 208 voters from one polling place and 97 voters at another polling place. Gonzalez v. Villarreal, 251 S.W.3d 763, 2008 Tex. App. LEXIS 921 (Tex. App. Corpus Christi 2008)pet. dism'd w.o.j.No. 08-0132, 2008 Tex. LEXIS 194 (Tex. Mar. 4, 2008), reh'g denied, No. 13-07-704-CV, 2008 Tex. App. LEXIS 4339 (Tex. App. Corpus Christi Mar. 24, 2008, no pet.).

20. Origin of the requirement that the plaintiff in an election contest prove the allegations by clear and convincing evidence is not clear to the court, as the court finds no such requirement in the applicable part of the Texas Election Code for purposes of Tex. Elec. Code Ann. §  221.003; the earliest case imposing the burden is Johnston v. Peters and it thus appears to be a judge-made rule, but the court followed the majority of election-contest cases in reviewing this appeal under the higher standard. Willet v. Cole, 249 S.W.3d 585, 2008 Tex. App. LEXIS 514 (Tex. App. Waco 2008, no pet.).

21. Appellee had the burden to prove by clear and convincing evidence that challenged voters did not reside, as defined in Tex. Elec. Code Ann. §  1.015, at a vet clinic, thus making them ineligible to vote under Tex. Elec. Code Ann. §  11.001(a)(1)-(3); because the evidence was sufficient to produce a belief that the voters did not reside at the clinic, given witness testimony that the voters did not live, reside, sleep, or stay at the clinic and the evidence that their residence was outside the city, the trial court did not err in overturning the election under Tex. Elec. Code Ann. §  221.003. Willet v. Cole, 249 S.W.3d 585, 2008 Tex. App. LEXIS 514 (Tex. App. Waco 2008, no pet.).

22. Appellee's motion to issue a mandate immediately was granted, good cause having been

shown, and the clerk was directed to issue the mandate at the same time as the judgment affirming the trial court's overturning of an election under Tex. Elec. Code Ann. § 221.003, for purposes of Tex. R. App. P. 18. Willet v. Cole, 249 S.W.3d 585, 2008 Tex. App. LEXIS 514 (Tex. App. Waco 2008, no pet.).

23. Because some people who were deeded land by an election contestee did not meet the residency requirements under Tex. Elec. Code Ann. § 1.015(a), a trial court did not err by finding that their votes were illegally counted under Tex. Elec. Code Ann. § 221.003(a)(1) and ordering a new county commissioner election; a ranch hand who stayed in different places at night, a student attending school in another town, and a person that merely visited the county in question were not found to be residents, even though two of them owned land there; however, three others who stayed in a mobile home on property in the county were properly found to be residents. Kiehne v. Jones, 247 S.W.3d 259, 2007 Tex. App. LEXIS 4869 (Tex. App. El Paso 2007)pet. deniedNo. 07-0607, 2007 Tex. LEXIS 855 (Tex. Sept. 14, 2007).

24. Trial court properly refused to include in a final election tally three ballots in appellant's favor that had been excluded based on ballot application and carrier envelope signatures that did not match; the ballot board acted properly in comparing the signatures on the ballot applications and carrier envelopes to determine whether they were signed by the same person. Harrison v. Stanley, 193 S.W.3d 581, 2006 Tex. App. LEXIS 1906 (Tex. App. Houston 1st Dist. 2006), reh'g denied, 193 S.W.3d 581, 2006 Tex. App. LEXIS 4119 (Tex. App. Houston 1st Dist. 2006, no pet.)pet. deniedNo. 06-0517, 2006 Tex. LEXIS 814 (Tex. Aug. 31, 2006).

25. Location of temporary polling places for a school district's special bond election, which included a football stadium during a high school football game, was not improper under Tex. Elec. Code Ann. § 221.003; the school district had authority to establish temporary polling places pursuant to Tex. Elec. Code Ann. § 85.062(a)(2). Bielamowicz v. Cedar Hill Indep. Sch. Dist., 136 S.W.3d 718, 2004 Tex. App. LEXIS 4645 (Tex. App. Dallas 2004)pet. deniedNo. 04-0768, 2004 Tex. LEXIS 947 (Tex. Oct. 8, 2004).

26. Complaints alleging that city officials prevented eligible voters from voting or that city officials, by failing to publish or republish an ordinance, engaged in fraud or illegal conduct were all grounds within the scope of an election contest review as defined by Tex. Elec. Code § 221.003. Rossano v. Townsend, 9 S.W.3d 357, 1999 Tex. App. LEXIS 8971 (Tex. App. Houston 14th Dist. 1999, no pet.).

27. Although election officials combined the locations of certain polling places, leaving some precincts without a polling location in violation of Tex. Elec. Code Ann. § 43.001, the violations were not sufficient to invalidate the results of the election pursuant to Tex. Elec. Code Ann. § 221.003 as there was no testimony offered regarding any eligible voters who were prevented from voting nor were there any allegations that any election official engaged in illegal conduct or of other election irregularities. Honts v. Shaw, 975 S.W.2d 816, 1998 Tex. App. LEXIS 5666 (Tex. App. Austin 1998).

28. Although Tex. Elec. Code Ann. § 221.003(a)(2)(C) does not define the term "mistake," the nature of the mistake contemplated by the statute must be one of such magnitude as to affect the

true outcome of the election. Honts v. Shaw, 975 S.W.2d 816, 1998 Tex. App. LEXIS 5666 (Tex. App. Austin 1998).

29. Judgment in an election contestant's action was proper where there was no evidence that the contestees committed election fraud or that there were a sufficient number of illegal votes cast that would have changed the election's outcome. Frias v. Board of Trustees, 584 S.W.2d 944, 1979 Tex. App. LEXIS 3969 (Tex. Civ. App. El Paso), cert. denied, 444 U.S. 996, 100 S. Ct. 531, 62 L. Ed. 2d 426, 1979 U.S. LEXIS 4141 (U.S. 1979).

30. Write-in candidate's suit contesting a school board trustee election failed where no evidence was introduced that there was any voting irregularity, that any voter was denied the right to vote, nor that any voter would have voted differently had write-in candidate's name appeared on the ballot, so there was no evidence to show that the results of the election would have been materially changed. Perez v. Alarcon, 491 S.W.2d 688, 1973 Tex. App. LEXIS 2559 (Tex. Civ. App. El Paso 1973, no writ).

31. The burden was on the contestant in an election contest to allege and prove either that a different result would have been reached by counting or not counting certain specified votes, or that irregularities in the conduct of an election were such as to render it impossible to determine the will of the majority of the voters participating. Ware v. Crystal City Independent School Dist., 489 S.W.2d 190, 1972 Tex. App. LEXIS 2379 (Tex. Civ. App. San Antonio 1972, no writ).
⊞ Governments: State & Territorial Governments: Elections

32. Court properly granted summary judgment in favor of appellee, because appellant indicated that he had no evidence that anybody failed to count legal votes and no evidence to prove the election results were wrong or that the voting machines were not working, and testified he had no evidence of any illegal votes. Vazaldua v. Muoz, — S.W.3d —, 2014 Tex. App. LEXIS 6701 (June 20, 2014, no pet. h.)

33. Individual did not follow the necessary procedures under Tex. Elec. Code Ann. § /Aa84.032 to cancel her mailed-in ballot, and thus the trial court did not err in finding that the individual was not eligible to vote in a runoff. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

34. Individual was improperly placed in district two and forwarded such a mail-in ballot instead of a district one ballot; the record did not indicate whether the individual was aware of the problem or whether she intended to vote for a certain candidate, and the trial court did not err in finding that the board member did not show that the individual was prevented from voting for the candidate of her choice. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

35. Individual had lived in housing with district one, but he could not return home after a hurricane; at trial, he was living in district two, and the trial court did not err in finding that the individual was not eligible to vote in district one at the time of the runoff election. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet.

36. Tex. Elec. Code Ann. § 15.021(a) requires the voter to ensure that accurate registration information is provided, and the application for registration requires either the applicant's state-issued identification number or the last four digits of her social security number; an individual's application contained neither, and the evidence supported the finding that she was ineligible to vote at the runoff election. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

37. Individual was told she could not vote because she lived in Houston, and the trial court did not err in finding that she was not an eligible voter on the runoff election date. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

38. Evidence did not show whether an individual mailed in her ballot timely, and the individual's mother testified that the individual was not allowed to vote, and the evidence did not support the board member's burden under Tex. Elec. Code Ann. § 221.003. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

39. Individual was not allowed to vote in a district one runoff election because her new address was in district six; she wanted to remain in her rented house in district one, but she had no definite plans to return to that district, and the trial court did not err in finding that the evidence did not show that she was a qualified registered voter. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

40. Evidence supported the conclusion that individuals were not statutorily eligible to vote in district one at the time of the runoff election, nor did the record show their intent to vote in the election or any denial of the intent to vote. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

41. Evidence supported the finding that a person was not an eligible voter because she was not a resident of a certain district at the time of the runoff election and she did not show a present intent to return to that district, for purposes of Tex. Elec. Code Ann. § 1.015. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

42. Council member argued that the trial court erred in failing to credit evidence to show that the outcome was not correct because of mistakes in assigning certain voters in one precinct to another precinct, for purposes of Tex. Elec. Code Ann. § 221.003(a)(2)(C), but the record did not contain testimony from any of these voters, and the trial court did not err in finding that the evidence did not rise to the level of clear proof that any voter was deprived of a vote for the candidate of his choice. Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)

43. Individual admitted that she decided not to complete the registration card and she had no reason to believe that, had she done so, she would not have been given a provisional ballot; the trial court did not err in finding that a council member failed to present clear evidence that an

election worker wrongfully denied the individual a chance to vote in a runoff. [Woods v. Legg, 363 S.W.3d 710, 2011 Tex. App. LEXIS 6281 (Tex. App. Houston 1st Dist. 2011, no pet. h.)](#)

# Research References & Practice Aids

LexisNexis ® Notes
LAW REVIEWS

1.  [28 Tex. Tech L. Rev. 1095](#), ARTICLE: CONSIDERATION OF ILLEGAL VOTES IN LEGISLATIVE ELECTION CONTESTS, 1997.
Hierarchy Notes:

[Tex. Elec. Code Title 14, Subtit. A, Ch. 221](#)

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2015 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

# Tex. Elec. Code § 221.012

## Sec. 221.012. Tribunal's Action on Contest.

- (a)  If the tribunal hearing an election contest can ascertain the true outcome of the election, the tribunal shall declare the outcome.

- (b)  The tribunal shall declare the election void if it cannot ascertain the true outcome of the election.

## History

Enacted by Acts 1985, 69th Leg., ch. 211 (S.B. 616), § 1, effective January 1, 1986.

# Tex. Elec. Code § 213.013

This document is current through the 2015 regular session, 84th Legislature, S.B. 45, S.B. 293 (ch. 2), S.B. 415(ch. 15), S.B. 459, S.B. 529 (ch. 37), S.B. 835 (ch. 6), S.B. 901 (ch. 54), S.B. 903 (ch. 3), S.B. 1749 (ch. 29), and S.B. 1985 (ch. 4).

## Sec. 213.013. Representation of Parties and Political Parties at Recount.

- **(a)** Each person entitled to notice of the recount under Section 213.009 is entitled to be present at a recount.

- **(b)** In a recount of an election on an office, each candidate for the office is entitled to be present at the recount and have watchers present in the number corresponding to the number of counting teams designated for the recount. If only one counting team is designated or the recount is conducted on automatic tabulating equipment, each candidate is entitled to two watchers.

- **(c)** In a recount of an election on an office for which a political party has a nominee or for which a candidate is aligned with a political party, the party is entitled to have watchers present in the same number prescribed for candidates under Subsection (b).

- **(d)** In a recount of an election on a measure, watchers may be appointed by the campaign treasurer or assistant campaign treasurer of a specific-purpose political committee that supports or opposes the measure in the number corresponding to the number of counting teams designated for the recount. If only one counting team is designated or the recount is conducted on automatic tabulating equipment, each eligible specific-purpose political committee is entitled to two watchers.

- **(e)** A watcher appointed to serve at a recount must deliver a certificate of appointment to the recount committee chair at the time the watcher reports for service. A watcher who presents himself or herself for service at any time immediately before or during the recount and submits a proper certificate of appointment must be accepted for service unless the number of appointees to which the appointing authority is entitled have already been accepted.

- **(f)** The certificate must be in writing and must include:
    - **(1)** the printed name and the signature of the watcher;
    - **(2)** the election subject to the recount;
    - **(3)** the time and place of the recount;
    - **(4)** the measure, candidate, or political party being represented;
    - **(5)** the signature and the printed name of the person making the appointment; and
    - **(6)** an indication of the capacity in which the appointing authority is acting.

- **(g)** If the watcher is accepted for service, the recount committee chair shall keep the certificate and deliver it to the recount coordinator after the recount for preservation under Section 211.007. If the watcher is not accepted for service, the recount committee chair shall return the certificate to the watcher with a signed statement of the reason for the rejection.

- **(h)** Each person entitled to be present at a recount is entitled to observe any activity conducted in connection with the recount. The person is entitled to sit or stand conveniently near the officers conducting the observed activity and near enough to an officer who is announcing the votes or examining or processing the ballots to verify that the ballots are counted or processed correctly or to an officer who is tallying the votes to verify that they are tallied correctly. Rules concerning a watcher's rights, duties, and privileges are otherwise the same as those prescribed by this code for poll watchers to the extent they can be made applicable.

- **(i)** No device capable of recording images or sound is allowed inside the room in which the recount is conducted, or in any hallway or corridor in the building in which the recount is conducted within 30 feet of the entrance to the room, while the recount is in progress unless the person entitled to be present at the recount agrees to disable or deactivate the device. However, on request of a person entitled to appoint watchers to serve at the recount, the recount committee chair shall permit the person to photocopy under the chair's supervision any ballot, including any supporting materials, challenged by the person or person's watcher. The person must pay a reasonable charge for making the copies and, if no photocopying equipment is available, may supply that equipment at the person's expense. The person shall provide a copy on request to another person entitled to appoint watchers to serve at the recount.

## History

Enacted by Acts 1985, 69th Leg., ch. 211 (S.B. 616), § 1, effective January 1, 1986; am. Acts 1987, 70th Leg., 2nd C.S., ch. 59 (H.B. 19), § 13, effective October 20, 1987; am. Acts 1993, 73rd Leg., ch. 728 (H.B. 75), § 75, effective September 1, 1993; am. Acts 1997, 75th Leg., ch. 864 (H.B. 1603), § 218, effective September 1, 1997; am. Acts 2009, 81st Leg., ch. 1235 (S.B. 1970), § 21, effective September 1, 2009; am. Acts 2011, 82nd Leg., ch. 1164 (H.B. 2817), § 37, effective September 1, 2011.

# Texas Rule of App. P.
## Rule 45 Damages for Frivolous Appeals in Civil Cases

If the court of appeals determines that an appeal is frivolous, it may - on motion of any party or on its own initiative, after notice and a reasonable opportunity for response - award each prevailing party just damages. In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.

# Texas Rule of Civil Procedure
## Rule 11 Agreements to Be in Writing

Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

- **192.3.** *Scope of Discovery.*
  - **(a)** *Generally.* --In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
  - **(b)** *Documents and Tangible Things.* --A party may obtain discovery of the existence, description, nature, custody, condition, location, and contents of documents and tangible things (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations) that constitute or contain matters relevant to the subject matter of the action. A person is required to produce a document or tangible thing that is within the person's possession, custody, or control.
  - **(c)** *Persons with Knowledge of Relevant Facts.* --A party may obtain discovery of the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case. A person has knowledge of relevant facts when that person has or may have knowledge of any discoverable matter. The person need not have admissible information or personal knowledge of the facts. An expert is "a person with knowledge of relevant facts" only if that knowledge was obtained first-hand or if it was not obtained in preparation for trial or in anticipation of litigation.
  - **(d)** *Trial Witnesses.* --A party may obtain discovery of the name, address, and telephone number of any person who is expected to be called to testify at trial. This paragraph does not apply to rebuttal or impeaching witnesses the necessity of whose testimony cannot reasonably be anticipated before trial.

Texas Rules of Civil Procedure

- **193.4.** *Hearing and Ruling on Objections and Assertions of Privilege.*
  - **(a)** *Hearing.* --Any party may at any reasonable time request a hearing on an objection or claim of privilege asserted under this rule. The party making the objection or asserting the privilege must present any evidence necessary to support the objection or privilege. The evidence may be testimony presented at the hearing or affidavits served at least seven days before the hearing or at such other reasonable time as the court permits. If the court determines that an *in camera* review of some or all of the requested discovery is necessary, that material or information must be segregated and produced to the court in a sealed wrapper within a reasonable time following the hearing.
  - **(b)** *Ruling.* --To the extent the court sustains the objection or claim of privilege, the responding party has no further duty to respond to that request. To the extent the court overrules the objection or claim of privilege, the responding party must produce the requested material or information within 30 days after the court's ruling or at such time as the court orders. A party need not request a ruling on that party's own objection or assertion of privilege to preserve the objection or privilege.
  - **(c)** *Use of Material or Information Withheld Under Claim of Privilege.* --A party may not use - at any hearing or trial - material or information withheld from discovery under a claim of privilege, including a claim sustained by the court, without timely amending or supplementing the party's response to that discovery.

**🛈 Foust v. Hefner, 2014 Tex. App. LEXIS 8880**

[ Copy Citation ]

Court of Appeals of Texas, Seventh District, Amarillo

August 12, 2014, Decided

No. 07-13-00331-CV

**Reporter**

2014 Tex. App. LEXIS 8880 | 2014 WL 3928781

ALICIA FOUST, APPELLANT, v. DON E. HEFNER, CPA, APPELLEE

**Prior History:** [1] On Appeal from the 99th District Court, Lubbock County, Texas. Trial Court No. 2012-502,047, Honorable William C. Sowder, Presiding.

## Core Terms

sanctions, defamation claim, defamation, trial court, existing law, defamatory, levied, vandalism, evidence supports, improper purpose, pleadings, cause of action, trial counsel, accusation, damages, pet

---

### Case Summary

**Overview**

HOLDINGS: [1]-In asserting a defamation per se claim on behalf of an accountant's employee after the accountant told a third party that the employee vandalized the office, counsel was not shown to have acted in bad faith or asserted a claim without legal or factual basis sufficient for the imposition of sanctions under Tex. Civ. Prac. & Rem. Code Ann. § 10.001; [2]-Although the employee had a friend call the employer to see what he was saying about her, the friend did not induce or bait the employer into accusing the employee of vandalism, but merely posed as a potential employer.

**Outcome**

Judgment reversed.

---

### ▼ LexisNexis® Headnotes

Civil Procedure > Sanctions ⌄ > Baseless Filings ⌄ > Signature Requirements ⌄
Civil Procedure > Sanctions ⌄ > Baseless Filings ⌄ > Frivolous Lawsuits ⌄

*HN1* ⬩ Per Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (2002), the signing of a pleading or motion constitutes a certificate by the person that, to the signatory's best knowledge, information, and belief, formed after reasonable inquiry, 1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; 2) each claim, defense, or other legal contention asserted is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; 3) each allegation or factual assertion has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and 4) each denial is warranted on the evidence or is reasonably based on a lack of information or belief. Furthermore, a court determining that a person signed such pleading or motion in violation of section 10.001 may sanction either or both the signatory and the party represented by the person. Tex. Civ. Prac. & Rem. Code Ann. § 10.004(a). *Shepardize - Narrow by this Headnote*

Civil Procedure > Sanctions ▼ > Baseless Filings ▼ > Signature Requirements ▼
Evidence > Inferences & Presumptions ▼ > ▣ Presumptions ▼ > Rebuttal of Presumptions ▼
Evidence > Burdens of Proof ▼ > Allocation ▼
Civil Procedure > Sanctions ▼ > Baseless Filings ▼ > Certification Requirements ▼

*HN2* Before sanctions may issue under Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (2002), the presumption that the signatory acted in good faith must be rebutted, and the burden to do so lies with the movant. The pertinent window through which the court considers the matter is that existing when the petition or motion is filed. Consequently, a plaintiff's failure to convince the ultimate factfinder to render a favorable verdict does not ipso facto entitle the opposition to sanctions. Nor is it enough that the plaintiff unsuccessfully attempted to pursue an unpopular claim or one which other attorneys would have eschewed. Unless it is shown that the certification created by section 10.001 was false or breached, sanctions cannot issue under section 10.001 et seq. of the Civil Practice and Remedies Code. *Shepardize - Narrow by this Headnote*

Civil Procedure > Sanctions ▼ > Baseless Filings ▼ > General Overview ▼
Civil Procedure > Appeals ▼ > Standards of Review ▼ > Abuse of Discretion ▼

*HN3* Whether a court erred in levying sanctions under Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (2002) depends upon whether it abused its discretion. That occurs when the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Shepardize - Narrow by this Headnote*

Civil Procedure > Sanctions ▼ > Baseless Filings ▼ > Certification Requirements ▼

*HN4* The pertinent window for considering sanctions under Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (2002) is that revealing what counsel thought, knew, or should have known when he signed the pleading or motion. *Shepardize - Narrow by this Headnote*

Torts > ... > Defamation ▼ > Elements ▼ > General Overview ▼

*HN5* The common law recognizes a cause of action for defamation. Recovery under the cause depends upon proving that the defendant 1) published a statement, 2) that defamed the plaintiff, 3) while either acting with actual malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement. *Shepardize - Narrow by this Headnote*

Torts > ... > Defamation ▼ > Defenses ▼ > General Overview ▼

*HN6* Alleged defamatory statements made to someone acting on behalf of the defamed individual does not alone render a defamation suit groundless. Publishing defamatory comments to a person's agent may create a cause of action. Yet, the claim is lost if the defamatory statements are procured to create a lawsuit or invited by the complainant. And, they are so procured or invited if the person induced them or knew in advance that they were likely to be forthcoming. *Shepardize - Narrow by this Headnote*

Torts > ... > Defenses ▼ > Privileges ▼ > Statutory Privileges ▼
Labor & Employment Law > Employee Privacy ▼ > Disclosure of Employee Information ▼ > General Overview ▼

*HN7* The immunity granted ex-employers who talk about ex-employees in Tex. Labor Code Ann. § 103.004(a) (2006) does not encompass comments known by that employer to be false at the time the disclosure was made or disclosures made with malice or in reckless disregard for the truth or falsity of the information disclosed. *Shepardize - Narrow by this Headnote*

Civil Procedure > Sanctions ▼ > Baseless Filings ▼ > Certification Requirements ▼
Civil Procedure > Sanctions ▼ > Baseless Filings ▼ > Frivolous Lawsuits ▼

*HN8* Losing at trial does not alone prove that a cause of action lacked present or reasonably potential legal or factual basis (or was offered for an improper purpose) at the time when the pleadings were signed for purposes of sanctions under Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (2002). *Shepardize - Narrow by this Headnote*

Criminal Law & Procedure > ... > Miscellaneous Offenses ▼ > ▣ Destruction of Property ▼ > Elements ▼

*HN9* Tex. Penal Code Ann. § 28.03(a)(1) & (2) (2011) provide that one commits a criminal offense when he, without effective consent, intentionally, or knowingly damages the tangible property of the owner, or intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner. *Shepardize - Narrow by this Headnote*

Torts > Intentional Torts ▾ > Defamation ▾ > 🖺 Defamation Per Se ▾

Evidence > Inferences & Presumptions ▾ > 🖺 Presumptions ▾ > Creation ▾

**HN10⬧** Falsehoods accusing one of criminal conduct not only are defamatory per se but also are presumed to cause the defamed nominal damages. *Shepardize - Narrow by this Headnote*

Civil Procedure > Sanctions ▾ > Baseless Filings ▾ > Frivolous Lawsuits ▾

Civil Procedure > Sanctions ▾ > Misconduct & Unethical Behavior ▾ > General Overview ▾

**HN11⬧** The phrase "improper purpose" in Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (2002) has been construed as equivalent to "bad faith" under Tex. R. Civ. P. 13. Moreover, under Rule 13, establishing bad faith requires proof of conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose. *Shepardize - Narrow by this Headnote*

Civil Procedure > Sanctions ▾ > Baseless Filings ▾ > Frivolous Lawsuits ▾

Civil Procedure > Sanctions ▾ > Baseless Filings ▾ > Bad Faith Motions ▾

**HN12⬧** Litigants must factor caution and thought into their decision whether to pursue relief under Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code Ann. § 10.001 et seq. (2002). Indeed, just as sanctions may be levied, in appropriate cases, for filing a frivolous pleading, so too may they be levied for filing a baseless motion for sanctions. *Shepardize - Narrow by this Headnote*

**Judges:** Before QUINN ▾, C.J., and CAMPBELL ▾ and PIRTLE ▾, JJ.

**Opinion by:** Brian Quinn ▾

## Opinion

**MEMORANDUM OPINION**

Alicia Foust (Foust) appeals from a judgment awarding Don E. Hefner (Hefner) sanctions against her. After terminating her employment with Hefner, Foust sued him for defamation, business disparagement, and the recovery of unpaid overtime. Before trial, Hefner moved the trial court to award him sanctions.[1⬆] The suit was tried by the court, and by the time of trial, Foust had abandoned her claim for business disparagement. Ultimately, the trial court awarded Foust unpaid overtime due her from Hefner but denied her defamation claim. It also granted Hefner sanctions in the amount of $5,271.75 against both Foust and her attorney. The sum represented the amount of attorney's fees purportedly incurred by Hefner in defending against the defamation claim. On appeal, we are asked to determine whether the trial court abused its discretion in levying such sanctions. We conclude that it did.

*Authority*

Hefner moved for sanctions under section 10.001 et seq. of the Texas Civil Practice and Remedies Code. **HN1⬆** Per that statute, the signing of a pleading or motion constitutes a certificate by the person that, to the signatory's best knowledge, information, and belief, formed after reasonable inquiry, 1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; 2) each claim, defense, or other legal contention asserted is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; 3) each allegation or factual assertion has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; [3] and 4) each denial is warranted on the evidence or is reasonably based on a lack of information or belief. Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (West 2002). Furthermore, a court determining that a person signed such pleading or motion in violation of section 10.001 may sanction either or both the signatory and the party represented by the person. *Id.* § 10.004(a).

Yet, **HN2⬆** before sanctions may issue, the presumption that the signatory acted in good faith must be rebutted, and the burden to do so lies with the movant. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). We further note that the pertinent window through which the court considers the matter is that existing when the petition or motion is filed. See *R.M. Dudley Constr. Co., Inc. v. Dawson*, 258 S.W.3d 694, 711 (Tex. App.—Waco 2008, pet. denied) (stating that sanctions for frivolous or groundless pleadings do not apply to an action later determined to be groundless after the pleading was filed). Consequently, a plaintiff's failure to convince the ultimate factfinder to render a favorable verdict does not *ipso facto* entitle the opposition to sanctions. Nor is it enough that the plaintiff unsuccessfully attempted to pursue an unpopular claim or one which other attorneys would have eschewed. Unless it is shown that the certification created by section 10.001 was false or breached, sanctions cannot issue under section 10.001 et seq. of the Civil Practice and Remedies Code.

Finally, **HN3⬆** whether the court erred in [4] levying sanctions depends upon whether it abused its discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). That occurs when the trial court "acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.*

*Discussion*

Here, the sanctions levied arose from Foust's effort to pursue her cause of action for defamation. The allegedly defamatory statements were made by Hefner during a phone call. The parties to the call were Hefner and Travis, the latter being a friend of Foust. Travis agreed to place the call while posing as a prospective employer inquiring about Foust. The latter had left her job with Hefner, applied for others, and had encountered little success in finding new employment. Thus, she engaged her friend to help discover what Hefner may have been saying about her to prospective employers.

During the phone conversation, which was recorded, Hefner indicated that he often had to finish Foust's work and described her as jealous and abrasive. He also stated that "[a]nd this last time, she deleted her client e-mails and she or her husband, one, unplugged the file server cables, and I had to have my IT people come over and fix that." When asked by his trial counsel whether these [5] acts of "vandalism really only affected her work area," Hefner replied, "That's right. That and the file server, which was not in her work area." Foust denied having "vandalized" the office or her computer.

As previously mentioned, one of the two claims upon which trial was had met with favor. That is, the trial court awarded Foust past overtime but denied recovery for the purported defamation. It also concluded, in its judgment, that the defamation claim 1) "was presented for an improper purpose," 2) was "not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law," and 3) lacked "evidentiary support and . . . [was] not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." So too did it explain, via the judgment, that the claim was improper or unwarranted under the law because Foust "instigated" the purportedly defamatory utterance from Hefner.

Following entry of the judgment, the trial court also executed findings of fact and conclusions of law. Included therein was the following:

A reasonable inquiry by J. Craig Johnston, as required by CPRC Sec. 10.001 would [6] have disclosed to him that the defamation claim pursued by him on Foust's behalf was not warranted by existing law and that such allegations of defamation did not have evidentiary support. There was no evidence presented on causation of any alleged defamatory statement and the damages claimed by Foust.

. . . At trial, J. Craig Johnston made no arguments, nonfrivolous or otherwise, for the extension, modification or reversal of existing law regarding the defamation claim.

\* \* \*

The facts and equities of this case are such that Hefner is entitled to relief, jointly and severally, from Foust and J. Craig Johnston under the Texas Civil Practices and Remedies Code Section 10.001 et seq. And specifically Section 10.001 (1), (2) and (3), due to the filing of an unwarranted defamation claim by Foust and her attorney against Hefner . . . [and]

Foust's defamation claim was filed for an improper purpose.

In addressing the accuracy of the trial court's findings and decision, we initially note that it did not conduct a separate evidentiary hearing on the motion for sanctions before levying them.[2⚖] So, we do not have before us sworn testimony from Foust's legal counsel describing the extent of his investigation, if any, into the factual or legal basis underlying the defamation claim or [7] what he believed with regard to the components encompassed within section 10.001 of the Civil Practice and Remedies Code. While we cannot say that the absence of such evidence makes it impossible to find that section 10.001 was breached, it nonetheless inhibits our ability to construct the appropriate window through which the court views the dispute. Again, *HN4*⚓ the pertinent window is that revealing what counsel thought, knew, or should have known when he signed the pleading or motion.

Next, one cannot deny that *HN5*⚓ the common law recognizes a cause of action for defamation. *See Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). Similarly indisputable is that recovery under the cause depends upon proving that the defendant 1) published a statement, 2) that defamed the plaintiff, 3) while either acting with actual malice (if the plaintiff was a public official or public figure) or negligence (if the plaintiff was a private individual) regarding the truth of the statement. *Id. at 61*. The record before us contains, at the very least, evidence that Hefner told a third party that Foust vandalized his office and that the accusation was false, assuming, of course, one was to believe Foust's testimony. In comparing the latter evidence with the elements of defamation, it cannot be said that [8] the claim lacked either legal or factual basis.

As suggested above, what troubled the trial court was the evidence that Foust "instigated" the call to Hefner or had her friend place it. In doing so, she invited the falsehood, according to the court. In so inviting the defamation, she purportedly vitiated the cause of action, and, in the trial court's view, that was something her trial counsel should have recognized. Yet, authority illustrates that *HN6*⚓ alleged defamatory statements made to someone acting on behalf of the defamed individual does not alone render the suit groundless. *Frank B. Hall v. Buck*, 678 S.W.2d 612, 618 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (wherein the defamed hired the investigator to whom the disparaging remarks were said). Publishing defamatory comments to a person's agent may create a cause of action, as it did in *Buck*. Yet, the claim is lost if the defamatory statements are procured to create a lawsuit or invited by the complainant. *Id.* And, they are so procured or invited if the person induced them or knew in advance that they were likely to be forthcoming. *Id.*

According to the record before us, the circumstances precipitating Foust's departure involved her perceived inability to be "consistent" in appearing for work; they had nothing to do [9] with her engaging in criminal conduct such as vandalism. So, we may assume *arguendo* that Foust could or should have expected Hefner to give her a less than glowing reference when Travis placed the call. Yet, nothing in the recorded conversation indicated that Travis induced or baited Hefner into accusing Foust of vandalism. And in view of the absence of evidence suggesting that vandalism was the cause of or played any role in Foust's decision to end her employment relationship with Hefner, one can reasonably debate about whether she or Travis could or should have expected that Hefner would accuse her of such criminality. We couple the latter observation with the absence of evidence suggesting trial counsel for Foust had reason to doubt the veracity of his client's foreseeable testimony about not having engaged in such illegal activities. And, when so combined, they lead us to conclude that no reasonable basis existed upon which the trial court could have found that the defamation claim lacked arguable basis in law or fact (when the pleading was signed) simply because a friend of Foust placed the call.

Nor can it be said that section 103.004 of the Texas Labor Code vitiated Foust's claim of legal or factual basis. *HN7*⚓ The immunity [10] granted ex-employers who talk about ex-employees in that statute does not encompass comments "known by that employer to be false at the time the disclosure was made or [disclosures] . . . made with malice or in reckless disregard for the truth or falsity of the information disclosed." Tex. Labor Code Ann. § 103.004(a) (West 2006). Admittedly, the statute placed upon Foust and her attorney the obligation to clear a higher legal hurdle before recovering. Yet, it did not indicate that they could not recover. Nor did it obligate them to forego pursuing recovery for what was perceived to be a false accusation, especially when Foust would testify, under oath, that the accusation was false.

As for the trial court's statement that "no evidence [was] presented on causation of any alleged defamatory statement and the damages claimed by Foust," we have several concerns. First, the finding suggests that the trial court levied sanctions by focusing upon what Foust may or may not have proved at trial, as opposed to what trial counsel thought, believed, or should have known or discovered when he signed the pleadings. *HN8*⚓ Losing at trial does not alone prove that the cause of action lacked present or reasonably potential legal or factual [11] basis (or was offered for an improper purpose) at the time when the pleadings were signed. Second, the purportedly false

utterance accused Foust of vandalism, that is, a type of criminal conduct. *See HN9* Tex. Penal Code Ann. § 28.03(a)(1)&(2) (West 2011) (stating that one commits a criminal offense when he, without effective consent, intentionally or knowingly damages the tangible property of the owner, or intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner). *HN10* Falsehoods of that ilk not only are defamatory per se but also are presumed to cause the defamed nominal damages. *See Medical Gardens, LLC v. Wikle,* No. 07-12-00011-CV, 2013 Tex. App. LEXIS 6699, at *3-4 (Tex. App.—Amarillo May 29, 2013, no pet.) (mem. op.). Thus, it was inappropriate to consider the claim groundless from its inception due to the absence of evidence illustrating a causal link between the utterance and injury since one was to presume the existence of nominal damages as a matter of law (assuming, of course, that Foust proved the other elements of her claim).

As for the finding that the defamation claim was asserted for an "improper purpose," *HN11* the latter phrase has been construed as equivalent to "bad faith" under Texas Rule of Civil Procedure 13. *Dike v. Peltier Chevrolet, Inc.,* 343 S.W.3d 179, 195 (Tex. App.—Texarkana 2011, no pet.); *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.,* 198 S.W.3d 300, 321 (Tex. App.—Texarkana 2006, pet. denied). Moreover, under Rule 13, establishing [12] "bad faith" requires proof of "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist.,* 198 S.W.3d at 321; *Stites v. Gillum,* 872 S.W.2d 786, 795 (Tex. App.—Fort Worth 1994, writ denied). As previously mentioned, we are not privy to the mental processes in which Foust's attorney engaged when signing the original petition. And, while someone's *mens rea* may be discerned from circumstantial evidence, *Anaya v. State,* 381 S.W.3d 660, 666 (Tex. Crim. App. 2012, pet. ref'd), none appears of record here from which one can reasonably infer that counsel for Foust consciously sought to do wrong for a dishonest, discriminatory, or malicious purpose when including the defamation claim in the lawsuit. Certainly such a *mens rea* or desire cannot be inferred from simply losing at trial.

The tenor of the record leads us to conclude that Hefner failed to rebut the presumption that Foust's legal counsel acted in good faith when he signed the pleading that contained the defamation claim. As discussed above, there existed legal and factual basis to Foust's defamation per se claim given the evidence of record, and there was no evidence indicating that Foust's trial counsel acted in bad faith when he included the claim in the petition. Accordingly, we reverse the judgment insofar as it levied sanctions against Foust and her counsel and affirm [13] the remainder of the judgment. [3▲]

Brian Quinn ▾

Chief Justice

---

**Footnotes**

[1▼] Hefner asserted in his motion that "[b]oth pleadings have a claim, defense or other legal contention that is not [2] warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law and each allegation or other factual contention in the pleadings does not have evidentiary support, even after a reasonable opportunity for further investigation or discovery. Respondent's pleadings were presented for an improper purpose, to harass Movant."

[2▼] It was carried along with the trial.

[3▼] Pending before the court is Hefner's motion to further sanction Foust and her attorney for pursuing a "frivolous" appeal. Given our decision on the merits of the appeal, we deny Hefner's motion. We do not know whether the effort to obtain sanctions arose from a desire to be an effective advocate or some animus developed over the course of the dispute. Nonetheless, *HN12* litigants must factor caution and thought into their decision whether to pursue relief under Rule 13 of the Texas Rules of Civil Procedure and section 10.001 et seq. of the Texas Civil Practice and Remedies Code. Indeed, just as sanctions may be levied, in appropriate cases, for filing a frivolous pleading, so too may they be levied for filing a baseless motion for sanctions.

---

Jump To ▾

Sec. 231.009.  PRECEDENCE OF CONTEST ON APPEAL.  An election contest has precedence in the appellate courts and shall be disposed of as expeditiously as practicable.

# Tex. Elec. Code § 52.070

## Sec. 52.070. Voting Square and Instruction for Candidates.

- (a) A square for voting shall be printed to the left of each candidate's name on a ballot.

- (b) Immediately below "OFFICIAL BALLOT," the following instruction shall be printed: "Vote for the candidate of your choice in each race by placing an 'X' in the square beside the candidate's name."

- (c) Appropriate changes in the instruction shall be made if only one race appears on the ballot or if more than one candidate is to be elected in a race.

- (d) If more than one candidate is to be elected in any race on the ballot, "Vote for none, one, two, or " (in the numerical sequence appropriate for the number of candidates to be elected) shall be printed immediately below each office title appearing on the ballot.

- (e) A square shall be printed to the left of each line provided for write-in voting under Section 52.066(c), but failure to place a mark in the square does not affect the counting of a write-in vote.

History

Enacted by Acts 1985, 69th Leg., ch. 211 (S.B. 616), § 1, effective January 1, 1986; am. Acts 1987, 70th Leg., ch. 472 (H.B. 612), § 14, effective September 1, 1987; am. Acts 1987, 70th Leg., ch. 497 (H.B. 2364), § 2, effective September 1, 1987.

Sec. 52.064.  DESIGNATION AS OFFICIAL BALLOT.  "OFFICIAL BALLOT" shall be printed in large letters on the ballot immediately below the designation and date of the election.

Sec. 213.013.  REPRESENTATION OF PARTIES AND POLITICAL PARTIES AT RECOUNT.  (a)  Each person entitled to notice of the recount under Section 213.009 is entitled to be present at a recount.

(b)  In a recount of an election on an office, each candidate for the office is entitled to be present at the recount and have watchers present in the number corresponding to the number of counting teams designated for the recount.  If only one counting team is designated or the recount is conducted on automatic tabulating equipment, each candidate is entitled to two watchers.

(c)  In a recount of an election on an office for which a political party has a nominee or for which a candidate is aligned with a political party, the party is entitled to have watchers present in the same number prescribed for candidates under Subsection (b).

(d)  In a recount of an election on a measure, watchers may be appointed by the campaign treasurer or assistant campaign treasurer of a specific-purpose political committee that supports or opposes the measure in the number corresponding to the number of counting teams designated for the recount.  If only one counting team is designated or the recount is conducted on automatic tabulating equipment, each eligible specific-purpose political committee is entitled to two watchers.

(e)  A watcher appointed to serve at a recount must deliver a certificate of appointment to the recount committee chair at the time the watcher reports for service.  A watcher who presents himself or herself for service at any time immediately before or during the recount and submits a proper certificate of appointment must be accepted for service unless the number of appointees to which the appointing authority is entitled have already been accepted.

(f)  The certificate must be in writing and must include:

(1)  the printed name and the signature of the watcher;

(2)  the election subject to the recount;

(3)  the time and place of the recount;

(4)  the measure, candidate, or political party being represented;

(5)  the signature and the printed name of the person making the appointment; and

(6)  an indication of the capacity in which the appointing authority is acting.

(g)  If the watcher is accepted for service, the recount committee chair shall keep the certificate and deliver it to the recount coordinator after the recount for preservation under Section 211.007.  If the watcher is not accepted for service, the recount committee chair shall return the certificate to the watcher with a signed statement of the reason for the rejection.

(h)  Each person entitled to be present at a recount is entitled to observe any activity conducted in connection with the recount.  The person is entitled to sit or stand conveniently near the officers conducting the observed activity and near enough to an officer who is announcing the votes or examining or processing the ballots to verify that the ballots are counted or processed correctly or to an officer who is tallying the votes to verify that they are tallied correctly.  Rules concerning a watcher's rights, duties, and privileges are otherwise the same as those prescribed by this code for poll watchers to the extent they can be made applicable.

(i)  No device capable of recording images or sound is allowed inside the room in which the recount is conducted, or in any hallway or corridor in the building in which the recount is conducted within 30 feet of the entrance to the room, while the recount is in progress unless the person entitled to be present at the recount agrees to disable or deactivate the device. However, on request of a person entitled to appoint watchers to serve at the recount, the recount committee chair shall permit the person to photocopy under the chair's supervision any ballot, including any supporting materials, challenged by the person or person's watcher.  The person must pay a reasonable charge for making the copies and, if no photocopying equipment

is available, may supply that equipment at the person's expense. The person shall provide a copy on request to another person entitled to appoint watchers to serve at the recount.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986. Amended by Acts 1987, 70th Leg., 2nd C.S., ch. 59, Sec. 13, eff. Oct. 20, 1987;  Acts 1993, 73rd Leg., ch. 728, Sec. 75, eff. Sept. 1, 1993;  Acts 1997, 75th Leg., ch. 864, Sec. 218, eff. Sept. 1, 1997.
Amended by:
     Acts 2009, 81st Leg., R.S., Ch. 1235 (S.B. 1970), Sec. 21, eff. September 1, 2009.
     Acts 2011, 82nd Leg., R.S., Ch. 1164 (H.B. 2817), Sec. 37, eff. September 1, 2011.

Sec. 33.061.  UNLAWFULLY OBSTRUCTING WATCHER.  (a)  A person commits an offense if the person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity the watcher is entitled to observe.

(b)  An offense under this section is a Class A misdemeanor.

Acts 1985, 69th Leg., ch. 211, Sec. 1, eff. Jan. 1, 1986.

# Rule 329b Time for Filing Motions

- The following rules shall be applicable to motions for new trial and motions to modify, correct, or reform judgments (other than motions to correct the record under Rule 316) in all district and county courts:
  - **(a)** A motion for new trial, if filed, shall be filed prior to or within thirty days after the judgment or other order complained of is signed.
  - **(b)** One or more amended motions for new trial may be filed without leave of court before any preceding motion for new trial filed by the movant is overruled and within thirty days after the judgment or other order complained of is signed.
  - **(c)** In the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period.
  - **(d)** The trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed.
  - **(e)** If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first.
  - **(f)** On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law; provided that the court may at any time correct a clerical error in the record of a judgment and render judgment nunc pro tunc under Rule 316, and may also sign an order declaring a previous judgment or order to be void because signed after the court's plenary power had expired.
  - **(g)** A motion to modify, correct, or reform a judgment (as distinguished from motion to correct the record of a judgment under Rule 316), if filed, shall be filed and determined within the time prescribed by this rule for a motion for new trial and shall extend the trial court's plenary power and the time for perfecting an appeal in the same manner as a motion for new trial. Each such motion shall be in writing and signed by the party or his attorney and shall specify the respects in which the

judgment should be modified, corrected, or reformed. The overruling of such a motion shall not preclude the filing of a motion for new trial, nor shall the overruling of a motion for new trial preclude the filing of a motion to modify, correct, or reform.

- **(h)** If a judgment is modified, corrected or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed, but if a correction is made pursuant to Rule 316 after expiration of the period of plenary power provided by this rule, no complaint shall be heard on appeal that could have been presented in an appeal from the original judgment.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Travis County

December 16, 2014 Joint
Special Runoff Election

December 16, 2014

SD (38) Memorial United
Methodist Church

‖‖‖‖ Zero Tape Report ‖‖‖‖

Date: 11-26-2014
Time: 09:11:31

```
****************************
Precinct:
101-A
****************************
```

PLACE 2, ACC TRUSTEE,
AUSTIN COMMUNITY COLLEGE
DISTRICT
- Gigi Edwards Bryant
                           0

- Jade Chang Sheppard
                           0


 Precinct Ballot Summary

Total Ballots voted in
this Precinct = 0

```
****************************
Precinct:
101-B
****************************
```

PLACE 2, ACC TRUSTEE,
AUSTIN COMMUNITY COLLEGE
DISTRICT
- Gigi Edwards Bryant
                           0

- Jade Chang Sheppard
                           0

MAYOR, CITY OF AUSTIN
- Mike Martinez
                           0

- Steve Adler
                           0

DISTRICT 1, AUSTIN CITY
COUNCIL, CITY OF AUSTIN
- DeWayne Lofton
                           0

  Ora Houston
                           0

 Precinct Ballot Summary

Total Ballots voted in
this Precinct = 0

Sec. 52.075.
MODIFICATION OF BALLOT FORM FOR CERTAIN VOTING
The secretary of state may prescribe the form and content of a ballot for an election using a voting system, including an electronic voting system or a voting system that uses direct recording electronic voting machines, to conform to the formatting requirements of the system